**11cv1755i-ord-(CKPdocs).wpd**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNIVERSAL SURVEILLANCE CORP.** | : | |
| | : | **Case No. 5:11-CV-1755** |
| v. | : | |
| | : | |
| **CHECKPOINT SYSTEMS, INC.,** | : | |
| | : | **SPECIAL MASTER COHEN** |
| | : | |
| | : | <u>**ORDER**</u> |
| | : | <u>**REGARDING**</u> |
| | : | <u>**DOCUMENT PRODUCTION**</u> |
| | : | <u>**BY CHECKPOINT**</u> |

With this Report, the Special Master addresses disputes between the parties regarding Checkpoint's obligation to produce certain documents in discovery. The Special Master orders that Checkpoint must comply with the following two rulings, within 14 calendar days of the date of this Order:

• **Ruling One**: Checkpoint must produce to the Special Master, with a copy to USS: (1) a report showing (a) how many documents it collected that contained "hits" for search terms, but which it did not produce to USS because it deemed the documents irrelevant or non-responsive, and (b) "hit-counts" for search terms for those documents; and (2) a proposed protocol for a random review of these documents by the Special Master.

• **Ruling Two**: Checkpoint must produce to the Special Master: (1) a list of documents it

earlier included in its Privilege Log, but then removed as non-responsive; and (2) copies of those documents for in camera review by the Special Master.[1]

The reasons for these rulings are provided below.[2]

**Ruling One**

Very early in the discovery process, the parties agreed to a protocol regarding production of documents. The essence of this protocol was that each party would first gather documents held in certain locations (such as on certain computer shared drives) and/or held by certain custodians (such as certain identified company executives). Each party would then scan each document for various search terms (such as "pharmacy" or "loyalty w/3 program*"). Documents with search term hits (and within agreed-upon date range limitations) were automatically included in a parties' collection of producible documents ("Collection"). The protocol provided a party could simply produce this entire Collection to the other side, without first applying other winnowing mechanisms. Specifically, the parties agreed that "documents and electronically stored information may be produced without prior review by the producing party pursuant to the application of the receiving party's requested . . . search terms." This meant, for example, that a party could produce its entire Collection without first culling documents on the basis of privilege. The agreement further provided that a party could "claw back" any document it had produced, if it later determined that document

---

[1] Checkpoint shall provide to USS a copy of the list of documents, but not copies of the documents themselves.

[2] The Special Master recognizes Checkpoint will probably file an objection to at least some part of this Order, which would have the effect of suspending the 14-day deadline. Checkpoint should be prepared for the possibility that, if the Court overrules any such objection, the deadline imposed by the Court may be different.

2

was privileged.

Both USS and Checkpoint followed this protocol to obtain a Collection.[3] To some extent, each party then culled privileged documents from its Collection before producing the documents to the other side.[4] Notably, USS culled documents ***only*** based on privilege review and produced to Checkpoint all other documents that hit on a search term. Checkpoint, however, culled documents based not only on privilege but also on responsiveness. That is, if Checkpoint's review of a collected document led it to conclude the document was not responsive to any of USS's discovery requests, Checkpoint did not produce the document, even though it hit on a search term.

Upon learning that Checkpoint was withholding documents on the basis of non-responsiveness, even though the documents contained search terms, USS complained to the Special Master. USS stated it believed the parties' agreement required Checkpoint to produce *all* non-privileged documents that contained search terms. USS stated it had followed this rule itself, and Checkpoint should not be allowed to follow a different rule and withhold a document from its Collection based on anything other than privilege.

Checkpoint responded that the parties' agreement did not preclude withholding documents

---

[3] To repeat, a party's "Collection" was the subset of all gathered documents that had search term hits. During the parties' process of obtaining a Collection, the undersigned resolved a number of disputes regarding: (a) from which custodians and locations the parties had to gather documents, and (b) for which terms within those documents the parties would search.

[4] This culling process included: (a) using computers to apply automated "privilege filters," such as searching for documents authored by an attorney; and/or (2) using human reviewers to read documents and look for substantive privileged content. The parties and the Special Master have always understood, however, that these culling processes were in addition to the right of the parties to "claw back" a document that was produced and later determined to be privileged. The Special Master has issued several rulings regarding whether a document that a party sought to use at deposition was privileged and could be clawed back.

3

based upon non-responsiveness. Specifically, Checkpoint asserted that: (1) the agreement stated collected documents "*may* be produced without prior review," not "*shall* be produced without prior review," thus suggesting review for responsiveness was allowed; and (2) the agreement did not trump Fed. R. Civ. P. 26(b), which states the scope of discovery is limited to "any nonprivileged matter *that is relevant to any party's claim or defense*" (emphasis added), thus suggesting irrelevant or non-responsive documents may always be withheld. Checkpoint insisted that just because a collected document hit on a search term did not mean the document contained any information responsive to a USS discovery request or relevant to the case, and USS was not entitled to receive irrelevant or non-responsive documents.

The Special Master's conversations with the parties revealed that, despite having reached an "agreement" regarding document production, they had different understandings of their obligations under that agreement; further, both understandings were defensible. The Special Master determined that a necessary first step to resolve this dispute was to assess the size of the problem – that is, obtain information regarding the number of collected documents that Checkpoint did not produce based on non-responsiveness, and the number of hits those documents had for all of the search terms. The Special Master hoped this information – which is fairly easy to obtain[5] – would

---

[5] The parties have submitted similar statistics in connection with disputes over adding additional search terms.

4

allow for a measured assessment that could fully resolve the dispute.[6]

Checkpoint explained, however, that it strongly believed: (1) it had a right, as it would in any case, not to produce documents based on its own assessment of non-responsiveness or irrelevance; and (2) it was unprecedented for the Special Master to require the requested report and/or production of withheld documents for in camera review, absent any showing it had withheld documents improperly. Accordingly, Checkpoint asked the Special Master to memorialize his ruling, so that it could file an objection with the Court.

