UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALL-TAG CORP.,                  CASE NO. 17-81261-CIV-DIMITROULEAS

       Plaintiff,
v.

CHECKPOINT SYSTEMS, INC.

       Defendant.
_____/

**CHECKPOINT SYSTEMS, INC.'S RESPONSE TO**
**ALL-TAG CORP.'S MOTION TO COMPEL DISCOVERY**

This discovery dispute arises out of All-Tag's refusal to cooperate with Checkpoint to modify and tailor its search terms. Checkpoint has produced over 2.5 million documents. All-Tag now seeks nearly a million more documents generated by its broad search terms. Checkpoint requested that All-Tag modify the search terms to target relevant documents. All-Tag refused and demanded that both parties dump their documents on each other without review and without any effort to refine the search terms. For the reasons below, All-Tag's motion should be denied.

**I.    RELEVANT BACKGROUND.**

All-Tag's statement that discovery has been "outstanding" since January 2018 is false—discovery did not begin until after the parties' Rule 26(f) conference on April 24, 2018. ECF Nos. 24, 42. Since that time, the parties worked together to resolve objections to requests, focus the scope of discovery, propose initial search terms and custodians, and exchange search hit lists. On July 12, 2018, Checkpoint produced over 2.5 million documents to All-Tag consisting of nearly Checkpoint's entire document production in the USS case. While Checkpoint contends the USS documents are irrelevant, it agreed to All-Tag's demand to produce them in an attempt to compromise and move discovery forward. Meanwhile, All-Tag has produced 26 documents—a one-page org chart and 25 documents relating to attorney John William's involvement in All-Tag.[1]

---

[1] Checkpoint raised a concern with respect to who has access to "Highly Confidential" documents Checkpoint produced given that John Williams is acting as attorney-of-record for All-Tag in this case and is also an All-Tag shareholder that has attended company board meetings. The parties are attempting to resolve this issue without Court involvement.

In addition to the 2.5 million documents demanded by All-Tag from the USS litigation, All-Tag proposed 157 separate search terms across 38 custodians over a six-year period. Unsurprisingly, the broad search terms and excessive custodians resulted in exceedingly large search results—over 1.5 million documents. Ex. A ¶ 11. Checkpoint attempted to engage All-Tag in numerous discussions about how to refine the search terms to cull out irrelevant documents and target responsive documents in a manner proportional to the needs of the case. All-Tag largely rejected those efforts. For example, Checkpoint's October 25 letter proposed seven suggestions to refine the searches and ease the discovery burden. Ex. B. All-Tag rejected all of them except one.[2] Ex. C. Checkpoint's October 30 letter requested to "discuss the suggestions in the context of All-Tag's individual search terms to see if we can reach an agreement." Ex. D. Rather than respond to that letter (which All-Tag does not attach to its motion) or Checkpoint's efforts to cooperate, All-Tag filed its motion.

## II.  ALL-TAG'S REFUSAL TO COOPERATE WITH CHECKPOINT ON SEARCH TERMS IS INCONSISTENT WITH ITS DISCOVERY OBLIGATIONS.

This Court made clear in *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs., LLC*, No. 16-CV-81180, 2017 WL 4785457, at *3 (S.D. Fla. Oct. 20, 2017), that it expects parties and counsel "to work together to arrive at reasonable search terms, to run those search terms and engage in sampling to see if the search terms are producing responsive documents or excessive irrelevant hits, and ***then to continue to refine the search terms*** in a cooperative, professional effort until the search terms are appropriately refined and produce relevant documents ***without including an excessive number of irrelevant documents***." (emphasis added). Notably, All-Tag's motion does not claim that its search terms are narrowly tailored, and it makes no mention of attempts to refine its search terms to avoid an excessive number of irrelevant documents.

Almost none of All-Tag's 157 search terms use modifiers or connectors to target responsive documents. Thus, for example, separate searches for "agreement*", "exclud*", and "exclusiv*" resulted in 569,527 documents. Ex. A ¶ 23. If these terms were combined into a search targeted to All-Tag's actual allegations—such as (agreement* AND (exclud* OR exclusiv*))—it would reduce the volume by over 80%. Ex. A ¶ 22; *see* Am. Compl. ¶ 20.

---

[2] All-Tag agreed to Checkpoint's proposal to remove most of the "unique hits." These were documents that hit on one search term, but did not hit on the 156 other search terms. As Checkpoint pointed out, given the breadth of the search terms, the odds that the "unique hits" contained responsive documents was exceedingly low. Ex. B.

