IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALL-TAG CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17 CV 81261-WPD |
| v. | ) |
| | ) Judge William P. Dimitrouleas |
| CHECKPOINT SYSTEMS, INC., | ) Magistrate Judge William Matthewman |
| | ) |
| Defendant. | ) |

**ALL-TAG CORP.'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO COMPEL DISCOVERY**

Checkpoint's Response confirms the need for court intervention in this dispute: (1) Checkpoint refuses to produce responsive documents until it has conducted an individual review of each one; and (2) with limited exception, Checkpoint refuses to agree to any time schedule by which it will produce responsive documents unless and until agreement is reached on the electronically stored information (ESI) terms. However, an individual review of documents could take months and months, and agreement on the necessary ESI terms appears difficult to achieve. All-Tag therefore requests an order requiring production of the documents identified by the searches the parties have negotiated. All-Tag also requests a date certain by which these documents will be produced.

Checkpoint's response sidesteps these issues, and seeks to quibble with the search terms All Tag has proposed. But all of this quibble can be avoided were Checkpoint to simply produce the documents identified in the search terms All-Tag has proposed. This was the procedure that was approved in the *USS* litigation, this is what All-Tag has proposed with respect to its documents, and at this point, this is likely the only way this case may proceed according to the discovery schedule.

Checkpoint's other argument is that All-Tag has not yet produced the documents responsive to the search terms identified by Checkpoint. What Checkpoint fails to mention, however, is that All-Tag has offered to do just that—produce each and every document responsive to the search terms that Checkpoint has proposed. But Checkpoint has rejected that

offer, claiming that All-Tag must itself review each and every document responsive to Checkpoint's search terms, an undertaking that will delay discovery even further.

Accordingly, with respect to all of these issues, All-Tag's proposal that both parties produce all documents containing the identified search terms, subject only to a privilege filter, is the most efficient and expedient option available in a case of this size and scope. The Court should grant All-Tag's motion.

## I.  CHECKPOINT'S PRODUCTION OF DOCUMENTS

As noted above, the central issue presented in this motion presents the need to produce documents containing search terms in a timely manner – and without the need for a further manual review for responsiveness. Checkpoint skirts this issue, and complains instead about the search terms that All-Tag identified. At bottom, this disagreement over "search terms" and "modifiers" and "connectors" and "unique hits" is nothing but a sideshow. While it may be possible to reduce the number of documents considerably below the current number, the fact remains that even at that reduced number, a manual review for further responsiveness is simply not possible if this case is to be tried upon schedule.

In any event, as Checkpoint has raised the issue over ESI negotiations, we will address it briefly. Contrary to Checkpoint's assertion that "[a]lmost none of All-Tag's 157 search terms use modifiers or connectors to target responsive documents," All-Tag had already agreed to employ connectors for virtually all search terms by agreeing to remove any document from production that contains only one term. *See* Exhibit C to Response at 1-2 (All-Tag agreeing to eliminate "unique hits"). In other words, a responsive document must now contain two or more search terms – such as "agreement" *and* "exclude." As a result of this agreement, half a million documents already had been dropped from the 1.5 million that Checkpoint cited in its brief. Simply put, Checkpoint's document counts are based upon outdated search requests. For example, as to the term "YouTube" (a medium Checkpoint used to disseminate deceptive claims), Checkpoint continues to refer to the 51,471 documents that contained only that term, ignoring the 12,258 documents that All-Tag agreed to remove from consideration a week before Checkpoint filed its Response. The same is true for other terms cited in the Response, including in the Affidavit of Sebolatito Adeyemi.

What is apparent is that these search term negotiations are being used by Checkpoint as a roadblock, not an aid, to production. During a meet and confer this week, Checkpoint stated its

intent to withhold *all* documents – including documents like contracts and antitrust policies that it had identified and promised to produce – until it finishes discussing All-Tag's search terms. A day later, Checkpoint changed its position – now offering to produce some unspecified documents on November 30. This refusal and retraction illustrate the sluggish pace of discovery in this case. Identified and responsive documents should not be held hostage to Checkpoint's efforts to gain concessions on others.

