1              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF FLORIDA
2
                17-81261-CV-DIMITROULEAS/MATTHEWMAN
3

4
   ALL-TAG CORPORATION,          )
5                                )
                 PLAINTIFF,      )
6                                )
          VS.                    )
7                                )
   CHECKPOINT SYSTEMS, INC.,     )
8                                )
                 DEFENDANT.      )
9  _____)

10                (TRANSCRIPT BY DIGITAL RECORDING)

11

12          TRANSCRIPT OF MOTION TO COMPEL PRODUCTION OF

13  DOCUMENTS HAD BEFORE THE HONORABLE WILLIAM MATTHEWMAN, IN WEST

14  PALM BEACH, PALM BEACH COUNTY, FLORIDA, ON NOVEMBER 30, 2018,

15  IN THE ABOVE-STYLED MATTER.

16

17
   APPEARANCES:
18
   FOR THE PLAINTIFF:  WILLIAM MACLEOD, ESQ.
19                     KELLEY DRYE & WARREN LLP
                       WASHINGTON HARBOUR, SUITE 400
20                     3050 K STREET NW
                       WASHINGTON, DC 20007 - 202 342-8400
21

22

23              CARL SCHANZLEH, RPR - CM
                CERTIFIED COURT REPORTER
24               9960 SW 4TH STREET
               PLANTATION, FLORIDA 33324
25                 954 424-6723

```
 1  APPEARANCES CONTINUED:

 2  FOR THE PLAINTIFF:  JOHN F. MARIANI, ESQ.
                        KAMMERER & MARIANI, PLLC
 3                      1601 FORUM PLACE, SUITE 500
                        WEST PALM BEACH, FL 33401 - 561 547-7740
 4
                        DAMON SUDEN, ESQ.
 5                      KELLEY DRYE & WARREN LLP
                        101 PARK AVENUE
 6                      NEW YORK, NY 10178 - 212 808-7800

 7                      JOHN B. WILLIAMS, ESQ.
                        WILLIAMS LOPATTO PLLC
 8                      1707 L STREET NW, SUITE
                        WASHINGTON, DC 20036 - 202 296-1665
 9
    FOR THE DEFENDANT:  ROBERT J. PALMERSHEIM, ESQ.
10                      PALMERSHEIM & MATTHEW
                        401 N. FRANKLIN STREET, SUITE 4S
11                      CHICAGO, IL 60654 - 312 319-1791

12                      GAVIN C. GAUKROGER, ESQ.
                        BERGER SINGERMAN LLP
13                      350 EAST LAS OLAS BOULEVARD, SUITE 1000
                        FORT LAUDERDALE, FL 33301 - 954 525-9900
14

15

16                     TABLE OF CONTENTS

17  WITNESSES:                   DIRECT  CROSS REDIRECT RECROSS

18
                        INDEX TO EXHIBITS
19
    EXHIBITS                   MARKED FOR       RECEIVED
20                             IDENTIFICATION   IN EVIDENCE

21  DESCRIPTION                PAGE     LINE     PAGE    LINE

22

23

24

25
```

1  (WEST PALM BEACH, PALM BEACH COUNTY, FLORIDA;  NOVEMBER 13,

2  2018, IN OPEN COURT.)

3           THE COURT:  ALL RIGHT.  LET'S GO AHEAD AND CALL THE

4  CASE.

5           THE CLERK:  CALLING CASE NUMBER

6  17-81261-CV-DIMITROULEAS SLASH MATTHEWMAN, ALL-TAG CORP.

