# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALL-TAG CORP., | ) |
| | ) |
| Plaintiff, | ) Case No. 17 cv 81261 |
| | ) |
| v. | ) Judge William P. Dimitrouleas |
| | ) Magistrate Judge William Matthewman |
| CHECKPOINT SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MOTION TO COMPEL NON-PARTY BEST SECURITY ACQUISITION, LLC TO PRODUCE ALL DOCUMENTS RESPONSIVE TO SUBPOENA AND INCORPORATED MEMORANDUM OF LAW**

Checkpoint Systems, Inc. ("Checkpoint") moves to compel Best Security Acquisition, LLC ("Best Security") to produce all documents and information responsive to the Subpoena to Produce Documents ("Subpoena"), attached as Exhibit A. Checkpoint served the Subpoena on Best Security for limited documents relevant to Checkpoint's defense in this antitrust matter, but despite several attempts between the parties to resolve any issues without court intervention, Checkpoint remains without relevant information critical to its defense. Checkpoint now seeks an order compelling Best Security to fully comply with the Subpoena.

## I.     RELEVANT BACKGROUND

All-Tag Corp. ("All-Tag") accuses Checkpoint of violating antitrust laws by allegedly foreclosing competitors from selling labels used with RF Electronic Article Surveillance ("EAS") systems by leveraging its "unique position" as a provider of RF EAS towers, deactivators, installation and service. All-Tag alleges, among other things, that Checkpoint uses its dominance in RF EAS to foreclose it and other competitors from selling RF EAS labels in the Relevant Markets it has defined (i.e., retailers with certain EAS systems already installed; and drug stores, grocery stores and stores selling small items), and that Checkpoint has illegally bundled its EAS products with other products and services, including closed circuit television ("CCTV") that competitors cannot provide. (D.E. 35; ¶¶ 42-53).

All-Tag claims that only Checkpoint and All-Tag are "effective" competitors in the Relevant Markets but identified Best Security as a competitor who has sold RF EAS systems and labels and can provide servicing of EAS systems. *See* All-Tag's Fourth Supplemental Responses to Checkpoint's Interrogatories, Nos. 3, 9, attached hereto as Exhibit B.[1]  Moreover, Best Security promotes itself as being "the largest independent distributor of EAS systems, hard tags, labels and accessories" and "manufactures items that are compatible and interchangeable with…Checkpoint tags and systems." *See*  http://www.bsi-eas.com/Company-Profile.  Because Best Security is a competitor in the Relevant Market, it is likely to have relevant information necessary for Checkpoint's defense.

On November 11, 2018, Checkpoint served a Subpoena seeking information related to Best Security's sales and servicing of EAS systems and labels, as well as CCTV sales, from September 1, 2012 to present to retailers in the Relevant Market. (Ex. A.)  Best Security requested an

---

[1] Exhibit B will be filed under seal pursuant to the S.D. Fla. Local Rules.

extension while the parties conferred on Best Security's confidentiality concerns.  *See* e-mail correspondence, attached hereto as Exhibit C.  To assure Best Security that its alleged confidential business records would not be disclosed other than to attorneys and experts in the litigation, Checkpoint provided Best Security with a copy of the Stipulated Protective Order, which permits Best Security to produce information as "Highly Confidential."  *Id*.; *see also*, Protective Order, (D.E. 55).  On March 5, 2019, Best Security served its Objections and Responses to Checkpoint's Subpoena ("Objections"), attached hereto as Exhibit D, objecting to the Subpoena in its entirety. The parties engaged in a subsequent meet and confer on March 11, 2019 but Best Security continues to refuse to produce any of the requested information, instead proposing to provide aggregate information by category of retailer in the Relevant Market.  *See* e-mail correspondence, attached hereto as Exhibit E.  Best Security's proposal, however, is insufficient as Best Security's categorization of the various retailers is subject to interpretation, does not permit Checkpoint to evaluate competitors in the various categories of the Relevant Market, or rebut All-Tag's assertion that certain customers are foreclosed from label sales.

**II.   BEST SECURITY'S OBJECTIONS LACK MERIT AND SHOULD BE OVERRULED**

The information sought by the Subpoena is relevant to Checkpoint's defense and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).  Therefore, Best Security should be ordered to produce the requested information.

> **Request No. 1**: Documents sufficient to show the following information for your sales of EAS systems to Retailers: a. The entities to whom you sold the EAS systems; b. When you sold the EAS systems to those persons; c. The quantities of EAS systems sold; and d. The prices of the EAS systems.
> **Response to Request No. 1**: Best Security objects to this request on the grounds that it is overbroad, and unduly burdensome. This request, along with the other requests made, seeks essentially all of Best Security's confidential business records and information. Both All-Tag and Checkpoint are major competitors of Best Security, and this request is not tailored to the specific entities to whom the parties sold EAS systems.  By seeking information on all of Best Securities [sic] customers, Defendant has made no effort to limit the scope of the request so as to avoid the unnecessary disclosure of confidential business information.