This Order memorializes that ruling. Specifically, the Special Master orders Checkpoint to produce to the Special Master, with a copy to USS: (1) a report showing (a) how many documents it collected that contained "hits" for search terms, but which it did not produce to USS because it deemed the documents irrelevant or non-responsive, and (b) "hit-counts" for search terms for those documents; and (2) a proposed protocol for a random review of these documents by the Special Master. Further, the Special Master makes clear that, depending on the contents of this report, he may order Checkpoint to produce some or all of the withheld documents: (a) for in camera review by the Special Master, and/or (b) to USS, if that review shows Checkpoint's assessments are

---

[6] For example, this report might reveal Checkpoint withheld relatively few documents based on non-responsiveness, and those that were withheld contained relatively generic search terms. The Special Master might then rule that no further document assessment was necessary and USS's objection to Checkpoint's non-production was overruled. Conversely, this report might reveal many documents were withheld, and those documents contained particularized search terms more likely to appear in relevant documents. The Special Master might then review in camera a random sample of those documents, or a sample of certain document subsets (e.g., a random sample of the document subset containing a certain search term), to ensure Checkpoint's non-production was appropriate. In sum, the "next step," if any, would depend on what the report showed.

In addition to asking for this report, the Special Master also asked Checkpoint to suggest a "random review protocol," should the Special Master conclude any document review was necessary.

5

incorrect and the documents are in fact responsive or relevant.[7]

**Ruling Two**

As noted, USS and Checkpoint both undertook some level of review of their document collections to determine whether documents should be withheld based on privilege. Pursuant to orders issued by the undersigned, each party has submitted to the Special Master a privilege log and also the logged documents themselves, for in camera review.[8] The Special Master has begun reviewing these documents to assess the propriety of the claims of privilege.

After sharing its initial privilege log with USS, Checkpoint submitted an amended log that indicated removal of a number of documents contained in the original log. Checkpoint's explanation is that additional review led it to determine these "de-listed" documents were non-responsive, so the documents should not have been listed in the first place. USS objected to this de-listing of documents. The Special Master concluded that Checkpoint must produce for in camera review any

---

[7] The Special Master also makes clear he would order production to USS only if Checkpoint's conclusions regarding relevance and responsiveness were substantially and materially improper; de minimis disagreements with Checkpoint's conclusions would not be enough.

[8] The terms "privilege log" and "logged documents," as used here, refer not only to documents withheld in their entirety based on privilege, but also to documents produced with redactions. The parties understand they are obligated to supplement their logs and submit additional documents as discovery progresses.
After USS asserted challenges to Checkpoint's privilege log, the Special Master ordered this process of in camera review and applied it to both parties equally.

document Checkpoint listed at any time on a privilege log.[9]

The Special Master ordered this in camera production for two reasons. First, in the experience of the undersigned (obtained while serving as Special Master in other federal cases), documents are sometimes listed on privilege logs more because they contain information a party is loathe to produce than because the information is privileged. The propriety of review of documents "de-listed" from a privilege log is therefore heightened – even more than non-privileged documents never produced based on irrelevance or non-responsiveness.[10]

Second, the undersigned served in one other case where documents were listed on a privilege log and then de-listed. In camera review of the de-listed documents *along with* the listed documents (without objection) worked to better educate the undersigned, leading to more precise rulings and no subsequent request for court review. *See Snap-On Bus. Solns. v. Hyundai Motor America*, 2011 WL 6957594 (N.D. Ohio Feb. 3, 2011) (appointment by Adams, J.) (ruling that about half of the documents listed on the defendant's privilege log were not privileged and must be produced; defendant filed no objection). Similarly, in camera review by the undersigned in this case of

---

[9] Checkpoint "de-listed" about 29 documents based on the conclusion they were non-responsive. It is these documents Checkpoint must produce for in camera review pursuant to this Order. Documents that Checkpoint removed from its log because it later determined they were not privileged after all, and therefore produced them to USS, are not at issue. Similarly, documents that Checkpoint originally withheld based on privilege, but later produced to USS in redacted form – and changed the log entry accordingly – are not at issue, as Checkpoint has produced those redacted documents for in camera review.

[10] The Special Master stresses he has no reason to believe Checkpoint had any inappropriate motive for withholding a document based on privilege in this case. The point is simply that privileged documents deserve even more scrutiny to assess the propriety of non-production than non-privileged documents. Ruling One is designed to allow initial, possibly cursory assessment of documents withheld based on non-responsiveness. Because Ruling Two addresses documents originally listed as privileged, and because only 29 documents are at issue, it is designed to allow a thorough review.

Checkpoint's de-listed documents carries no risk of prejudice to Checkpoint, and can only better inform the Special Master's ultimate rulings.

For essentially the same reasons as it objected to Ruling One, however, Checkpoint objects to the ruling that it must produce "de-listed documents" for in camera review, and asks the Special Master to memorialize his ruling to allow formal objection. Accordingly, the Special Master orders Checkpoint to produce to the Special Master: (1) a list of documents it earlier included in its Privilege Log, but then removed as non-responsive; and (2) copies of those documents for in camera review by the Special Master. Checkpoint shall provide to USS a copy of the list of removed documents, but not copies of the documents themselves.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**DATED**: January 8, 2013

"[A]ny party may file an objection to an order, finding, report, or recommendation by the Special Master within 14 calendar days of the date it was electronically filed; failure to meet this deadline results in permanent waiver of any objection to the Special Master's orders, findings, reports, or recommendations." Order at 5 (docket no. 52).