2

Likewise, while the term "YouTube" resulted in 51,471 documents, searching (YouTube AND ("All Tag" OR "All-Tag" OR "AllTag")) would reduce the number to 382 and be tailored to All-Tag's single allegation in the complaint about an incident ten years ago. Ex. A ¶¶ 24-25; *see* Am. Compl. ¶ 56 (alleging a Checkpoint employee made a YouTube video about an All-Tag label in 2009). Checkpoint has highlighted numerous more examples in Ex. A ¶¶ 21-30 & Ex. 3 thereto.

All-Tag refuses to modify a single one of its 157 broad search terms or 38 custodians. Ex. C. All-Tag cites no authority permitting it to demand excessively large hit results without making any attempt to cull out irrelevant documents or refine the search terms. Indeed, the authority All-Tag cites is squarely to the contrary. *See UnitedHealthcare*, 2017 WL 4785457, at *4 ("Search terms also have to be carefully crafted and multiple levels of searches may be required to identify truly relevant ESI") (quoting John Rosenthal & Moze Cowper, *A Practitioner's Guide to Rule 26(f) Meet and Confer: A Year After the Amendments*, The Sedona Conference Institute, 2008, at 11); *L-3 Commc'ns Corp. v. Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015) ("The search terms Plaintiff has chosen to do this job simply cast too wide a net…Absent significant narrowing, the expansive search terms proposed by Plaintiff will not do."); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("Defined search strategies are even more appropriate in cases involving electronic data, where the number of documents may be exponentially greater.").

**III.   THE PARTIES MUST NARROW THE SEARCH RESULTS.**

    **A.   All-Tag's representation about the "protocol" in the USS case is false.**

All-Tag's claims regarding what the parties agreed to do in the USS case is both blatantly false and irrelevant. As the Special Master's Report attached to All-Tag's motion plainly shows, Checkpoint "insisted that just because a collected document hit on a search term did not mean the document contained any information responsive to a USS discovery request or relevant to the case, and USS was not entitled to receive irrelevant or non-responsive documents." Mot. Ex. J, p. 4. On that basis, Checkpoint objected to the Report and the district court subsequently ***sustained*** the objection holding: "The plain language of the parties' agreed upon discovery protocols did not mandate that every 'hit' during a search would have to be disclosed during discovery. Instead, it gave the parties the option, at each party's sole discretion, to review the 'hit' documents to determine whether they were relevant and/or responsive to a discovery request." Ex. E, p. 2.

Even if All-Tag's representations about what happened in a case it did not litigate were accurate, the fact that a certain approach was used in the USS case does not make that approach the best one to use in *this* case. As Checkpoint has repeatedly told All-Tag, the USS case filed seven years ago involved different claims than those here and the scope of discovery was different. Because of the massive number of documents produced in the USS case, Checkpoint spent an inordinate amount of time and money litigating side issues, paid exorbitant ESI loading and hosting costs, and had to sift through thousands of junk documents to look for relevant ones. The lessons learned from the USS case should be applied—not ignored—in this case. Here, the parties would be better off spending more time and effort up front to craft careful, tailored search terms rather than simply "dump" documents on the other side.

### B. All-Tag misstates Checkpoint's position regarding a responsiveness review.

All-Tag's assertion that Checkpoint is demanding a "document-by-document review" of nearly a million documents is a misstatement. Such a review will be unduly burdensome, expensive, and time consuming. But that does not mean that *no* responsiveness review should be conducted.[3] Indeed, courts have criticized and rejected the use of the "document dump" strategy that All-Tag advocates here. *See Youngevity Int'l Corp. v. Smith*, No. 16-cv-00704, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017) ("[P]roducing all documents hit upon without reviewing a single document prior to production or engaging in any other quality control measures, does not satisfy Youngevity's discovery obligations."); *Henderson v. Holiday CVS, LLC*, No. 09-80909, 2010 WL 11505168, at *2 (S.D. Fla. Aug. 11, 2010) (Rule 34 does not permit parties "to engage in a wholesale 'document dump' with an instruction to the requesting party to 'go fish'"). Instead of these two extremes, Checkpoint has asked All-Tag to cooperate to cull out excessively irrelevant documents, such as by modifying search terms and custodians, engaging in a sampling or iterative discovery process, and using technology assisted review. Ex. B. All-Tag has rejected all of these suggestions out-of-hand without discussion.