All-Tag has engaged, and continues to engage, in good faith efforts to finalize a search term list acceptable to Checkpoint. In addition to agreeing to connectors, All-Tag previously agreed to eliminate several custodians at Checkpoint's request and narrowed or removed numerous search terms. The first time Checkpoint offered any other specific proposals regarding modifications to the terms, though, was in its Response. *See* Response at 2-3. All-Tag will respond to each of these proposals. But the question, and dispute, will remain – how and when will documents containing the identified search terms be produced.

Both sides appear to be in agreement that this complex case will require large productions, and that a document-by-document review is simply not realistic. Motion to Compel at 3; Response at 4. The protocol proposed by All-Tag is the best way to produce responsive documents without unreasonably burdening either side. Checkpoint offers only more delay.

## II. CHECKPOINT HAS REJECTED ALL-TAG'S DOCUMENT PRODUCTION

Checkpoint's claim that All-Tag has only produced 26 documents ignores the elephant in their living room—ie, the fact that we have offered to produce all of our documents identified in Checkpoint's search list. Almost two months ago, All-Tag offered to produce over 400,000 documents that contain the search terms proposed by Checkpoint from the custodians chosen by Checkpoint, subject only to a privilege filter. Checkpoint not only refused to accept this production, *it threatened to seek sanctions against All-Tag were it to produce these documents. See e.g.* Exhibit M to Motion to Compel at 2. Moreover, Checkpoint failed to respond to All-Tag's offer to modify search terms to reduce the number of documents, and made no modification offer of its own. Motion to Compel at 3. Instead, it has demanded that All-Tag review every document containing multiple search terms to confirm it is responsive before producing it. This impasse, and not any unwillingness by All-Tag, is the sole reason All-Tag has not produced its documents.

All-Tag's proposal is significantly more tailored than the one approved a few years ago in the *USS Litigation*. Yet since Checkpoint still refuses to accept this modified proposal, All-Tag must ask that this Court to allow it to produce its documents as discussed above.

### III. CONCLUSION

All-Tag filed its Motion to Compel to get this case moving. All-Tag requests that this Court order the parties to produce within 10 days the documents identified by the search terms the parties have negotiated, and in the absence of an agreement, the documents identified in each party's latest search term proposal.

Dated: November 16, 2018

Respectfully submitted,
By: */s/ Christopher Kammerer*
      Christopher Kammerer

Christopher William Kammerer
John F. Mariani
KAMMERER MARIANI PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
(561)-990-1592
ckammerer@kammerermariani.com
jmariani@kammerermariani.com

William MacLeod (*pro hac vice*)
Julian Solotorovsky (*pro hac vice*)
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
(312)-857-7070
jsolotorovsky@kelleydrye.com
wmacleod@kelleydrye.com

Damon Suden (*pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212)-808-7800
dsuden@KelleyDrye.com

John B. Williams *(pro hac vice)*
WILLIAMS LOPATTO PLLC
1707 L Street, NW Suite 550
Washington, DC 20036

(202) 296-1611  
jbwilliams@williamslopatto.com  
*Attorneys for Plaintiff All-Tag Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of November 2018, a true and correct copy of the foregoing was served upon the following counsel of record for Defendant via PACER:

        Charles Howard Lichtman
        Gavin Gaukroger
        BERGER SINGERMAN
        Las Olas Centre II
        350 E Las Olas Boulevard
        Suite 1000
        Fort Lauderdale, FL 33301
        954-525-9900
        Fax: 523-2872
        clichtman@bergersingerman.com
        ggaukroger@bergersingerman.com

        Robert J. Palmersheim
        Anand C. Mathew
        PALMERSHEIM & MATHEW
        401 N. FRANKLIN STREET, SUITE 4S
        CHICAGO, IL 60654
        312-319-1791
        acm@thepmlawfirm.com
        rjp@thepmlawfirm.com

By: */s/ Christopher Kammerer*
     Christopher Kammerer