7  AGAINST CHECKPOINT SYSTEMS, INCORPORATED.

8           THE COURT:  ALL RIGHT.  LET'S GET APPEARANCES FROM

9  COUNSEL STARTING WITH THE PLAINTIFF ALL-TAG.

10           MR. MARIANI:  GOOD AFTERNOON, YOUR HONOR.  JOHN

11  MARIANI BEHALF OF PLAINTIFF.  WITH ME IS WILLIAM MACLEOD WHO

12  WILL BE DOING THE ARGUMENT TODAY, JOHN WILLIAMS AND DAMON

13  SUDEN.

14           THE COURT:  ALL RIGHT.  GOOD AFTERNOON TO ALL OF YOU.

15           MR. MACLEOD:  THANK YOU, YOUR HONOR.

16           THE COURT:  AND WHO DO WE HAVE HERE FOR THE DEFENDANT

17  CHECKPOINT?

18           MR. GAUKROGER:  GOOD AFTERNOON, YOUR HONOR.  MY NAME

19  IS GAVIN GAUKROGER WITH THE LAW FIRM OF BERGER SINGERMAN.  WITH

20  ME TODAY IS MY CO-COUNSEL ROBERT PALMERSHEIM.  HE'LL BE

21  HANDLING THE ARGUMENT TODAY AS WELL.

22           THE COURT:  ALL RIGHT.  GOOD AFTERNOON TO BOTH OF YOU.

23           MR. GAUKROGER:  THANK YOU, YOUR HONOR.

24           THE COURT:  OKAY.

25           SO IN THIS CASE THERE IS A PENDING MOTION, THE

4

1  PLAINTIFF'S MOTION TO COMPEL DISCOVERY AT DOCKET ENTRY 64.  THE

2  DEFENDANT FILED A RESPONSE AT DOCKET ENTRY 66.  THE PLAINTIFF

3  FILED A REPLY AT DOCKET ENTRY 70.

4       THERE WAS A JOINT NOTICE FILED AT DOCKET ENTRY 71 AND

5  THEN I BELIEVE ANOTHER NOTICE FILED AT DOCKET ENTRY 72 IF I'M

6  NOT MISTAKEN.

7       I'VE REVIEWED THE MOTION, RESPONSE, REPLY, JOINT

8  NOTICE AND IT SEEMS LIKE THERE IS A DISPUTE HERE OVER SEARCH

9  AND THE METHOD OF PRODUCTION.

10       SO LET'S HEAR -- SINCE IT'S PLAINTIFF'S MOTION, LET ME

11  HEAR FIRST FROM THE PLAINTIFF ON THE CURRENT STATUS AND WHAT

12  YOU SEE IS THE PROBLEM HERE.

13       IT'S MR. MACLEOD, CORRECT?

14       MR. MACLEOD:  THANK YOU, JUDGE.

15       YES, I BELIEVE THE DISPUTE HERE HAS MORE TO DO WITH

16  THE DATE OF PRODUCTION THAN IT HAS TO DO WITH ESI.

17       WE HAVE HAD A NUMBER OF DISCUSSIONS AND EXCHANGES OF

18  THE ESI.  WE HAVE HAD NUMEROUS MODIFICATIONS OF THE ESI, WE

19  HAVE HAD MODIFICATIONS OF THE CUSTODIANS TO WHICH THE DOCUMENTS

20  WOULD BE DRAWN.  AND IN THE LAST SUPPLEMENTAL NOTICE THAT WAS

21  FILED JUST YESTERDAY I THINK THAT THERE IS A VERY GOOD SUMMARY

22  OF WHAT HAS BEEN THE FRUIT OF THE LABOR OF THE ESI

23  NEGOTIATIONS.

24       WE'RE TALKING, OF COURSE, ABOUT THE DOCUMENT

25  PRODUCTION OF THE DEFENDANT'S TO THE PLAINTIFF'S REQUEST FOR

1   PRODUCTION.  WE IDENTIFY CUSTODIANS.  THOSE WERE NARROWED DOWN

2   AFTER DISCUSSIONS.  AND FROM THOSE CUSTODIANS THE DEFENDANT

3   FOUND APPROXIMATELY SIX MILLION DOCUMENTS.  THROUGH THE ESI

4   THOSE DOCUMENTS WERE WHITTLED DOWN TO ABOUT SIX HUNDRED

5   THOUSAND.  WITH ATTACHMENTS THEY COME BACK UP TO ABOUT A

6   MILLION.

7           THAT WAS A LONG AND THAT WAS A PRODUCTIVE NEGOTIATION.

8   EVERY SINGLE ESI TERM EXCEPT FOR THE NAME OF THE PLAINTIFF,

9   ALL-TAG, WAS MODIFIED SO THAT A DOCUMENT WOULD NOT BE CAUGHT BY

10  THE ESI UNLESS THERE WERE TWO TERMS.  A SINGLE SEARCH TERM

11  WOULD NEVER CATCH A DOCUMENT UNLESS THAT SEARCH TERM WAS

12  ALL-TAG.  THAT BROUGHT US DOWN FROM ABOUT ONE POINT FIVE

13  MILLION TO THE MILLION WHERE WE STAND TODAY.

14          I'VE BEEN LITIGATING ANTITRUST CASES FOR MOST OF MY

15  CAREER.  I CAN'T RECALL THE LAST TIME IN MODERN DISCOVERY THAT

16  AN ANTITRUST CASE HAS HAD LESS THAN A MILLION DOCUMENTS FROM

17  ANY SIZABLE COMPANY.  THIS HAS BEEN A PRODUCTIVE EXERCISE IN

18  REDUCING THE SIZE -- REDUCING THE NUMBER OF THE DOCUMENTS AND

19  WE HAVE HAD A VERY BENEFICIAL RESULT OF THE MOTION AND THE

20  COURT'S ORDER FOR THE PARTIES TO BRIEF QUICKLY AND THEN COME TO

21  ARGUE OUR MOTION.

22          AND THAT BENEFICIAL RESULT WAS FOR THE FIRST TIME IN

23  THE RESPONSE PAPERS.  WE HEARD FROM DEFENDANTS SOME SUGGESTIONS

24  FOR HOW TO MODIFY TERMS BEYOND THOSE TO WHICH WE HAD ALREADY

25  AGREED.  AND WE WENT THROUGH SOME VERY CAREFUL AND COMPLEX

1  MODIFICATIONS OF ABOUT NINETEEN OF THE TERMS.  WE ADDED

2  NUMEROUS CONNECTORS, WE ADDED VARIOUS MODIFIERS.  AND AS A

3  RESULT OF THAT ENTIRE EXERCISE THE NUMBER OF DOCUMENTS ON WHICH

4  THE TERMS HIT CHANGED RELATIVELY LITTLE.

5       WE SEEM TO HAVE COME TO THIS NUMBER THAT IS SLIGHTLY

6  UNDER A MILLION BUT WE MIGHT BE ABLE TO AFFECT BY A FEW

7  PERCENTAGE POINTS, MAYBE A FEW TENTHS OF A PERCENTAGE.  BUT WE

8  ARE AT WHAT APPEARS FROM THE VERY EXTENSIVE NEGOTIATION

9  REANALYSIS OF THE HITS, REPORTS OF THE HITS WITH THE NUMBER

10  THAT COMES BACK THE SAME.  AND SO, THE POSITION OF ALL-TAG IS

11  THAT WHAT WE NEED IS A DATE BY WHICH THESE DOCUMENTS ARE GOING

12  TO BE PRODUCED.

13       WE SEE VERY LITTLE VALUE, VERY LITTLE EFFICIENCY IN

14  TRYING TO FIND AN EXTRA PERCENT OR TWO OF DOCUMENTS TO REDUCE

15  FROM THOSE WHICH WE HAVE BEEN TRYING TO REDUCE FOR THE LAST FEW

16  WEEKS.

17       THE COURT:  AND YOU'RE SAYING IT STARTED OUT THERE

18  WERE SOMEWHERE AROUND SIX MILLION AND IT'S DOWN TO WHAT YOU

19  CATEGORIZE AS ABOUT A MILLION?

20       MR. MACLEOD:  IT IS DOWN TO A MILLION.  AND THAT IS

21  SIX HUNDRED DOCUMENTS WITH ATTACHMENTS THAT WILL BRING THE

22  FAMILIES UP TO ABOUT A MILLION.  THAT IS A HIT RATE OF ACTUAL

23  DOCUMENTS OF TEN PERCENT.  THAT IS THE REPORT FROM THE VENDOR,

24  THE DEFENDANT'S VENDOR --

25       THE COURT:  DO BOTH PARTIES HAVE ESI EXPERTS?

1           MR. MACLEOD:  BOTH PARTIES HAVE ESI EXPERTS.

2           THE COURT:  HAVE BOTH PARTIES ESI EXPERTS TALKED?

3           MR. MACLEOD:  NOT THAT I AM AWARE.  BUT --

4           THE COURT:  COUNSEL HAVE?

5           MR. MACLEOD:  COUNSEL HAVE TALKED EXTENSIVELY ABOUT

6  THE ESI AND ABOUT THE -- THE VENDORS REPORTS FROM THE ESI,

7  ABOUT THE ABILITY OF THE ESI VENDORS TO ACCOMPLISH VARIOUS

8  REDUCTION TECHNIQUES.  AND I THINK THESE TECHNIQUES HAVE BEEN

9  EFFECTIVE.  I THINK WE HAVE TAKEN THESE DOCUMENTS DOWN TO A

10  POINT WHERE IT WILL BE DIFFICULT TO REDUCE THEM FURTHER.

11           AND A GOOD MEASURE, A GOOD TEST OF THAT IS AFTER

12  EXTENSIVE MODIFICATIONS TO ALL OF THESE TERMS THAT THE

13  DEFENDANTS INTRODUCED IN THEIR PAPERS.  WHEN THE DEFENDANTS

14  FILED THEIR RESPONSE TO OUR MOTION IT WAS THE FIRST TIME THEY

15  SUGGESTED WHAT THEIR REPORTS FROM THEIR VENDORS THAT WE COULD

16  ADD THESE MODIFIERS TO AGREE.  WE COULD ADD THESE MODIFIERS TO

17  AUDIT.

18           AND SO, WE ENGAGED IN THAT DISCUSSION.  WE ADDED THESE

19  MODIFIERS AND IT DIDN'T CHANGE THE NUMBER MUCH.  AND THE REASON

20  WHY, AT LEAST IN MY EXPERIENCE WITH ESI IS PRETTY OBVIOUS.

21           WE HAVE CAPTURED WITH ALL OF OUR TERMS THESE DOCUMENTS

22  ALREADY.  AND WE CAN NARROW ONE PARTICULAR TERM TO TAKE A FEWER

23  DOCUMENTS, BUT THAT DOESN'T MEAN THAT OTHER TERMS ARE APPEARING

24  IN THESE SAME DOCUMENTS.  AND THESE DOCUMENTS ARE STILL GOING

25  TO BE RESPONSIVE TO THE SEARCH TERMS WHICH TELLS ME THAT WE

1  HAVE DONE A GOOD JOB OF, FIRST, PRESENTING THE SEARCH TERMS,

2  DISCUSSING THE SEARCH TERMS.  WHEN A TERM GOT WAY TOO MANY ON

3  EITHER SIDE WE SIMPLY DROPPED THE TERM.  AND THEN FINALLY ONCE

4  WE WERE ABLE TO GET THE VENDORS REPORTS ON THE NUMBER OF

5  DOCUMENTS THAT WERE RESPONSIVE WE FOUND THAT THE NUMBERS DID

6  NOT CHANGE BY THAT MUCH.

7          THE THING THAT IS CHANGING ON A DAILY BASIS IS THE

8  DATE BY WHICH WE HAVE TO HAVE OUR JOB DONE IN ORDER FOR THIS

9  CASE TO BE READY FOR THE CLOSE OF DISCOVERY.

10          THE COURT:  WHEN IS THE CLOSE OF DISCOVERY?

11          MR. MACLEOD:  THE CLOSE OF DISCOVERY IS SEPTEMBER

12  11TH.