Information related to Best Security's sales of EAS systems for a limited period and to a limited number of customers (as defined by the Subpoena) is relevant to Checkpoint's defense of this matter for several reasons. In its Complaint, All-Tag alleges that Checkpoint forecloses competitors from selling various EAS products and takes advantage of its "unique position as a

one-stop provider of integrated and complete solutions for retailers, including sales of EAS systems, service and installation and CCTV. (D.E. 35, ¶¶ 42-53).  By its own admissions, Best Security is a "major competitor" of Checkpoint's, thereby making its sales relevant because it is in the same market and, further, information relating to Best Security's sales of EAS systems directly contradict All-Tag's allegations.

Moreover, Best Security's assertion that the request is unduly burdensome is merely a boilerplate unsupported attempt to avoid compliance. To sustain an unduly burdensome objection, Best Security is required to "make a particular and specific demonstration of fact and cannot rely on simply conclusory assertions about the difficulty of complying with a discovery request." *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010) (quoting *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998)).  Best Security fails to explain how the request is "overbroad" and "unduly burdensome," and Checkpoint attempted to minimize Best Security's burden by requesting "documents sufficient to show," rather than "all documents."

Finally, Best Security's objections based on the claimed confidential nature of the information sought is not grounds to avoid compliance with the Subpoena.  *Barrington v. Mortgage IT, Inc*. Case No. 07-61304-CIV, 2007 WL 4370647, at *1 n.3 (S.D. Fla. Dec. 10, 2007) (internal citations omitted).  The fact that there is a Stipulated Protective Order in place that is more than sufficient to protect the disclosure of Best Security's information.  *See*, *e.g.*, *Coty Inc. v. C. Lenu, Inc.*, Case No. 10-21812-CIV, 2010 WL 5392887, at *23 (S.D. Fla. Dec. 22, 2010) (subpoena requests for information regarding suppliers and customers enforced subject to the protections of the protective order); *Sierra Equity Group v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369 (S.D. Fla. 2009) (ordering production of information subject to confidentiality agreement that limited dissemination).  Courts routinely permit limited disclosure of competitor's information pursuant to a protective order in antitrust matters.  *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, Case No. 16-62492-MC-ZLOCH, 2017 WL 4230124, at *5 (S.D. Fla. May 15, 2017) (internal citations omitted).  The Court entered the Protective Order for the purpose of allowing the Parties *and Third-Parties* to produce sensitive business information in order to promote discovery in the case.  Accordingly, because the information sought by this Request is relevant to Checkpoint's defense and Best Security's business information is protected by the Stipulated Protective Order, Best Security has no basis to object to the Subpoena request.

**Request No. 2**: Documents sufficient to show the following information for your sales of EAS labels to Retailers: a. The entities to whom you sold the EAS labels; b. When you sold the EAS labels to those persons; c. The quantities of EAS systems sold; and d. The prices of the EAS labels.
**Response to Request No. 2**: Best Security objects to this request on the grounds that it is overbroad, and unduly burdensome. This request, along with the other requests made, seeks essentially all of Best Security's confidential business records and information. Both All-Tag and Checkpoint are major competitors of Best Security, and this request is not tailored to the specific entities to whom the parties sold EAS labels or to whom they sold specific types of labels. By seeking information on all of Best Securities [sic] customers, Defendant has made no effort to limit the scope of the request so as to avoid the unnecessary disclosure of confidential business information.

Because Best Security's objections to Request No. 2 generally mirror those asserted in response to Request No. 1, Checkpoint incorporates the same response.

**Request No. 3**: Documents sufficient to show the following information for your sales of EAS labels to manufacturers, distributors, or packagers of packaged goods; or through any source-tagging arrangement: a. The entities to whom you sold the EAS labels; b. When you sold the EAS labels to those persons; c. The quantities of EAS systems sold; and d. The prices of the EAS labels.
**Response to Request No. 3**: Best Security objects to this request on the grounds that it is overbroad, and unduly burdensome. This request, along with the other requests made, seeks essentially all of Best Security's confidential business records and information. Both All-Tag and Checkpoint are major competitors of Best Security, and this request is not tailored to the specific entities to whom the parties sold EAS labels or to whom they sold specific types of labels. By seeking information on all of Best Securities [sic] customers, Defendant has made no effort to limit the scope of the request so as to avoid the unnecessary disclosure of confidential business information.

Because Best Security's objections to Request No. 3 generally mirror those asserted in response to Request No. 1, Checkpoint incorporates the same response.

**Request No. 4**: Agreements between Best Security Industries and any other entity relating to providing Retailers with EAS system installation or service, CCTV, and Fire/Intrusion services.
**Response to Request No. 4**: Best Security objects to this request on the grounds that it is overbroad, and unduly burdensome. This request, along with the other requests made, seeks essentially all of Best Security's confidential business records and information. Both All-Tag and Checkpoint are major competitors of Best Security, and this request is not tailored to the specific classes of products, the nature of the installation or service contracts, or the entities or categories of entities to whom the parties sold such EAS system installation or service, CCTV, and Fire/Intrusion services. By seeking information on all of Best Securities [sic]

4

customers, Defendant has made no effort to limit the scope of the request so as to avoid the unnecessary disclosure of confidential business information.