---

[3] All-Tag concedes that its proposal to mark all documents Highly Confidential without reviewing them would violate the Protective Order. While it cites two West Virginia cases apparently allowing this, Checkpoint is aware of no such authority in this District, and certainly not without the agreement of both parties and the Court. Here, based on a reduced volume of documents, the parties could determine whether a responsiveness review is feasible.

All-Tag miscites its authority in claiming that it has no obligation to ensure that responsive documents are produced and irrelevant documents are minimized. In *Treppel*, the court simply held that a party has no obligation to review every document the party has to respond to discovery requests—but rather should come up with a "comprehensive search strategy" to target "files that are likely to be relevant to the claims in the litigation." *Treppel*, 233 F.R.D. at 374; *see also Adair v. EQT Prod. Co.*, No. 10CV00037, 2012 WL 2526982, at *2 (W.D. Va. June 29, 2012) (ordering the parties "to propose additional search terms that might be used to find emails particularly responsive to plaintiffs' discovery requests"); *FDIC v. Giannoulias*, No. 12 C 1665, 2013 WL 5762397, at *2 (N.D. Ill. Oct. 23, 2013) (holding "party responding to discovery must inspect its records and produce only those documents that are responsive to the opposing party's requests" and noting the "parties' narrowly-tailored search terms"). The same approach should be employed here.

## IV.     THE COURT SHOULD CONSIDER CHECKPOINT'S ESI BURDEN.

In addition to the added burden and expense of reviewing and sifting through thousands of irrelevant documents under All-Tag's approach, Checkpoint faces a significant burden and cost in just loading and hosting the massive amount of ESI generated by All-Tag's broad searches. As explained in the attached affidavit, Checkpoint would have to spend approximately $140,000 just to process and load the nearly one million documents, plus nearly $7,000 in monthly hosting costs—neither of which include the additional out-of-pocket cost to load and host All-Tag's document dump. Ex. A ¶¶ 18-19. Checkpoint would have to spend approximately an additional $250,000 to produce the nearly one million documents to All-Tag.  Ex. A ¶ 20. Checkpoint's October 25, 2018 letter requested that the parties discuss some sort of cost sharing to distribute the burden equally, but All-Tag flatly rejected the request without discussion. To the extent the Court sanctions All-Tag's "document dump" proposal, Checkpoint requests that the Court also require All-Tag to share the cost of the massive ESI that All-Tag demands. *See UnitedHealthcare*, 2017 WL 4785457, at *5 (advising parties that the Court will strictly utilize cost-shifting against any party who seeks excessive discovery).

## V.     CONCLUSION

Checkpoint requests the Court deny All-Tag's motion, award Checkpoint its fees and costs under Fed. R. Civ. P. 37(a)(5)(B), and grant such other and further relief as justice may require.

5

| | |
|---|---|
| Dated: November 13, 2018 | /s/ Gavin C. Gaukgroger<br>One of the attorneys for Checkpoint Systems, Inc. |
| Gavin C. Gaukroger<br>BERGER SINGERMAN LLP<br>350 East Las Olas Boulevard, Suite 1000<br>Fort Lauderdale, Florida 33301<br>Tel: (954) 525-9900<br>Fax: (954) 523-2872<br>ggaukroger@bergersingerman.com | Robert J. Palmersheim (*pro hac vice*)<br>Anand C. Mathew (*pro hac vice*)<br>PALMERSHEIM & MATHEW LLP<br>401 N. Franklin Street, Suite 4S<br>Chicago, Illinois 60654<br>Tel: (312) 319-1791<br>Fax: (312) 878-2890<br>rjp@thepmlawfirm.com<br>acm@thepmlawfirm.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 13, 2018, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF which will generate and serve a Notice of Electronic Filing to the following:

Damon Suden
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
212-808-7800
Email: dsuden@KelleyDrye.com

Julian Solotorovsky
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606
312-857-7070
Email: jsolotorovsky@KelleyDrye.com

William A. MacLeod
Kelley Drye & Warren LLP
3050 K Street NW, Suite 400
Washington, DC 20007
202-342-8811
Email: wmacleod@kelleydrye.com

Christopher W. Kammerer
John F. Mariani
Kammerer Mariani PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
561-990-1592
Email: ckammerer@kammerermariani.com
Email: jmariani@kammerermariani.com

John B. Williams
Williams Lopatto PLLC
1707 L Street NW, Suite 550
Washington, DC 20036
202-296-1611
Email: jbwilliams@williamslopatto.com

                                                */s/ Gavin C. Gaukroger*

8795517-1

**Error! No document variable supplied.**