13          SO IT WILL -- SEPTEMBER 11TH OF NEXT YEAR.

14          THE COURT:  OKAY.

15          MR. MACLEOD:  AND WE SO FAR HAVE RECEIVED SIX

16  DOCUMENTS FROM THE DEFENDANTS IN THIS CASE.  WE DID GET, AND

17  YOU WILL PROBABLY HEAR ABOUT THIS, A REPACKAGED PRODUCTION FROM

18  A PRIOR CASE.  BUT IN THE CURRENT DOCUMENT SET, THE CURRENT

19  REQUEST FOR PRODUCTION, WE'VE RECEIVED SIX DOCUMENTS SO FAR.

20          AND IF WE GET THEM IN THE NEXT TWO OR THREE WEEKS THAT

21  IS STILL GOING TO GIVE US ROUGHLY EIGHT MONTHS TO REVIEW THE

22  DOCUMENTS, TO SCHEDULE DEPOSITIONS, OF WHICH THERE HAS BEEN

23  NONE, AND THEN TO HAVE THE CASE READY FOR THE CLOSE OF

24  DISCOVERY.

25          THE COURT:  WELL, THIS IS A SHERMAN ANTITRUST CASE

1    ABOUT ANTI THEFT DEVICES, IS THAT RIGHT?

2            MR. MACLEOD:  THAT IS CORRECT.

3            THE COURT:  CAN YOU GIVE ME JUST A SHORT VERSION,

4    NUTSHELL OF WHAT YOUR POSITION IS IN THE CASE AND WHAT IT'S

5    ABOUT WITHOUT GOING INTO GREAT DETAIL?

6            MR. MACLEOD:  OF COURSE.

7            THE SHORT VERSION OF THE CASE IS THAT THE PLAINTIFF

8    ALL-TAG HAS ALLEGED THAT THE DEFENDANT, CHECKPOINT, THROUGH THE

9    USE OF EXCLUSIVE CONTRACTS AND THROUGH THE USE OF DECEPTIVE

10   ADVERTISING HAS MONOPOLIZED AND CONTINUES TO MONOPOLIZE THE

11   MARKET FOR RF LABELS, THE ANTI THEFT LABELS, THE SECURITY

12   LABELS THAT RETAILERS ATTACH TO PRODUCTS THAT SELL IN STORES.

13   THIS IS, WE THINK, A CASE THAT IS VERY WELL WITHIN THE

14   MAINSTREAM OF ANTITRUST THEORY.

15           THE ANTITRUST CASE WAS BROUGHT BEFORE THE COURT ON A

16   MOTION TO DISMISS.  THE ANTITRUST CLAIM SURVIVED ENTIRELY

17   INTACT, AND IT IS NONETHELESS AS ARE MOST ANTITRUST CASES A

18   RELATIVELY COMPLEX CASE.

19           WE NEED TO SEE THE DOCUMENTS.  WE NEED TO UNDERSTAND

20   THE EFFECT AND EXTENT OF THE EXCLUSIVE DEALING AND THE

21   DECEPTIVE ADVERTISING THAT HAS CAUSED OUR CLIENT, A SMALL

22   COMPETITOR, IN A BUSINESS WHERE ABOUT THE ONLY SIGNIFICANT

23   COMPETITOR IN TOWN IS NOW THE DEFENDANT.

24           HOW THESE AGREEMENTS, HOW THESE ADVERTISEMENTS, HOW

25   THESE INDUCEMENTS TO THE CUSTOMERS HAVE MANAGED TO PREVENT US

1    FROM COMPETING ON THE MERITS.  THAT'S A NUTSHELL OF THE CASE.

2         THOSE KINDS OF CASES INVOLVE QUITE A FEW DOCUMENTS.

3    THOSE CASES INVOLVE OF MEASURES OF MARKETS, THEY INVOLVE

4    NUMBERS OF SALES, THEY INVOLVE AGREEMENTS WITH CUSTOMERS, THEY

5    INVOLVE THE PRICING AND THE PACKAGING OF DIFFERENT PRODUCTS TO

6    CUSTOMERS SO THAT YOU CAN ASCERTAIN EXACTLY WHAT KIND OF DEAL A

7    CUSTOMER HAS BEEN OFFERED AND WHAT A CUSTOMER HAS ACCEPTED.

8         THAT'S WHY ANTITRUST CASES HAVE QUITE A FEW DOCUMENTS

9    INVOLVED.  THERE IS A GREAT DEAL OF DATA INVOLVED, THERE IS

10   EXPERT TESTIMONY INVOLVED.  THEY ARE DOCUMENT HEAVY CASES

11   UNFORTUNATELY.

12         THE COURT:  FROM WHAT I CAN GATHER THEN ON YOUR

13   MOTION, BASICALLY WHAT YOUR POSITION IS -- ON BEHALF OF THE

14   PLAINTIFF IS THAT YOU'VE CONFERRED WITH THE DEFENDANT, YOU'VE

15   GOTTEN DOCUMENTS DOWN FROM WHAT YOU BELIEVE WAS SIX MILLION TO

16   ABOUT A MILLION WITH ATTACHMENTS.

17         YOU CAN'T REALLY REDUCE IT ANY FURTHER.  IF YOU WERE

18   ABLE TO REDUCE IT ANY FURTHER IT'S NOT REALLY COST EFFECTIVE TO

19   THAT BECAUSE IT'S GOING TO NOMINALLY REDUCE THE NUMBERS AND YOU

20   NEED A DATA PRODUCTION SO YOU CAN MOVE FORWARD ON DISCOVERY.

21         DOES THAT PRETTY MUCH SUM UP YOUR MOTION?

22         MR. MACLEOD:  THAT VERY MUCH SUMS UP OUR MOTION.

23   THERE ARE OBVIOUSLY POSITIONS THAT THE DEFENDANT HAS TAKEN IN

24   OUR PAPERS.  I WOULD BE GLAD TO RESPOND TO THEM NOW, RESPOND TO

25   THEM AFTER DEFENDANT HAS --

1            THE COURT:  NO.  I THINK I GOT IT.

2            LET ME HEAR FROM DEFENSE COUNSEL NOW AND THEN YOU NEED

3   TO I'LL GO BACK TO YOU.

4            MR. MACLEOD:  THANK YOU, YOUR HONOR.

5            THE COURT:  ALL RIGHT.

6            SO IS IT MR. PALMERSHEIM?

7            MR. PALMERSHEIM:  THAT'S CORRECT, YOUR HONOR.

8            THE COURT:  ALL RIGHT.  SO WHAT'S THE DEFENSE POSITION

9   ON ALL OF THIS?

10            MR. PALMERSHEIM:  WELL, OUR POSITION IS THAT THE

11   PARTIES JUST HAVEN'T DONE ENOUGH.  I MEAN, FRANKLY WHAT I HEARD

12   FROM MR. MACLEOD IS A COMPLETE OVERSTATEMENT OF WHAT'S HAPPENED

13   OVER THE LAST MONTH.

14            TO SAY THAT WE'VE GO THROUGH ALL SORTS OF ITERATIONS

15   AND WE'VE DONE WHAT THE FEDERAL RULES CALL FOR IN TERMS OF

16   APPROACHING ESI, OR THE PRINCIPLES FROM THE SEDONA CONFERENCE,

17   OR ANY OF THOSE THINGS, WE HAVEN'T EVEN TOUCHED THEM.

18            WE'VE PROPOSED THEM.  WE'VE PROPOSED THEM IN AN

19   OCTOBER 25TH LETTER.  WE SAID, HERE IS AT LEAST FIVE THINGS

20   THAT WE CAN DO TO GET THIS NUMBER DOWN, AND THEY'VE REJECTED

21   VIRTUALLY EVERY ONE OF THEM.

22            AND, OF COURSE, THEY'RE GOING TO REJECT THEM BECAUSE

23   THE PRODUCTION COSTS, WHICH WE'VE OUTLINED IN THE AFFIDAVIT WE

24   SUBMITTED, THE ONLY AFFIDAVIT THAT ANY PARTY HAS SUBMITTED ON

25   THIS MOTION, EXPLAIN THAT IT'S GOING TO COST CHECKPOINT FOUR

1  HUNDRED THOUSAND PLUS DOLLARS TO COMPLY WITH WHAT THEY'RE

2  ASKING FOR.

3           THE COURT:  WHY IS THAT?

4           MR. PALMERSHEIM:  HE --

5           THE COURT:  I MEAN, IF YOU'RE TALKING ABOUT SEVEN OR

6  EIGHT HUNDRED THOUSAND DOCUMENTS WITH ATTACHMENTS WHICH COMES

7  TO A MILLION DOCUMENTS, IF THAT FIGURE IS ACCURATE, WHY WOULD A

8  FOUR HUNDRED THOUSAND DOLLAR PRICE TAG BE PUT ON THAT, NUMBER

9  ONE; AND THEN, NUMBER TWO, IF THAT IS THE CASE ISN'T IT

10 NORMALLY THE STANDARD IN DISCOVERY THAT THE PRODUCING PARTY

11 BEARS THE COST AND THE COURT CAN ALLOCATE, AND CERTAINLY UNDER

12 RULE 26(C)(1)(B) I CAN ALLOCATE COSTS.  BUT IT'S AN

13 EXTRAORDINARY CIRCUMSTANCE.  THAT'S RECOGNIZED BY THE SEDONA

14 CONFERENCE AND IT'S PROBABLY RECOGNIZED ALSO BECAUSE IT DOESN'T

15 OCCUR THAT OFTEN.

16          SO I'M TRYING TO UNDERSTAND IF THERE IS THIS UNIVERSE

17 OF APPROXIMATELY A MILLION DOCUMENTS WHY IT WOULD TAKE FOUR

18 HUNDRED THOUSAND DOLLARS TO PRODUCE IT AND WHAT YOUR

19 ALTERNATIVE SUGGEST IS.

20          MR. PALMERSHEIM:  SO AS TO THE PRODUCTION COSTS, WE'VE

21 SUBMITTED A DECLARATION.  MARI SI CONSULTANT HAS EXPLAINED THE

22 TOTAL NUMBERS WE'RE LOOKING AT BASED ON WHAT HIT ON THE SEARCH

23 TERMS THAT WERE RUN SHORTLY BEFORE -- SHORTLY AFTER THE MOTION

24 TO COMPEL WAS FILED.  AND HE OUTLINES THAT.  WE'RE TALKING

25 ABOUT ROUGHLY A HUNDRED --

1          THE COURT:  HASN'T IT BEEN NARROWED SINCE THAT TIME?

2          MR. PALMERSHEIM:  YOU KNOW WHAT?  IT HASN'T.  AND I

3    GOT TO TAKE ISSUE WITH MR. MACLEOD ON THIS.

4          WHEN HE SAID WE STARTED WITH SIX MILLION, THAT'S ABOUT

5    AS MISLEADING AS YOU CAN GET.

6          THAT WAS THE ESI COLLECTION.  NO ONE EVER FATHOMED

7    THAT THERE WOULD BE -- WE WOULD START WITH SIX MILLION AND THAT

8    WOULD SOMEHOW BE THE BAR TO FIGURE OUT HOW MUCH PROGRESS THAT

9    WE'VE MADE.

10         THE REASON WHY IT WAS SIX MILLION WAS BECAUSE OF

11   PLAINTIFF'S INSISTENCE THAT WE COLLECT FROM THIRTY-EIGHT

12   CUSTODIANS ACROSS, YOU KNOW, FOUR DIFFERENT SERVERS.  THEY CAST

13   A VERY BROAD NET.

14         WE -- WE SAID WE'LL COLLECT FROM THAT BUT WITH THE

15   UNDERSTANDING THAT WITH WERE GOING TO USE SEARCH TERMS TO TRY

16   TO GET, YOU KNOW, REALLY WHAT DOCUMENTS WERE AT ISSUE HERE.

17         GOING BACK TO THE COST, THOUGH, YOUR HONOR.  SO WE GOT

18   A HUNDRED FIFTY THOUSAND JUST TO PROCESS THESE MILLION

19   DOCUMENTS.  WE GOT ANOTHER QUARTER OF A MILLION DOLLARS JUST TO

20   GET THEM OUT THE DOOR TO ALL-TAG.

21         THEN WE HAVE THE STORAGE COSTS.  SO LET'S ASSUME

22   FOURTEEN MONTHS FOR A MILLION DOCS., WE'RE TALKING ABOUT

23   ANOTHER HUNDRED THOUSAND DOLLARS.  THEN WE HAVE THE COST

24   ASSOCIATED WITH REVIEWING DOCUMENTS THAT PROBABLY COULD BE

25   CAUGHT UP IN A PRIVILEGE FILTER AND THOSE THAT GET CAUGHT UP IN

1  A QUALITY CONTROL FILTER.  AND I CAN EXPLAIN WHY WE NEED TO DO

2  THOSE THINGS.

3      BUT, YOU KNOW, COMMON SENSE IS IF YOU'RE STUCK WITH A

4  MUCH BIGGER POOL THESE FILTERS ARE GOING TO HAVE MORE DOCUMENTS

5  AND THEY'RE GOING TO HAVE MORE ATTORNEY TIME ASSOCIATED WITH

6  HAVING TO GET THROUGH THEM.

7      SO THE COSTS JUST KEEP ADDING UP.  AND, OF COURSE,

8  YOUR KNOW, MY OPPONENT HAS NO ISSUE WITH WHAT THEY HAVE

9  PROPOSED BECAUSE NONE OF THIS IS GOING TO BE ON THEIR DIME.

10  IT'S ALL GOING TO BE ON MY CLIENT'S DIME.

11      AND WE'VE MADE CLEAR FROM THEM -- TO THEM IN ALL OF

12  THESE SUGGESTIONS, IF YOU WANT A MILLION DOCUMENTS WITHOUT

13  TAKING THE TIME TO DO FURTHER NARROWING, TO GET THIS DOWN TO

14  WHAT REALLY ARE THE CORE DOCUMENTS, THAT'S FINE.  WE'LL PRODUCE

15  THEM WITHIN TWO WEEKS.  YOU JUST NEED TO PICK UP SOME OF THE

16  COSTS, AND THEY FLAT OUT REJECTED THAT AND SAID, IT'S A NON

17  STARTER.

18      LET ME EXPLAIN WHAT THE PARTIES HAVE BEEN TRYING TO

19  DO.  WE MADE THESE PROPOSALS BEFORE THEY FILED THE MOTION TO

20  COMPEL.  THEY DIDN'T WANT TO TALK ABOUT ANY OF THESE, THEY JUST

21  WENT AHEAD AND FILED THEIR MOTION.

22      MR. MACLEOD SAYS THAT THERE HAS BEEN SUBSTANTIAL

23  MODIFICATIONS AND ITERATIONS.  THE NUMBER OF DOCUMENTS SINCE

24  THEY FILED THEIR MOTION TO COMPEL TO THE VERY LAST HIT

25  (UNINTELLIGIBLE) SEARCH THAT WAS RUN YESTERDAY HASN'T REDUCED

 1 | THE NUMBER OF DOCUMENTS AT ALL.  AND MR. MACLEOD CAN'T SIT

 2 | THERE WITH A STRAIGHT FACE AND TRY AND TELL ME, WELL, THESE ARE

 3 | ALL RESPONSIVE RELEVANT DOCUMENTS.

 4 |         I MEAN, THEY SIMPLY CAN'T BE.  AND LET ME GIVE YOU

 5 | SOME EXAMPLES.

 6 |         HE SAID HIS THEORY OF THE CASE IS THAT WE USE

 7 | EXCLUSIVE CONTRACTS WITH RETEEL -- RETAILERS IN ORDER TO KEEP

 8 | HIS CLIENT OUT OF THE MARKET.  WE HAVE SAID WE WOULD PRODUCE

 9 | THE CONTRACTS.  SO ONE OF THE CUSTOMERS IS DOLLAR GENERAL.  YOU

10 | KNOW, WE SEE THEM ON JUST ABOUT EVERY CORNER THESE DAYS.  THEY

11 | HAVE RES PRODUCTS IN THEIR STORE.

12 |         WE'VE PRODUCED TO THEM THE DOLLAR GENERAL CONTRACT.

13 | IF THEY WANT TO EVALUATE THE NATURE OF THAT RELATIONSHIP THEN

14 | THEY LOOK AT THE CONTRACT TO DETERMINE WHETHER OR NOT IT'S GOT

15 | EXCLUSIVITY IN IT.

16 |         WHAT THEY'VE DONE INSTEAD, THOUGH, IS THEY SAID, NO,

17 | THAT'S NOT GOOD ENOUGH.  WE ALSO WANT TO RUN AN ESI SEARCH FOR

18 | DOLLAR GENERAL.

19 |         SO THEY RAN IT (UNINTELLIGIBLE) CITES FOR DOLLAR

20 | GENERAL.  IT'S PICKING UP OVER THREE HUNDRED THOUSAND DOCUMENTS

21 | BECAUSE THEY'RE SEARCHING FOR DOLLAR GENERAL.  I MEAN, IT'S

22 | GOING TO COME UP WITH JUST ABOUT EVERY SCRAP OF PAPER IN THE

23 | COMPANY, MOST OF WHICH IS GOING TO BE COMPLETELY UNRELATED TO

24 | THE CONTRACT ITSELF.