Because Best Security's objections to Request No. 4 generally mirror those asserted in response to Request No. 1, Checkpoint incorporates the same response. In addition, information relating to Best Security's ability to provide CCTV and Fire/Intrusion services is necessary and relevant to refute All-Tag's allegations that competitors could not provide such services.

> **Request No. 5:** Documents sufficient to show the geographic areas in the United States where Best Security Industries (either on its own or in affiliation with another entity or entities) can provide installation and/or service of EAS systems.
> **Response to Request No. 5**: Best Security objects to this request on the grounds that it is unduly burdensome. Searching for an existing document that provides the information sought will require a methodical search for document that may or may not exist. Best Security is willing to simple [sic] inform the parties as to the geographic areas that it services.[2]

Even though Best Security stated it will inform the parties of its geographical scope, it has not provided any information responding to this Request. Moreover, this proposal is insufficient as Checkpoint requires unambiguous documents showing the geographical scope of Best Security's installation and servicing capabilities in order to refute All-Tag's claim that Checkpoint has foreclosed competition in the Relevant Markets. For the reasons above, Best Security's bare statement that the Request is "unduly burdensome," is insufficient. Although Best Security has asserted that collecting the information sought "will require a methodical search," that objection too is insufficient and Best Security has not provided anything to substantiate that claim. *See*, *e.g.*, *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 669 (S.D. Fla. 2005) (compliance with request seeking relevant information cannot be avoided merely due to significant time required).

### III. CONCLUSION

WHEREFORE, Defendant Checkpoint Systems, Inc. requests the entry of an order compelling Best Security Acquisition, LLC to produce all documents responsive to the Subpoena, overruling Best Security Acquisition, LLC's objections thereto, and for such further relief as this Court deems just and proper.

---

[2] Best Security's Objection also included Responses to Request Nos. 6 and 7, but Best Security acknowledged that the Subpoena did not make any requests beyond No. 5. Best Security's inclusion of requests not made by the Subpoena only further demonstrates the minimal effort Best Security made to comply with the Subpoena, instead asserting only boilerplate objections.

**S.D. Fla. L.R. 7.1(a)(3) CERTIFICATE OF CONFERENCE OF COUNSEL**

Pursuant to Local Rule 7.1(a)(3), undersigned counsel hereby certifies that counsel for the movant has conferred with counsel for Best Security Acquisition, LLC in a good faith effort to resolve the issues but has been unable to resolve the issues.

Dated: April 3, 2019

*/s/ Gavin C. Gaukroger*
*One of the attorneys for Checkpoint Systems, Inc.*

| | |
|---|---|
| Gavin C. Gaukroger | Robert J. Palmersheim (*pro hac vice*) |
| Fla. Bar. No. 76489 | Anand C. Mathew (*pro hac vice*) |
| Charles H. Lichtman | Julie M. Mallen ((*pro hac vice*) |
| Fla. Bar No. 501050 | PALMERSHEIM & MATHEW LLP |
| BERGER SINGERMAN LLP | 401 N. Franklin Street, Suite 4S |
| 350 East Las Olas Boulevard, Suite 1000 | Chicago, Illinois 60654 |
| Fort Lauderdale, Florida 33301 | Tel: (312) 319-1791 |
| Tel: (954) 525-9900 | Fax: (312) 878-2890 |
| Fax: (954) 523-2872 | rjp@thepmlawfirm.com |
| ggaukroger@bergersingerman.com | acm@thepmlawfirm.com |
| clichtman@bergersingerman.com | jmm@thepmlawfirm.com |
| DRT@bergersingerman.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of April 2019, a true and correct copy of the foregoing Defendant's Motion to Compel Non-Party Best Security Acquisitions, LLC to Produce All Documents Responsive to Subpoena and Incorporated Memorandum of Law was served via CM/ECF on counsel of record in this case indicated below, and a copy was sent via e-mail to Eric Horbey, Lazer, Aptheker, Rosella & Yedid, P.C. at horbey@larypc.com, counsel for Non-Party Best Security Acquisitions, LLC.

Damon Suden
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
212-808-7800
Email: dsuden@KelleyDrye.com

Julian Solotorovsky
Matthew C. Luzadder
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
312-857-7070
Email: jsolotorovsky@KelleyDrye.com
Email: mluzadder@kelleydrye.com

William A. MacLeod
KELLEY DRYE & WARREN LLP
3050 K Street NW, Suite 400
Washington, DC 20007
202-342-8811
Email: wmacleod@kelleydrye.com

Christopher W. Kammerer
John F. Mariani
KAMMERER MARIANI PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
561-990-1592
Email: ckammerer@kammerermariani.com
Email: jmariani@kammerermariani.com

John B. Williams
WILLIAMS LOPATTO PLLC
1707 L Street NW, Suite 550
Washington, DC 20036
202-296-1611
Email: jbwilliams@williamslopatto.com

/s/ Gavin C. Gaukroger