25 |         WE'VE PROPOSED OTHER THINGS THAT THEY FLAT OUT

 1   REJECTED.  THEY SAID TO US, LISTEN, WE'RE INTERESTED IN

 2   EXPLORING THE SETTLEMENT ISSUE THAT'S PART OF THE -- THE

 3   COUNTERCLAIM IN THE CASE.  WE CONTEND THAT THEY RELEASED ALL

 4   THESE CLAIMS THAT THEY BROUGHT AGAINST US IN CONNECTION WITH

 5   PATENT INFRINGEMENT THAT SETTLED -- PATENT INFRINGEMENT CASE

 6   THAT SETTLED A COUPLE OF YEARS AGO.

 7        WE -- THEY GAVE US A SETTLEMENT SEARCH TERM.  THAT ONE

 8   CAME UP WITH TENS OF THOUSANDS OF HITS.  I MEAN, YOU CAN'T TELL

 9   ME THAT IF YOU RUN SETTLEMENT ACROSS THIRTY-EIGHT CUSTODIANS,

10   SIX MILLION DOCUMENTS THAT IT'S NOT GOING TO COME UP WITH

11   LARGELY IRRELEVANT DOCUMENTS.

12        WHAT YOU REALLY SHOULD DO, AND WHAT WE SUGGESTED, WAS

13   TO TARGET THE CUSTODIANS WITH VARIOUS SEARCH TERMS SO NOT ALL

14   THIRTY-EIGHT ARE GOING TO BE SEARCHED FOR SETTLEMENT.  IT'S

15   GOING TO BE THOSE THAT WERE THE KEY DECISION MAKERS THAT WERE

16   INVOLVED IN THE DECISION TO SETTLE THE CASE.  BUT THEY'VE

17   REJECTED THAT.

18        THEY'VE REJECTED PROPORTIONALITY.  THEY DON'T WANT TO

19   ENGAGE IN THAT AT ALL.  WE'VE SUBMITTED A DECLARATION

20   UNREFUTED --

21        THE COURT:  ARE YOU TALKING ABOUT A MR. ORDEMY?

22        MR. PALMERSHEIM:  EXACTLY, YOUR HONOR.

23        HE GOES THROUGH AND TAKES THE SEARCH TERMS.  HE GIVES

24   SIXTEEN, SEVENTEEN EXAMPLES AND EXPLAINS, OKAY.  IF WE HAVE A

25   SEARCH TERMS AND IT'S COMING BACK WITH THREE HUNDRED THOUSAND

1  HITS THIS IS HOW WE CAN MODIFY IT SO THAT IT WILL SUBSTANTIALLY

2  REDUCE THE NUMBER OF THE HITS.  HE GIVES EXAMPLES OF HOW THESE

3  HITS ARE GETTING DOWN TO SOMETHING THAT'S MANAGEABLE, TEN,

4  TWELVE THOUSAND.

5       AND IF YOU LOOK AT THESE THEY REALLY -- THEY MAKE

6  SENSE.  YOU KNOW, WE'RE NOT GOING TO HAVE THREE HUNDRED AND

7  FIFTY RESPONSIVE DOCUMENTS ON DOLLAR GENERAL IF THEY'RE TRYING

8  TO EVALUATE THE NATURE OF THE CONTRACT.  IT'S JUST -- IT

9  DOESN'T MAKE SENSE.  THEY'VE REJECTED ALL OF THESE PROPOSALS

10 AND THEY KEEP COMING BACK TO A COUPLE OF THINGS.

11      ONE, THEY KEEP COMING BACK TO THIS USS CASE, AND THEY

12 SAY, WELL, YOU PRODUCED TWO POINT FIVE MILLION DOCUMENTS IN

13 THAT CASE.  WELL, I WAS THE LEAD ON THAT CASE, YOUR HONOR.

14      THE REASON WHY TWO POINT FIVE MILLION DOCUMENTS WERE

15 PRODUCED IS BECAUSE THE DOCUMENT PRODUCTION OCCURRED BEFORE THE

16 FEDERAL RULES WERE CHANGED IN 2015 TO RECOGNIZE PROPORTIONALITY

17 IN ESI DISCOVERY.

18      THERE WERE A NUMBER OF OTHER REASONS.  BUT FRANKLY

19 IT'S -- USS IS NOT A GOOD MODEL.  THE RULES IN THIS DISTRICT

20 THEY REIN IN THESE SORT OF DISCOVERY BINGES, IF YOU WILL.

21      THE OTHER THING THAT THEY MENTION QUITE A BIT IS THAT

22 WE HAVEN'T TOLD THEM WHEN WE'RE GOING TO PRODUCE DOCUMENTS AND

23 WE HAVEN'T PRODUCED ANY DOCUMENTS.

24      WELL, WE'VE GIVEN THEM THE TWO AND A HALF MILLION.

25 THE REASON WHY WE HAVEN'T PRODUCED THE REST OF ESI YET IS, A,

18

1   WE NEED TO COME TO AN UNDERSTANDING ON TERMS AND

2   (UNINTELLIGIBLE) THEY'LL HAVE THE DOCUMENTS IN TWO WEEKS IF

3   THEY AGREE TO SHARE SOME OF THE COST.

4          BUT WE'VE ALSO -- WE'VE GOT A GREATER BURDEN.  I'VE

5   GOT A MUCH BIGGER CLIENT, I'VE GOT MANY MORE CUSTODIANS.  IT

6   TOOK US WELL OVER A MONTH TO COLLECT ALL OF THE ESI.  THEN WE

7   HAD TO EXCHANGE SEARCH TERMS.  SO IT TAKES TIME.

8          PLAINTIFFS KEEP SAYING IT HAS TO HAPPEN NOW.  WE'RE

9   WORKING THROUGH IT.  AND AS I SAID, THEY'LL HAVE THEIR

10  DOCUMENTS WITHIN TWO WEEKS IF WE SHARE ON THE COST, OR IF WE

11  AGREE ON REASONABLE SEARCH TERMS.

12         THE COURT:  HAVE YOU RECEIVED DISCOVERY FROM THE

13  PLAINTIFF?

14         MR. PALMERSHEIM:  WE HAVE.  WE HAVEN'T -- WE -- WE GOT

15  SOME LIMITED DOCUMENTS RELATED TO ONE OF THEIR ATTORNEYS

16  (UNINTELLIGIBLE) AS A SHAREHOLDER IN THE COMPANY.  BUT

17  SUBSTANTIVELY WE HAVEN'T GOTTEN ANY DOCUMENTS FROM THEM OTHER

18  THAN AN ESI PRODUCTION THAT WE RECEIVED LAST NIGHT BUT WE HAVE

19  NOT REVIEWED IT.

20         YOUR HONOR, I DON'T THINK --

21         THE COURT:  HOW MANY DOCUMENTS APPROXIMATELY OR HOW

22  MANY GIGABYTES THAT WAS?

23         MR. PALMERSHEIM:  THAT WAS THE EQUIVALENT OF ABOUT

24  FOUR HUNDRED THOUSAND DOCUMENTS.  AND LET ME JUST EXPLAIN A

25  LITTLE SOMETHING ABOUT THAT.

1        IT'S MY UNDERSTANDING THAT THEY'VE JUST DONE A

2   WHOLESALE PRODUCTION.  IN FACT, AT ONE POINT THEY SAID THEY

3   WERE GOING TO JUST DUMP THEIR SERVER ON US.  THEY SEEM TO HAVE

4   WHITTLED THAT DOWN A LITTLE BIT.

5        BUT IT'S MY UNDERSTANDING THEY HAVEN'T DONE ANYTHING

6   TO ACTUALLY LOOK AT ANY OF THESE DOCUMENTS TO DETERMINE IF ANY

7   OF THEM ARE RESPONSIVE IN ANY MANNER WHATSOEVER.  THEIR ONLY

8   CRITERIA IS THAT THEY HIT ON A SEARCH TERM.  AND WE CITED A

9   COUPLE OF CASES FOR YOUR HONOR, INCLUDING THE YOUNGINGTON CASE

10  WHICH SAYS, YOU GOT TO DO SOMETHING.  YOU JUST CAN'T DUMP THE

11  DOCUMENTS ON THE OTHER SIDE.  AND THAT'S BEEN PART OF THE

12  CONTENTION HERE AS WELL.

13       THEY WANT US TO JUST DUMP EVERYTHING.  AND WE'VE TRIED

14  TO EXPLAIN TO THEM, A, WE CAN'T DO THAT UNDER THE FEDERAL

15  RULES.  NOW, WE'VE COME AROUND AND WE'VE SAID, IF WE CAN DO

16  SOME QUALITY CONTROL TRACK AND A PRIVILEGE FILTER THEN -- THEN

17  THAT WILL SATISFY OUR CLIENT.

18       THE COURT:  LET ME ASK ABOUT THAT, BECAUSE IN A JOINT

19  NOTICE WHAT I BELIEVE I READ WAS THAT THE DEFENDANT STATED THAT

20  IT HAD AGREED TO PRODUCE DOCUMENTS WITHOUT A DOCUMENT BY

21  DOCUMENT REVIEW SUBJECT TO PRIVILEGE AND QUALITY CONTROL

22  FILTERS WHICH WOULD BE MANUALLY REVIEWED.

23       WHAT PERCENTAGE OF THE DOCUMENTS WILL THAT -- WILL

24  THAT INVOLVE?  IN OTHER WORDS, IS THAT -- IS THAT YOUR

25  AGREEMENT AND WHAT'S THIS CAVEAT ABOUT PRIVILEGE AND QUALITY

1 | CONTROL FILTERS?

2 | MR. PALMERSHEIM:  SO I THINK THAT -- THAT THERE IS AN

3 | AGREEMENT AS TO PRIVILEGE.  I DON'T KNOW HOW MANY DOCUMENTS

4 | THAT WILL CATCH BECAUSE WE HAVEN'T PROMOTED ALL THE DATA TO

5 | A -- AN ELECTRONIC DATABASE TO BE ABLE TO SEARCH IT AND THEN

6 | RUN THOSE PRIVILEGE TERMS AND FILTERS.

7 | WE HAVE ALL OF THEM DRAFTED.  IT'S JUST A MATTER OF

8 | AGREEING ON THE SEARCH SET AND PROMOTING THE DATA.

9 | AS TO THE QUALITY CONTROL.  MY UNDERSTANDING IS THEY

10 | REALLY HAVEN'T DONE ANY OTHER THAN JUST ASSUMING IF IT HITS ON

11 | A SEARCH TERM THAT IT'S SOMEHOW GOING TO BE A RESPONSIVE

12 | DOCUMENT.

13 | WHAT WE INTEND TO DO, WHICH IS ENTIRELY CONSISTENT

14 | WITH THE REQUIREMENTS OF THE FEDERAL RULES, WE ARE GOING TO RUN

15 | CERTAIN SEARCHES IN ORDER TO CULL OUT SETS OF DOCUMENTS WHICH

16 | THEN WE WILL DO SAMPLING ON TO DETERMINE WHETHER OR NOT IT'S

17 | RELEVANT OR RESPONSIVE.

18 | THE PURPOSE BEHIND THAT, YOUR HONOR, IS I GOT THE

19 | REQUEST THAT THEY'VE MADE AND THE REQUEST FOR CUSTODIANS.  I

20 | GOT A CLIENT THAT'S GOT NOT ONLY THIS OPERATING DIVISION THAT

21 | IS THE SUBJECT OF THIS LAWSUIT, BUT I'VE GOT THREE OR FOUR

22 | OTHER OPERATING DIVISIONS AND PEOPLE WITH OVERLAPPING

23 | RESPONSIBILITY SUCH THAT THERE IS A GOOD CHANCE THAT WE'RE

24 | GOING TO BE PULLING IN MATERIAL THAT HAS SOMETHING TO DO WITH A

25 | PART OF THE COMPANY THAT HAS ABSOLUTELY NOTHING TO DO WITH THIS

1  LAWSUIT.

2      AND SO, WE'RE GOING TO DO LIMITED QUALITY CONTROL JUST

3  TO MAKE SURE THAT, A, WE'VE COMPLIED WITH THE FEDERAL RULES;

4  AND, B, WE COMPLIED WITH OUR ETHICAL OBLIGATIONS UNDER RULE

5  POINT -- 1.6.

6      THE COURT:  WELL, DON'T YOU HAVE A -- I THOUGHT I SAW

7  A PROTECTIVE ORDER WHICH IS IN EFFECT.  IT SEEMED LIKE PRETTY

8  CLOSE TO A 502(D) CALL BACK ORDER.  ISN'T THERE A PROTECTIVE

9  ORDER IN PLACE?

10      MR. PALMERSHEIM:  THERE IS A PROTECTIVE ORDER IN

11  PLACE, BUT THAT STILL DOESN'T OBVIATE THE FACT THAT WE'RE GOING

12  TO HAVE A LOT OF STUFF THAT JUST ISN'T RESPONSIVE HERE AND IT'S

13  GOING TO HAVE TO DO WITH PARTS OF THE COMPANY THAT HAVE

14  ABSOLUTELY NOTHING TO DO WITH THIS CASE.

15      ONE OF THE OTHER THINGS THAT WE WERE GOING TO DO AS

16  WELL IS JUST -- YOU KNOW, WE'VE PROPOSED LET'S -- LET'S DO

17  SAMPLE SETS OF THE SEARCH TERMS JUST TO MAKE SURE WE'RE

18  ACTUALLY GETTING GOOD DOCUMENTS INSTEAD OF FALSE POSITIVES.

19  THEY'VE REJECTED THAT AS WELL.

20      OUR POSITION HAS BEEN VERY SIMPLE.  IF -- IF YOU WANT

21  EVERY SINGLE DOCUMENT THAT HITS ON THESE SEARCH TERMS, YOU

22  KNOW, SUBJECT TO A PRIVILEGE AND QUALITY CONTROL FILTER WE WILL

23  PRODUCE THEM, YOU WILL HAVE THEM IN TWO WEEKS BUT YOU HAVE TO

24  SHARE SOME OF THE COSTS.

25      WE'VE PUT IN AN AFFIDAVIT FROM AN EXPERT, HE'S

1  DETAILED THOSE COSTS.  THAT EXPERT HAS ALSO EXPLAINED WHY THOSE

2  SEARCH TERMS THAT THEY'VE PROPOSED AND THEY REALLY HAVEN'T

3  MODIFIED, YOUR HONOR, ARE JUST HITTING ON TOO MANY DOCUMENTS

4  AND CREATING FALSE POSITIVES.

5        BUT WE SAID, YOU CAN HAVE THESE DOCUMENTS.  JUST SHARE

6  THE COST.  OTHERWISE WE NEED TO WORK A LITTLE BIT MORE TO GET

7  THE COST DOWN BECAUSE IT'S OBVIOUSLY FALLING ON MY CLIENT'S

8  SHOULDERS.

9        AND THE 2015 AMENDMENTS AND THE CASES AFTERWARDS THEY

10 TALK ABOUT NOT JUST -- NOT JUST PROPORTIONALITY AS IT HAS TO DO

11 WITH ISSUES IN THE CASE BUT ALSO PROPORTIONAL BURDENS IN THE

12 CASE.

13       AND, YOU KNOW, WE SEE THIS (UNINTELLIGIBLE) ISSUE AS

14 THE WAY TO GET THIS THING RESOLVED.  OTHERWISE WE'VE GOT TO GO

15 BACK TO THE TABLE AND START WORKING THROUGH THIS BECAUSE WE'RE

16 JUST -- WE'RE GOING TO BE PRODUCING WAY TOO MUCH IRRELEVANT

17 MATERIAL.

18       THE COURT:  THE FOUR HUNDRED THOUSAND OR SO DOCUMENTS

19 THAT WERE PRODUCED BY THE PLAINTIFF YESTERDAY, OR WHATEVER, WAS

20 THERE A COST ALLOCATION AGREEMENT ON THAT OR DID THEY JUST

21 PRODUCE THAT?

22       MR. PALMERSHEIM:  THEY JUST PRODUCED IT.

23       THEY NEVER CAME BACK TO US AND SAID, HEY, YOU KNOW,

24 WHICH TERMS DO YOU TAKE ISSUE?  HOW DO WE NARROW THIS DOWN?

25       THEIR WHOLE POSITION WAS, WE'RE JUST GOING TO DUMP

 1  THESE ON YOU, WHICH IS, YOU KNOW, NOT SURPRISING BECAUSE THE

 2  SCALES ARE IN THEIR FAVOR.  THEY'VE GOT A MUCH SMALLER SET OF

 3  DATA AND THEY'VE GOT FEWER CUSTODIANS.  SO IT'S MUCH EASIER FOR

 4  THEM TO TAKE THAT APPROACH.

 5          UNFORTUNATELY I DON'T HAVE THAT LIBERTY WITH MY

 6  CLIENT.

 7          THE COURT:  ALL RIGHT.

 8          WELL, LET ME JUST TALK TO BOTH SIDES ABOUT THIS NOW

 9  AND THEN WE'LL COME BACK TO IT IN JUST A SECOND.

10          BUT I WOULD REFER THE PARTIES TO THE SEDONA

11  PRINCIPLES.  AND MOST RECENTLY THE SEDONA PRINCIPLES, THIRD

12  EDITION, THE BEST PRACTICES, RECOMMENDATIONS AND PRINCIPLES FOR

13  ADDRESSING ELECTRONIC DOCUMENT PRODUCTION, WHICH IS THE 2018

14  VERSION.  AND IT'S EASY TO LOCATE.

15          IF YOU TAKE A LOOK AT A RECENT ORDER THAT I ENTERED,

16  LI, L-I, VERSUS WALSH AT 2018 WESTLAW FIVE EIGHT FIVE THREE

17  ZERO THREE EIGHT, NOVEMBER 9TH, 2018, THERE IS A FOOTNOTE WHICH

18  CITES THAT SEDONA PRINCIPAL DOCUMENT WHICH IS FAIRLY LENGTHY

19  AND CAN BE EASILY JUST OBTAINED ON A SEARCH.

20          I'VE RELIED ON THE SEDONA PRINCIPLES PREVIOUSLY IN

21  ANOTHER CASE, UNITED HEALTH CARE VERSUS AMERICAN RENAL, WHICH

22  IS TWO THOUSAND SEVENTEEN WESTLAW FOUR SEVEN EIGHT FIVE FOUR

23  FIVE SEVEN, OCTOBER 2OTH, 2017.

24          AND ONE OF THE THINGS THAT IS MENTIONED IN THE SEDONA

25  PRINCIPLES IS ON PAGE 167, COMMENT 11(B).  IT STATES, SAMPLING

1  CAN SUBSTANTIALLY REDUCE THE COST OF DISCOVERY.  IT STATES,

2  PARTIES SHOULD CONSIDER USING SAMPLING TECHNIQUES TO NARROW THE

3  BURDEN OF SEARCHING VOLUMINOUS ESI.

4         FOR EXAMPLE, EMPLOYING A SEARCH METHODOLOGY ON A

5  SAMPLE IN A DATA SOURCE COULD REVEAL THAT A VERY LOW PERCENTAGE

6  OF FILES IN THAT DATA SOURCE CONTAINED RELEVANT ESI.  THIS MAY

7  WEIGH HEAVILY AGAINST A NEED TO SEARCH THAT SOURCE FURTHER OR

8  IT MAY BE A FACTOR IN A COST ALLOCATION ANALYSIS.

9         SUCH TECHNIQUES ALSO MAY REVEAL SUBSTANTIAL REDUNDANCY

10 AMONG SOURCES.  FOR EXAMPLE, DUPLICATE ESI IS FOUND IN MULTIPLE

11 LOCATIONS SUCH THAT IT IS REASONABLE FOR THE ORGANIZATION TO

12 PRESERVE AND PRODUCE ESI FROM ONLY ONE OF THE SOURCES.

13        THEY ALSO TALK ON PAGE 187, COMMENT 13A, FACTORS FOR

14 ALLOCATING THE COST OF PRODUCTION.  AND IT MENTIONS THAT RULE

15 26 DOES EXPRESSLY PROVIDE FOR THE ENTRY PROTECTIVE ORDERS THAT

16 ALLOCATE EXPENSES FOR DISCOVERY.  AND IT TALKS IN HERE ABOUT

17 THE FACT THAT IF THE RESULT OF THE PROPORTIONALITY ANALYSIS

18 CLEARLY DEMONSTRATES THAT THE REQUESTED DISCOVERY IS

19 APPROPRIATELY PROPORTIONAL THE DISCOVERY SHOULD BE ALLOWED WITH

20 THE PRESUMPTION THAT COSTS WILL NOT BE ALL LOCATED AMONG THE

21 PARTIES.

22        CONVERSELY, IF THE RESULT OF THE PROPORTIONALITY

23 ANALYSIS CLEARLY DEMONSTRATES THAT THE REQUESTED DISCOVERY IS

24 NOT PROPORTIONAL AND THE REQUEST IS NOT WITHIN THE PERMISSIBLE

25 SCOPE OF DISCOVERY THE REQUEST SHOULD BE DENIED AND COST

1   ALLOCATION WOULD NOT APPLY.

2         AND THEN IT GOES ON TO STATE, IF HOWEVER THE RESULT OF
3   THE PROPORTIONALITY ANALYSIS IS NOT CLEAR CUT, THE COURT HAS
4   THE DISCRETION TO ALLOCATE SOME OR ALL OF THE COSTS TO THE
5   REQUESTING PARTY.  COST ALLOCATION, HOWEVER, SHOULD NOT BE USED
6   AS A SHORTCUT TO RESOLVE DIFFICULTY PROPORTIONALITY ANALYSIS OR
7   TO BUY ARGUABLY DISPROPORTIONATE DISCOVERY.

8         SO THIS IS A CASE WHERE WHAT I'M HEARING IS ON THE
9   PLAINTIFF'S SIDE THAT YOU'VE ALREADY WHITTLED IT DOWN ABOUT AS
10  FAR AS IT CAN GO AND THOSE APPROXIMATE MILLION DOCUMENTS ARE
11  IT.

12        THEN I'M HEARING FROM THE DEFENDANT'S SIDE THAT THERE
13  CAN BE MORE SEARCH TERM NARROWING AND SAMPLING TO GET TO A
14  LOWER NUMBER OF DOCUMENTS WHICH WILL REDUCE THE BURDEN OF THE
15  SUPPOSED FOUR HUNDRED THOUSAND DOLLARS THAT IT'S GOING TO TAKE.

16        SO THAT'S WHERE I'M AT IN THIS CASE AND I'M TRYING TO
17  DETERMINE WHAT'S THE MOST FAIR AND REASONABLE RESULT TO BOTH
18  SIDES IN THIS MATTER.

19        DO I THE TAKE THE PLAINTIFF'S POSITION AND BASICALLY
20  SAY, LISTEN, IT SEEMS LIKE A MILLION DOCUMENTS IS ABOUT AS GOOD
21  AS IT'S GOING TO GET.  PRODUCE THEM ALL AND I'LL RESERVE
22  JURISDICTION ON COST ALLOCATION UNTIL A LATER DATE, OR, DO I
23  SAY, PARTIES GO BACK, WORK WITH EACH OTHER, TRY AND RUN SOME
24  QUERIES, DO SOME SAMPLINGS, SEE IF BASICALLY WHAT YOU'RE
25  GETTING BACK IS RELEVANT DOCUMENTS OR JUNK, AND THESE ARE

1   ALWAYS -- ESPECIALLY IN A LARGE CASE LIKE THIS AND ESPECIALLY

2   IN THE NATURE OF THIS CASE, A SHERMAN ACT CASE, YOU KNOW, THEY

3   ARE LARGE DOCUMENT -- LARGE DOCUMENT CASES.

4          AND THERE IS ANOTHER CASE BY JUDGE PECK WHO IS NOW

5   RETIRED, ANDREW PECK UP IN THE SOUTHERN DISTRICT OF NEW YORK

6   WHICH I WOULD ENCOURAGE THE PARTIES TO READ WHICH IS MOORE

7   VERSUS THE PUBLICIS GROUP, P-U-B-L-I-C-I-S GROUP, 287 FRD 182,

8   2012.

9          TOWARDS THE END OF THAT CASE HE GOES ON AND TALKS

10  ABOUT THIS TYPE OF A PRODUCTION.  HE MENTIONS HOW THE SLIGHTLY

11  MORE DIFFICULT CASE WOULD BE WHERE THE PRODUCING PARTY WANTS TO

12  USE COMPUTER ASSISTED REVIEW AND THE REQUESTING PARTY OBJECTS.

13  AND THE QUESTION TO ASK IN THAT SITUATION IS, WHAT METHODOLOGY

14  WOULD THE REQUESTING PARTY SUGGEST INSTEAD.

15         HE GOES ON AND TALKS ABOUT HOW WITH THE VOLUME OF ESI,

16  PARTIES REALLY HAVE TO COLLABORATIVELY WORK TOGETHER TO TRY AND

17  FIGURE OUT WHAT CAN BE PRODUCED ECONOMICALLY AND EFFICIENTLY

18  BEING FAIR TO BOTH SIDES.

19         MY RULE IN DISCOVERY, WHAT I WANT TO DO IS, I WANT TO

20  MAKE SURE THE PLAINTIFF GETS WHATEVER YOU NEED TO PROVE YOUR

21  CASE AND TO DEFEAT ANY AFFIRMATIVE DEFENSES IF YOU CAN OF THE

22  DEFENDANT.

23         I WANT THE DEFENDANT TO GET WHATEVER YOU NEED TO

24  DEFEAT THE PLAINTIFF'S CASE IF YOU CAN AND TO ESTABLISH YOUR

25  AFFIRMATIVE DEFENSES IF YOU CAN AND NOTHING MORE.  NOTHING

 1  WASTEFUL AND NOTHING UNNECESSARY, AND THAT'S REALLY THE PROBLEM
 2  HERE.

 3          SO I'M SORT OF PUT IN A POSITION WHERE IT'S EITHER
 4  PRODUCE ALL ONE MILLION DOCUMENTS AND DETERMINE COST
 5  ALLOCATION, OR TRY TO WORK TOGETHER FOR A WHILE TO SEE IF YOU
 6  CAN NARROW DOWN THAT NUMBER AND WHITTLE IT DOWN A BIT AND GET
 7  IT DOWN TO A LOWER NUMBER.

 8          SO THAT'S WHERE I AM IN THIS -- IN THIS DISPUTE.  AND
 9  I DEAL WITH THIS ALL THE TIME.  SO LET ME TURN TO THE -- TO
10  PLAINTIFF'S COUNSEL, MR. MACLEOD.  LET ME HEAR FROM YOU ON THAT
11  BECAUSE, YOU KNOW, I'M REALLY HEARING TWO TOTALLY DIVERGENT
12  THINGS.

13          I'M HEARING FROM YOUR SIDE THAT IT'S BEEN NARROWED
14  DOWN AS MUCH AS IT CAN BE AND YOU CAN'T DO ANY MORE SEARCH
15  TERMS AND YOU CAN'T DO ANY MORE WHITTLING AND THAT'S IT, AND WE
16  WANT A MILLION DOCUMENTS.

17          I'M HEARING FROM THEM THAT A MILLION DOCUMENTS IS
18  GOING TO COST THEM $400,000, AND IF THAT'S WHAT YOU WANT THEY
19  WANT COST ALLOCATION.  BUT YOU REALLY SHOULDN'T GO TO THAT
20  BECAUSE YOU SHOULD RUN MORE SAMPLES AND MORE NARROWING DOWN AND
21  MORE -- MORE NARROWLY TAILORED SEARCH TERMS.

22          SO LET ME HEAR FROM YOU AND THEN I'LL HEAR FROM THE
23  DEFENSE.

24          MR. MACLEOD:  THANK YOU, JUDGE.  I THINK THAT THERE
25  ARE TWO ELEMENTS TO ADDRESS HERE.

1           FIRST OF ALL IS THE ACCOMPLISHMENT THAT WE HAVE

2    ACHIEVED SO FAR AND I WISH MR. PALMERSHEIM WOULD GIVE US MORE

3    CREDIT FOR WHAT WE HAVE DONE.

4           FOR EXAMPLE --

5           THE COURT:  AND I ASKED YOU ABOUT THAT BECAUSE I'M

6    GLAD YOU MENTIONED IT BECAUSE I'M HEARING FROM YOU THAT YOU'VE

7    DONE A LOT OF WORK GETTING -- CONFERRING AND WORKING.  AND WHAT

8    I GET -- I'M HEARING FROM THE DEFENSE THAT REALLY NOTHING HAS

9    BEEN DONE.  SO I'M HEARING TWO TOTALLY SEPARATE ARGUMENTS.

10          MR. MACLEOD:  WELL, A GOOD EXAMPLE OF HOW WE HAVE DONE

11   IS TO CONSIDER THE THREE HUNDRED THOUSAND DOLLAR GENERAL

12   DOCUMENTS THAT MR. PALMERSHEIM MENTIONED TO YOU AND LOOK AT THE

13   REPORT THAT WAS FILED YESTERDAY FROM HIS VENDOR WHICH SAYS

14   THERE ARE SIXTY-THREE THOUSAND OF THOSE DOCUMENTS.

15          I DON'T KNOW IF THERE WERE EVER THREE HUNDRED

16   THOUSAND.  THERE MAY HAVE BEEN BEFORE WE AGREED TO OUR FIRST

17   MODIFICATION, WHICH WAS TO REQUIRE EXTRA HITS SO THAT SOMETHING

18   THAT HIT ON DOLLAR GENERAL BY ITSELF WOULD NOT BE A DOCUMENT

19   THAT QUALIFIED FOR THE ESI PRODUCTION, IT WOULD HAVE TO HAVE

20   DOLLAR GENERAL AND SOMETHING ELSE LIKE EXCLUSIVE, SOMETHING

21   ELSE LIKE BUNDLE, SOME OTHER KEY TERM IN THE CASE.

22          THE COURT:  AND YOUR SEARCH TERMS TO ME SEEMS TO BE

23   CERTAINLY LIKELY TO PRODUCE FAR TOO MANY DOCUMENTS.

24          MR. MACLEOD:  AND THAT'S WHY WE HAVE AGREED TO

25   ELIMINATE THEM ALL.

 1          WE DON'T HAVE SINGULAR TERMS EXCEPT FOR TERMS IN THEIR

 2  FILE AND WE HAVE DONE SORE THE SAME FOR THEM, INCLUDE THEIR

 3  COMPANY'S FILES THAT REFER TO THE OTHER COMPANY.  THAT IS THE

 4  ONLY SINGLE TERM THAT REMAINS IN THE ESI FOR EITHER OF US.

 5          ON ANOTHER POINT.  THE SO-CALLED DOCUMENT DUMP, A WORD

 6  WHICH I HAVE TOLD I WOULD NOT USE EXCEPT IT'S NOW BEING USED

 7  HERE SO I WILL USE IT TODAY.

 8          THERE IS NO DOCUMENT DUMP.  WE REDUCED BY A

 9  SUBSTANTIAL NUMBER THE DOCUMENTS THAT WERE RETRIEVED FROM THE

10  CUSTODIANS AT ALL-TAG BY VIRTUE OF REQUIRING THE COMBINED ESI

11  TERMS.  THAT NUMBER IS NOW DOWN BY ABOUT THE SAME PROPORTION

12  THAT THE CHECKPOINT DOCUMENTS DROPPED.

13          ANOTHER THING --

14          THE COURT:  WAS IT ABOUT APPROXIMATELY FOUR HUNDRED

15  THOUSAND DOLLAR -- DOCUMENTS THAT YOU ALL PRODUCED YESTERDAY?

16          MR. MACLEOD:  YES.  IT WAS ABOUT FOUR HUNDRED THOUSAND

17  DOCUMENTS THAT WE PRODUCED YESTERDAY WHICH UNTIL RECENTLY WE

18  WERE TOLD WE WOULD BE SANCTIONED IF WE PRODUCED THEM, OR AT

19  LEAST THAT WE WOULD BE BROUGHT TO COURT FOR SANCTIONS IF WE

20  PRODUCED THEM.

21          MR. PALMERSHEIM MENTIONED THAT THERE WAS NO QUALITY

22  CONTROL?  OF COURSE, WE LOOKED AT THOSE DOCUMENTS AND WE

23  DETERMINED FROM A SAMPLING OF THE DOCUMENTS THAT THE VAST

24  MAJORITY OF DOCUMENTS THAT WE HAVE PRODUCED ARE DOCUMENTS THAT

25  RESPOND TO THE REQUEST THAT THEY HAVE GIVEN US.  THAT, OF

 1  COURSE, IS THE KIND OF THING WE WOULD DO.

 2          I AM HEARING QUALITY CONTROL FOR THE FIRST TIME IN THE

 3  LAST COUPLE OF WEEKS FROM COUNSEL FOR CHECKPOINT.  I STILL

 4  DON'T KNOW WHAT THAT MEANS.

 5          WHAT I DO KNOW IT MEANS IS THAT IT MEANS WE ARE NOT

 6  GOING TO SEE DOCUMENTS FOR A WHILE BECAUSE THEY'RE GOING TO

 7  LOOK THROUGH THEM AND DECIDE HOW WELL THESE SEARCHES WE'LL

 8  DO --

 9          THE COURT:  IN YOUR PRODUCTION, DID YOU DO TECHNOLOGY

10  ASSISTED REVIEW OF THE DOCUMENTS OR DID YOU DO A MANUAL REVIEW

11  OF THE DOCUMENTS BEFORE PRODUCING THEM?

12          MR. MACLEOD:  WE DID A MANUAL REVIEW OF THE SAMPLE.

13          THE COURT:  OF THE SAMPLE.

14          MR. MACLEOD:  YES.

15          THE COURT:  OKAY.

16          MR. MACLEOD:  AND FINALLY ANOTHER THING THAT I AM

17  PERFECTLY GLAD TO RESPOND TO MR. PALMERSHEIM ABOUT IS SOMETHING

18  THAT I HAVE HEARD FOR THE FIRST TIME TODAY.  IT NEVER CAME UP

19  IN A MEET AND CONFER AND THAT IS THE ISSUE OF THE TERM RELEASE.

20          I DON'T THINK IT IS PRODUCTIVE FOR US, AND I APOLOGIZE

21  TO THE COURT THAT WE ARE RAISING ISSUES FOR THE FIRST TIME TO

22  YOU.  IF MR. PALMERSHEIM HAS AN ISSUE WITH RELEASE WE OUGHT TO

23  TALK ABOUT IT.  IT IS THE CENTER OF AN AFFIRMATIVE DEFENSE OF

24  THEIRS.  OF COURSE, WE ARE GOING TO BE LOOKING FOR DOCUMENTS

25  ABOUT THEM BUT HE SHOULD BE TELLING US BEFORE HE TELLS YOU THAT

31

1  HE HAS AN ISSUE WITH A PARTICULAR TERM.

2      AND AS FAR AS COST SHARING IS CONCERNED AND
3  PROPORTIONALITY IS CONCERNED.  RIGHT NOW, OF COURSE, THAT
4  MOTION IS NOT BEFORE THE COURT BUT I WILL MAKE A COUPLE OF
5  OBSERVATIONS AS TO HOW I THINK A MOTION LIKE THAT WILL COME
6  OUT.

7      IN A CASE ABOUT MONOPOLIZATION, AN ANTITRUST CASE IS A
8  CASE WHICH IS NOT SIMPLY A BUSINESS TORT BETWEEN TWO COMPANIES.
9  WE HAVE TO PROVE THAT THEY HAVE MONOPOLIZED AN ENTIRE INDUSTRY.
10 THE PAPERS OF CHECKPOINT ARE VERY ARTICULATE ON THAT IN THEIR
11 MOTION TO DISMISS.  WE HAVE A LARGE CASE TO PROVE.

12     AND IN ANY EVENT, AS MR. PALMERSHEIM NOTED, THEY ARE A
13 LARGE COMPANY.  A COMPANY THAT IS 20 OR 30 TIMES THE SIZE OF
14 ANOTHER COMPANY SHOULD BE EXPECTED TO HAVE MORE DOCUMENTS.  IT
15 TURNS OUT IT'S ONLY ABOUT TWICE AS MANY.

16     SO I THINK WE HAVE WELL ACHIEVED PROPORTIONALITY, WE
17 HAVE NOT CHARGED THEM A CENT FOR THE PRODUCTION THAT WE HAVE
18 MADE TO THEM.

19     I WILL SAY, BUT I'M NOT AT LIBERTY TO GIVE AMOUNTS,
20 THEIR VENDOR IS MORE EXPENSIVE THAN OUR VENDOR.  MAYBE THEY
21 COULD SHOP AROUND AND FIND A BETTER PRICE.  BUT IN ANY EVENT,
22 WE THINK THAT WE HAVE GOTTEN TO THE POINT WHERE WE COULD TALK
23 FOR ANOTHER TWO WEEKS AND THEN WE WILL PUSH THE BEGINNING OF
24 DISCOVERY OR AT LEAST THE BEGINNING OF DOCUMENTS REVIEW AND
25 DEPOSITIONS IN THIS CASE UP AGAINST A DEADLINE WHICH WILL BE

 1  IMPOSSIBLE TO MEET FOR THE CLOSE OF DISCOVERY.  THAT'S OUR

 2  PRINCIPAL CONCERN.

 3        THE COURT:  ALL RIGHT.  THANK YOU.

 4        LET ME HEAR FROM THE DEFENSE.

 5        MR. PALMERSHEIM:  YOUR HONOR, AS TO WHAT WE HAVE

 6  ACCOMPLISHED IN THE LAST SEVERAL WEEKS, THE NUMBERS IS THE SAME

 7  AS IT WAS BEFORE THEY FILED THE MOTION TO COMPEL AND IT'S NOT

 8  BECAUSE THE DOCUMENTS HAVE NOW SOME BECOME -- SOMEHOW ARE

 9  HITTING BETTER ON THE SEARCH TERMS.  IT'S BECAUSE THEY'VE

10  REFUSED TO ENGAGE ANY MEANINGFUL MODIFICATION OF THE SEARCH

11  TERMS.

12        OUR EXPERT GAVE EXAMPLES OF HOW THEY CAN MODIFY THE

13  SEARCH TERMS AND ACTUALLY BRING DOWN THE NUMBER OF HITS TO

14  SOMETHING THAT'S MORE REASONABLE.  THEY REFUSE TO DO THAT.

15        THEIR IDEA OF MODIFICATION WAS TAKING THOSE SEARCH

16  TERMS AND ADDING MORE SEARCH TERMS.  THEY'RE NOT REDUCING THE

17  NUMBER OF HITS, THEY'RE HAVING NO AFFECT AT ALL.

18        WE'VE ASKED THEM REPEATEDLY IN SEVERAL PHONE CALLS,

19  IT'S IN THE COMMUNICATIONS YOU SEE UP IN FRONT OF YOU, LET'S GO

20  THROUGH THESE SEARCH TERMS ONE BY ONE TO TALK ABOUT THE THINGS

21  THAT WE PUT IN OUR LETTER, PROPORTIONALITY.  LET'S TALK ABOUT

22  MATCHING THEM UP WITH PARTICULAR CUSTODIANS.  LET'S DO THINGS

23  THAT ARE GOING TO REDUCE THE COST ON US BECAUSE AGAIN IT'S

24  FALLING ON OUR SHOULDERS.

25        WE'VE PROPOSED TO THEM, LET'S NARROW THIS DOWN TO A

1  SMALLER SET OF DOCUMENTS, SOMETHING THAT'S REASONABLE IN TERMS

2  OF THE RESPECTIVE COSTS, WE'LL PRODUCE IT TO YOU.  YOU'LL HAVE

3  IT WITHIN TWO WEEKS.

4       IF THERE ARE ADDITIONAL DOCUMENTS THAT YOU NEED LET'S

5  ENGAGE IN THIS (UNINTELLIGIBLE) PROCESS AND COME BACK AND WE'LL

6  FOLLOW UP AND WE'LL PRODUCE THOSE DOCUMENTS.

7       THE COURT:  HOW LONG HAS THE DISCOVERY PROCESS BEEN

8  GOING NOW?  IN OTHER WORDS, WHEN DID THE -- WHEN DID THE

9  PLAINTIFF'S REQUEST FOR PRODUCTION THAT THEY'RE MOVING TO

10 COMPEL ON NOW, WHEN DID THAT GO OUT, DO YOU KNOW?

11      MR. PALMERSHEIM:  I'M NOT SURE.  PROBABLY -- I THINK

12 THERE'S TWO DOCUMENT REQUESTS THAT WENT OUT.  THE FIRST

13 DOCUMENT REQUEST WERE FOCUSING ON GETTING THE DOCUMENTS FROM

14 THE USS CASE.  I THINK WE PRODUCED THOSE PROBABLY BY JULY OR

15 SO.

16      THEY HAD A SECOND SET OF DOCUMENT REQUESTS.  I THINK

17 THOSE -- THOSE WENT OUT SOMETIME IN THE SPRING.  WE SPENT A LOT

18 OF TIME GOING BACK AND FORTH ON OBJECTIONS.

19      THE COURT:  SEE, THAT'S WHAT WORRIES ME.  LET ME JUST

20 ASK WHILE YOU'RE THERE.

21      LET ME ASK PLAINTIFF'S COUNSEL, THE MOTION TO COMPEL

22 THAT WE'RE CURRENTLY SITTING ON NOW WHEN WAS THAT SENT TO THE

23 DEFENDANT?

24      MR. MACLEOD:  THE DOCUMENT REQUEST THAT IS THE SUBJECT

25 OF THE MOTION?

1            THE COURT:  YES, SIR.

2            MR. MACLEOD:  MAY 31ST.

3            THE COURT:  ALL RIGHT.

4            SO THIS IS THE CONCERN I HAVE, MR. PALMERSHEIM, IS

5  THAT THAT IS SENT OUT MAY 31ST.  WE'RE NOW IN -- EFFECTIVELY

6  WE'RE IN DECEMBER, TODAY IS THE LAST DAY OF NOVEMBER.

7            AND FROM WHAT I'M HEARING FROM THE PLAINTIFF WE HAVE

8  WHITTLED IT DOWN AS FAR AS THEY CAN.  AND WHAT I'M HEARING FROM

9  YOU IS, YOU WANT MORE TIME TO WHITTLE IS DOWN FURTHER.

10            THE QUESTION I HAVE IS, YOU KNOW, WHEN A REQUEST FOR

11  PRODUCTION GOES OUT IN MAY AND NOW WE ARE ALMOST IN DECEMBER

12  AND THERE HASN'T BEEN A PRODUCTION YET AND WE NEED MORE TIME TO

13  TRY TO COLLABORATE, I AM ALL IN FAVOR OF COLLABORATION.

14            I AM -- I'M A STRONG BELIEVE THAT PARTIES SHOULD

15  COLLABORATE, THEY SHOULD CONFER, THEY SHOULD AGREE ON SEARCH

16  TERMS, THEY SHOULD RUN SEARCH TERMS, THEY SHOULD GET SAMPLES

17  BACK AND SEE IF IT'S GETTING JUNK OR IF IT'S GETTING RELEVANT

18  DOCUMENTS AND THEY SHOULD MOVE FORWARD TO SAVE BOTH OF THEIR

19  CLIENTS TIME AND MONEY.

20            BUT IN THIS CASE IT SEEMS LIKE THAT'S BEEN EXHAUSTED

21  FROM WHAT I'M HEARING FROM THE PLAINTIFF.  YOU SAY IT'S NOT.

22  BUT WITHOUT HOLDING AN EVIDENTIARY HEARING I CAN'T MAKE A

23  FINDING AS TO WHETHER IT'S BEEN EXHAUSTED OR NOT EXHAUSTED.

24            SO MY POINT IS, IS THAT IT SEEMS LIKE BY REQUIRING

25  MORE COLLABORATION AND MORE CONFERRING WE'RE GOING TO PUSH THE

 1  BALL DOWN THE ROAD FURTHER WHEN IT'S A MAY REQUEST FOR
 2  PRODUCTION.   THAT'S THE CONCERN I HAVE.   WE'VE GOT A SEPTEMBER
 3  OF NEXT YEAR DISCOVERY CUTOFF DATE WHICH IN SOME CASES IS A
 4  LONG, LONG WAY OFF BUT IN A LARGE SHERMAN ACT IS NOT REALLY
 5  THAT FAR OFF.

 6          NOW, THOSE ARE MY CONCERNS.

 7          MR. PALMERSHEIM:   AND I UNDERSTAND YOUR CONCERNS, YOUR
 8  HONOR.

 9          I MEAN, I WISH I COULD SAY THAT WE'VE COLLABORATED
10  OVER THE LAST MONTH OR SO ON THESE SEARCH TERMS.   WE HAVEN'T.
11  I MEAN, WE HAVE MADE THESE PROPOSALS, WE'VE SAT ON CONFERENCE
12  CALLS AND THEY WON'T ENGAGE US AND TALK TO US ABOUT CHANGING
13  SPECIFIC SEARCH TERMS.   THEY COME BACK AND THEY SAY, WELL, THIS
14  IS THE NEW LIST THAT WE WANT TO RUN, OR THESE ARE THE CHANGES
15  WE'RE MADE.

16          WHAT YOU DO HAVE IN FRONT OF YOU THOUGH, YOUR HONOR,
17  IS YOU DO HAVE OUR DECLARATION.   THAT'S THE ONLY REAL EVIDENCE
18  THAT YOU HAVE IN THE RECORD AND OUR EXPERTS HAS SAID, THIS CAN
19  BE DONE.   YOU CAN GET THIS DOWN TO A REASONABLE NUMBER AND HE
20  GIVES EXAMPLES.

21          THEY'VE PUT IN NOTHING TO COUNTER THAT.   IN FACT, THE
22  ONLY WAY THEY HAVE IS THIS REPRESENTATION FROM MR. MACLEOD IS
23  THAT WE'VE MADE A TON OF PROGRESS BUT THE NUMBER HASN'T
24  CHANGED.   AND THE REASON WHY THE NUMBER HASN'T CHANGED IS
25  BECAUSE ALL OF THESE DOCUMENTS MUST BE RESPONSIVE.

1    WE'VE TRIED TWO DIFFERENT WAYS TO GO AT IT AND WE'RE

2  STILL GETTING THE SAME NUMBER.  THAT JUST DOESN'T MAKE SENSE.

3  THAT'S TAKING THE FURNITURE IN THE ROOM, REARRANGING IT AND

4  TRYING TO SAY, IT'S A DIFFERENT ROOM.  IT'S THE SAME ROOM, YOUR

5  HONOR.  AND THAT'S WHAT -- THAT'S SORT OF THE GAME THAT THEY'RE

6  PLAYING HERE.

7    THE ONLY THING THAT IS GOING TO GET THEM TO WORK TO

8  TRY AND REDUCE THIS ESI IS IF THEY'RE GOING TO BE ON THE HOOK

9  FOR SOME OR ALL OF IT AT THE END OF THE DAY.  THEN THEY'LL HAVE

10  AN INCENTIVE TO REALLY WORK ON THIS STUFF AND REDUCE IT.  AND

11  WE'VE MADE NUMEROUS PROPOSALS ALL CONSISTENT WITH THE SEDONA

12  PRINCIPLES, WELL ACCEPTED METHODOLOGY FOR ATTACKING ESI AND

13  THEY HAVE REJECTED EVERY ONE OF THEM.

14    THE COURT:  ALL RIGHT.  THANK YOU.

15    AND, PLAINTIFF, MR. MACLEOD SINCE IT'S YOUR MOTION

16  I'LL GIVE YOU THE LAST WORD IF YOU HAVE ANYTHING YOU WANTED TO

17  ADD?

18    MR. MACLEOD:  JUST TO CORRECT A COUPLE OF

19  MISSTATEMENTS.

20    NUMBER ONE, WE HAVE ENGAGED ON EVERY ONE; NUMBER TWO,

21  WE HAVE SUBSTANTIALLY MODIFIED EVERY SEARCH TERM THAT WAS CITED

22  IN THE DECLARATION IN THEIR RESPONSE TO OUR MOTION.

23    THEIR EXPERT DOES NOT KNOW WHAT IS IN THESE DOCUMENTS.

24  THEIR EXPERT CAN PROPOSE A HYPOTHETICAL IN WHICH IF YOU LOOK

25  FOR A DOCUMENT THAT SAYS, AGREEMENT, AND THAT'S SAYS, EXCLUDE,

1 YOU'LL FIND FEWER DOCUMENTS.

2 WELL, THAT'S TAUTOLOGY.  BUT THAT IS ALSO A

3 PRESCRIPTION FOR MISSING EVERY DOCUMENT THAT HAS AGREEMENT WITH

4 BUNDLING, THAT HAS AGREEMENT WITH GET RID OF ALL-TAG, THAT HAS

5 AGREEMENT WITH KILL THE COMPETITION.

6 THERE HAS TO BE MORE THAN A FEW HYPOTHETICAL EXAMPLES

7 PROVIDED BY A VENDOR TO IDENTIFY WHAT IS A RELEVANT DOCUMENT.

8 AND WE'VE RESPONDED TO EVERY ONE OF THOSE, AND INDEED WE HAVE

9 RESPONDED TO ALL ONE HUNDRED AND FIFTY-SEVEN BY VIRTUE OF THE

10 COUPLING OF KEY SEARCH TERMS.  I THINK WE'VE DONE WHAT WE CAN

11 DO.

12 THE COURT:  ALL RIGHT.

13 YES.

14 MR. PALMERSHEIM:  JUST TO CORRECT THE RECORD, YOUR

15 HONOR.

16 THE COURT:  ALL RIGHT, MR. PALMERSHEIM?

17 MR. PALMERSHEIM:  THEY HAVEN'T RESPONDED TO A HUNDRED

18 AND FIFTY-SEVEN.  WE GAVE THEM EXAMPLES IN OUR AFFIDAVIT JUST

19 TO SHOW HOW SUBSTANTIALLY YOU COULD REDUCE THIS NUMBER.

20 THEY CAME BACK WITH PROPOSALS THAT DIDN'T MOVE THE

21 NEEDLE AT ALL.  THEIR SEARCH TERMS DIDN'T HAVE ANY EFFECT.

22 THERE ARE STILL, YOU KNOW, MORE THAN A HUNDRED TWENTY SEARCH

23 TERMS THAT THEY'VE DONE NOTHING WITH WHATSOEVER.

24 THEY CLAIM WE'VE REMOVED UNIQUES WHICH MEANS THAT A

25 SEARCH TERM HAS TO HIT ON ONE OTHER SEARCH TERM BEFORE IT SHOWS

1  UP AS A HIT.  THAT MAKES ABSOLUTELY NO SENSE, THOUGH.

2         YOU'RE SAYING, I'VE GOT ONE SEARCH TERM AND IT'S GOING

3  TO HIT AGAINST A HUNDRED FIFTY-SIX OTHER GENERIC SEARCH TERMS.

4  IT DOESN'T GET YOU ANYWHERE.

5         THE COURT:  ALL RIGHT.

6         SO HERE IS WHAT I'M GOING TO DO.

7         I AM GOING TO TENTATIVELY ADVISE THE PARTIES THAT WHAT

8  I'M INCLINED TO DO IS TO ORDER THE PRODUCTION OF ALL THE

9  DOCUMENTS BY THE DEFENDANT AND RESERVE JURISDICTION TO

10  APPORTION COSTS.  HOWEVER, I'M NOT GOING TO ENTER THAT ORDER

11  FOR A FEW DAYS.  I'M GOING TO ENTER THAT ORDER NEXT WEEK.  I

12  WILL PROBABLY ENTER IT NEXT FRIDAY.

13         IN THE INTERIM WHAT I WILL DO IS, I'LL ASK THE PARTIES

14  TO TAKE A LOOK AT THE MOORE CASE THAT I MENTIONED FROM THE

15  SOUTHERN DISTRICT OF NEW YORK, UNITED HEALTH CARE, THE LI CASE

16  WHICH MENTIONS THE SEDONA PRINCIPLES AND THE SEDONA PRINCIPLES.

17         IF THE PARTIES CAN COME TO SOME RESOLUTION AMONG

18  THEMSELVES THEN LET ME KNOW BY THURSDAY OF NEXT WEEK, WHICH IS

19  DECEMBER --

20         THE CLERK:  SIXTH.

21         THE COURT:  -- SIXTH.

22         IF I DON'T HEAR ANYTHING BY DECEMBER 6TH I'LL JUST

23  ENTER A WRITTEN ORDER ON THE 7TH.  AND MY ORDER, IN LIGHT AFTER

24  HEARING FROM EVERYBODY, AND I -- I REALLY DON'T LIKE DOING

25  BECAUSE I LIKE TO SEE MORE COLLABORATION AND MORE SAMPLING AND

1  THINGS OF THAT NATURE AND WORK ON THE SEARCH TERMS.  BUT THE

2  DISCOVERY HAS GOTTEN BOGGED DOWN AND IT NEEDS TO GET MOVING.  I

3  HAVE TO GET THE DISCOVERY MOVING IN THIS CASE.

4          SO MY DECISION WOULD BE THAT I WOULD REQUIRE THE

5  DEFENDANT TO PRODUCE THE DOCUMENTS WHICH HAVE BEEN DESCRIBED AS

6  APPROXIMATELY A MILLION DOCUMENTS WITHIN TWO WEEKS.

7          HOWEVER, I AM GOING TO RESERVE JURISDICTION TO

8  ALLOCATE COSTS OF PRODUCTION.  I'M NOT SAYING I WILL AWARD

9  COSTS BUT I'M SAYING THAT I'M RESERVING JURISDICTION TO

10  CONSIDER AN ALLOCATION OF COSTS FOR THE DEFENDANT'S PRODUCTION

11  AND I'LL DECIDE THAT ISSUE AT A LATER TIME.

12          IF BEFORE THURSDAY THE PARTIES CAN WORK OUT SOME

13  AGREEMENT WHERE THEY CAN ENTER INTO SOME AGREED ORDER WHERE

14  THEY'VE AGREED TO RUN SOME SEARCH TERMS ON A VERY SPECIFIC

15  DEADLINE AND TRY TO NARROW THE UNIVERSE OF DOCUMENTS DOWN THEY

16  CAN PROPOSE THAT TO ME BY THURSDAY.

17          IF I DON'T HEAR ANYTHING FROM THE PARTIES BY THURSDAY

18  I'M GOING TO ENTER A WRITTEN ORDER FRIDAY AND IT WILL SAY WHAT

19  I JUST SAID.  ALL RIGHT?

20          MR. PALMERSHEIM:  YOUR HONOR, ONE CLARIFICATION?

21          THE COURT:  SURE.

22          MR. PALMERSHEIM:  THE ORDER -- SO WE HAD MENTIONED

23  THAT WE NEED TO CONDUCT A PRIVILEGE FILTER.

24          THE COURT:  RIGHT.

25          MR. PALMERSHEIM:  THEY'RE DOING THE EXACT SAME THING.

1          WE'VE ALSO SENT IN OUR PAPERS, AS I EXPLAINED TODAY,

2    WE NEEDS TO DO SOME SORT OF QUALITY CONTROL JUST TO MAKE SURE

3    THAT WHAT WE ARE PRODUCING HERE ISN'T GOING TO BE TRADE SECRET

4    INFORMATION OR -- FROM SOME COMPLETELY UNRELATED PART OF THE

5    COMPANY.  AND I UNDERSTAND THAT THERE IS A PROTECTIVE ORDER IN

6    PLACE BUT --

7          THE COURT:  THERE IS A CLAWBACK.  I UNDERSTAND YOU

8    DON'T WANT TO HAVE TO PRODUCE THAT IF YOU -- IF YOU DON'T.  BUT

9    IF YOU WERE TO PRODUCE SOMETHING INADVERTENTLY THERE IS A

10   PROTECTIVE ORDER WITH A CLAWBACK.

11         MR. PALMERSHEIM:  I UNDERSTAND AND I'VE BEEN AROUND

12   THE BLOCK A FEW TIMES AND PROTECTIVE ORDERS DON'T ALWAYS --

13         THE COURT:  I UNDERSTAND.

14         MR. PALMERSHEIM:  SO, YOU NO, GIVEN THAT -- THAT WE

15   HAVE THESE CONCERNS, CAN YOUR ORDER PROVIDE THAT WE'RE ALLOWED

16   TO, A, WITHHOLD PRIVILEGE DOCUMENTS; AND, B, CONDUCT SOME SORT

17   OF SAMPLING FOR QUALITY CONTROL.

18         WE'LL RELEASE EVERYTHING ELSE THAT DOESN'T GET CAUGHT

19   UP IN THE FILTERS BUT HAVE AN OPPORTUNITY TO RUN SOME OF THESE

20   SEARCHES TO HOLD BACK SOME OF THESE DOCUMENTS AND IF THEY ARE

21   RESPONSIVE WE WILL PRODUCE THEM.

22         MR. MACLEOD:  YOUR HONOR, WE WOULD OPPOSE THAT --

23         THE COURT:  HOLD ON JUST ONE SECOND.

24         I MEAN, CERTAINLY AS TO A PRIVILEGE, IF THERE ARE

25   PRIVILEGED DOCUMENTS YOU DO A PRIVILEGE LOG AND WITHHOLD THE

1   DOCUMENTS.  I MEAN THAT'S JUST THE LOCAL RULE ADDRESSES

2   PRIVILEGED DOCUMENTS AND PRIVILEGE LOG.

3          WHAT I DON'T UNDERSTAND IS QUALITY CONTROL.  IF WE'RE

4   TALKING ABOUT A UNIVERSE OF A MILLION DOCUMENTS IT'S ONE THING

5   IF YOU'RE LOOKING THROUGH THEM FOR PRIVILEGE OR, YOU KNOW, SOME

6   SORT OF EITHER WORK PRODUCT PRIVILEGE, OR ATTORNEY/CLEINT

7   PRIVILEGE, OR SOME OTHER RECOGNIZED FEDERAL PRIVILEGE, THAT'S

8   ONE THING.  BUT WHEN YOU SAY QUALITY CONTROL --

9          MR. PALMERSHEIM:  WE CITED THE YOUNGINTON, CASE, YOUR

10  HONOR.  GRANTED IT'S OUT OF THE CENTRAL DISTRICT OF CALIFORNIA,

11  BUT I THINK THE DISTRICT COURT IN THAT CASE GAVE A GOOD

12  EXPLANATION OF PARTIES SHOULD BE DOING THESE SORT OF SEARCHES

13  TO MAKE SURE THEY'RE PRODUCING THE RIGHT DOCUMENTS AND NOT A

14  BUNCH OF GARBAGE.

15         MY CONCERN, THOUGH, IS IN ADDITION TO THAT IS, I'VE

16  GOT DIVISIONS OF THIS COMPANY THAT AREN'T IN ISSUE HERE.  WE

17  MAY BE POSSIBLY BE PRODUCING TRADE SECRETS AND OTHER

18  MATERIAL --

19         THE COURT:  AND IF IT'S A TRADE SECRET THAT WOULD BE A

20  PRIVILEGE.

21         MR. PALMERSHEIM:  I --

22         THE COURT:  AND YOU WOULD NOTE THAT ON THE PRIVILEGE

23  LOG.

24         MR. PALMERSHEIM:  I UNDERSTAND.

25         THE COURT:  RIGHT.

1        SO, I MEAN, THAT WOULD TAKE CARE -- I THINK THE

2   PRIVILEGE, TRADE SECRETE, WORK PRODUCT, ATTORNEY/CLIENT

3   PRIVILEGE WOULD BE COVERED BY THE PRIVILEGE LOG.  THE REST OF

4   IT WOULD JUST BE THINGS THAT YOU FEEL ARE NOT REALLY RELEVANT

5   TO THE CASE.

6        AND THAT IS WHERE, IF I FIND OUT LATER ON THAT YOU'VE

7   PRODUCED ALL THESE DOCUMENTS AND A LARGE PERCENTAGE OF THEM

8   TURN OUT TO BE IRRELEVANT, THEN THAT'S WHERE ALLOCATION OF COST

9   VERY WELL MAY COME IN.

10        MR. PALMERSHEIM:  UNDERSTOOD, YOUR HONOR.

11        THE COURT:  SO WHAT I -- WHAT I WANT TO DO IS, I WANT

12  TO GET THE DISCOVERY MOVING.  I WANT YOU TO PRODUCE DISCOVERY.

13  I WANT TO GET IT MOVING.

14        OBVIOUSLY IF THERE IS A PRIVILEGE ISSUE YOU CAN

15  WITHHOLD PRIVILEGED DOCUMENTS WITH A PRIVILEGE LOG IN

16  COMPLIANCE WITH OUR LOCAL RULE.  THERE IS THE CLAWBACK WHICH IS

17  IN PLACE.  BUT I WANT TO GET -- I WANT TO GET DOCUMENT

18  PRODUCTION MOVING.

19        MR. PALMERSHEIM:  UNDERSTOOD, YOUR HONOR.

20        IN TERMS OF ONCE WE PRODUCE THE DOCUMENTS WE ARE GOING

21  TO HAVE A GROUP OF DOCUMENTS THAT ARE PRIVILEGED.  WE'LL TRY TO

22  WORK WITH OPPOSING COUNSEL TO A DATE BY WHICH WE'LL HAVE AN

23  OPPORTUNITY TO REVIEW THOSE.

24        WE'LL RELEASE THOSE THAT ARE NOT PRIVILEGED AS WE GO

25  THROUGH THEM SO THERE WILL BE A ROLLING PRODUCTION.  BUT AS THE

1  COURT UNDERSTANDS, I HOPE, IT'S GOING TO BE SOMEWHAT OF A

2  TEDIOUS PROCESS GIVEN THAT WE'RE GOING BACK SIX YEARS AND WE'RE

3  PROBABLY GOING TO HAVE A SUBSTANTIAL AMOUNT OF PRIVILEGED

4  INFORMATION.

5          THE COURT:  ARE YOU PLANNING ON DOING A MANUAL REVIEW

6  OF ALL OF THE DOCUMENTS OR ARE YOU GOING TO BE DOING SOME

7  SAMPLING AND MANUALLY REVIEWING THOSE DOCUMENTS?  DO YOU KNOW

8  YET BECAUSE --

9          MR. PALMERSHEIM:  I GOT --

10         THE COURT:  -- IF YOU MANUALLY REVIEW ALL OF THE

11 DOCUMENTS, I MEAN, THAT SEEMS TO BE SORT OF AN ANTIQUATED

12 PROCEDURE.

13         MR. PALMERSHEIM:  WELL, ON THE PRIVILEGE INFORMATION

14 WHAT I'M THINKING WE MIGHT BE ABLE TO DO IS, DO A SAMPLING AND

15 COME TO AN AGREEMENT AS TO HOW CERTAIN CATEGORIES OF

16 INFORMATION MAY OR MAY NOT HAVE TO BE LOGGED.

17         SO, FOR INSTANCE, YOU MAY RECALL THAT MR. MACLEOD

18 TALKED ABOUT THE USS LITIGATION.  WELL, THE USS LITIGATION

19 FALLS UNDER THE SAME TIME PERIOD OF WHEN WE HAVE TO PRODUCE

20 DOCUMENTS.

21         SO, FOR INSTANCE, ONE OF MY CONCERNS IS WE'RE PROBABLY

22 GOING TO HAVE A LOT OF PRIVILEGE INFORMATION GOING BACK AND

23 FORTH THAT HAS TO DO WITH THAT LITIGATION.  I JUST DON'T KNOW

24 YET BECAUSE I HAVEN'T RUN THE FILTERS AND HAVEN'T SEEN HOW MANY

25 TERMS HAVE BEEN CAUGHT UP.

1             THE COURT:  ALL RIGHT.

2             MR. PALMERSHEIM:  SO I'M JUST -- I'M JUST ADVISING THE

3    COURT, GIVING --

4             THE COURT:  I UNDERSTAND.

5             (BOTH TALKING AT THE SAME TIME.

6             MR. PALMERSHEIM:  -- A HEADS UP TO LET YOU KNOW --

7             (BOTH TALKING AT THE SAME TIME)

8             THE COURT:  LISTEN.  MY VIEW IS, THERE'S GOOD LAWYERS

9    ON BOTH SIDE IN THIS CASE.  OKAY?  I MEAN, IT'S PRETTY OBVIOUS.

10   AND THE CASE IS OBVIOUSLY IMPORTANT, IT'S A BIG CASE.

11            I WANT THE PARTIES TO REALLY WORK TOGETHER AND

12   COLLABORATE AS MUCH AS YOU POSSIBLY CAN.  I DON'T WANT TO BE

13   HEARING A LOT OF DISCOVERY DISPUTES IN THIS CASE.  OBVIOUSLY IF

14   THERE ARE IMPORTANT ISSUES THAT HAVE TO BE RESOLVED, SUCH AS A

15   PRIVILEGE ISSUE, SCOPE ISSUE, THINGS OF THAT NATURE.

16            BUT REALLY WHEN THERE IS GOOD LAWYERS IN CASES FROM

17   WHAT I SEE MOST OF THE ISSUES CAN GET RESOLVED.  AND SO, WE

18   HAVE GOOD LAWYERS ON BOTH SIDES HERE.  SO I WOULD EXPECT AND

19   HOPE THAT YOU COULD ALL DO THAT.

20            BUT ON THE OTHER HAND I DON'T WANT THE COLLABORATION

21   PROCESS TO SLOW DISCOVERY DOWN.  I WANT TO GET DISCOVERY

22   MOVING.

23            IF THIS WAS A SITUATION WHERE THE DISCOVERY HADN'T

24   BEEN SET BACK IN MAY AND NOW IT'S SIX, SEVEN MONTHS LATER,

25   THAT'S ONE THING.  BUT WE'RE ALREADY -- WE ARE GOING TO BE IN

1 | THE NEW YEAR BEFORE WE KNOW IT AND THE DISCOVERY HAS JUST GOT
2 | TO GET MOVING.

3 | THIS CASE IS IN FRONT OF JUDGE DIMITROULEAS AND YOU
4 | ALL KNOW THAT JUDGE DIMITROULEAS IS VERY, VERY STRICT ON HIS
5 | DEADLINES, AND EXTENDING THEM SHOULD NOT BE EXPECTED BY THE
6 | PARTIES.

7 | SO THAT MEANS THAT YOU ALL HAVE TO WORK TOWARDS THIS
8 | PRODUCTION.  AND THAT'S WHY I WANT TO GET THE DISCOVERY MOVING.
9 | SO THAT WOULD BE MY RULING.

10 | SO IF THE PARTIES CAN AGREE AMONG THEMSELVES AFTER
11 | REVIEWING THOSE MATERIALS YOU'RE WELCOME TO SUBMIT EITHER AN
12 | AGREED ORDER OR A JOINT NOTICE BY THURSDAY OF NEXT WEEK,
13 | DECEMBER 6TH.

14 | IF I HEAR NOTHING FROM THE PARTIES BY FIVE P.M. ON
15 | DECEMBER 6TH, WHICH IS THURSDAY, THEN I'LL GO AHEAD AND ENTER A
16 | WRITTEN ORDER ON THE 7TH, WHICH IS, AS I SAID, WILL STATE THAT
17 | ALL THE DOCUMENTS WILL BE PRODUCED, THAT I WILL RESERVE
18 | JURISDICTION TO ALLOCATE COSTS, AND THAT THE DEFENDANT IS
19 | CERTAINLY ENTITLED TO WITHHOLD PRIVILEGE DOCUMENTS BY FOLLOWING
20 | THE PRIVILEGE LOG PROCEDURE IN OUR LOCAL RULES.

21 | ALL RIGHT?

22 | SO SINCE IT WAS THE PLAINTIFF'S MOTION, ANY
23 | CLARIFICATION OR ANYTHING ELSE THAT WE NEED TO RESOLVE TODAY
24 | FROM THE PLAINTIFF'S SIDE?

25 | MR. MACLEOD:  NO, YOUR HONOR.

```
 1              THE COURT:  ALL RIGHT.

 2              ANYTHING FROM THE DEFENSE SIDE?

 3              MR. PALMERSHEIM:  NO.  THANK YOU FOR YOUR TIME, YOUR

 4    HONOR.

 5              THE COURT:  OKAY.  I HOPE YOU ALL HAVE A GREAT WEEKEND

 6    AND I'M SURE I WILL BE SEEING ALL OF YOU AGAIN SOON.

 7              MR. PALMERSHEIM:  THANK YOU, YOUR HONOR.

 8              MR. MACLEOD:  THANK YOU.

 9              THE CLERK:  ALL RISE.

10              THE COURT IS IN RECESS.

11                              - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1
 2
 3                      C E R T I F I C A T E
 4
 5
 6  UNITED STATES OF AMERICA
 7  SOUTHERN DISTRICT OF FLORIDA
 8
 9
10       I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED
11  STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO
12  HEREBY CERTIFY THAT THE FOREGOING 46 PAGES CONSTITUTE A TRUE
13  TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN
14  THE CITY OF WEST PALM, FLORIDA, IN THE MATTER THEREIN STATED.
15       IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS
16  11TH DAY OF DECEMBER 2018.
17
18                          /S/CARL SCHANZLEH
                            CARL SCHANZLEH, RPR-CM
19                          CERTIFIED COURT REPORTER
                            9960 SW 4TH STREET
20                          PLANTATION, FL 33324
                            TELEPHONE 954 424-6723
21
22
23
24
25
```