issoIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALL-TAG CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17 CV 81261-WPD |
| v. | ) |
| | ) Judge William P. Dimitrouleas |
| CHECKPOINT SYSTEMS, INC., | ) Magistrate Judge William Matthewman |
| | ) |
| Defendant. | ) |

**ALL-TAG'S MOTION TO COMPEL DISCOVERY [and for expedited briefing]**

**I.     INTRODUCTION**

All-Tag submits this Motion to Compel Discovery and to set an expedited briefing schedule in order to obtain information that Checkpoint refuses to produce. The information relates to financial data that experts need in order to analyze costs and revenues associated with transactions at issue in the case, depositions of individuals who have testified about the facts at issue in this case, and reports of experts who expressed opinions on the issues in this case.

Checkpoint objects to the discovery and argues that the information is irrelevant and burdensome to produce. In the alternative, Checkpoint argues that All-Tag should have filed this motion last year, while Checkpoint was asserting the information was irrelevant and before Checkpoint had produced information that demonstrated the relevance of the information it refuses to produce. The parties have endeavored to resolve the dispute, without success.

**II.    RELEVANT BACKGROUND**

After months of negotiations and litigation during which Checkpoint refused to produce documents at the core of this case, this Court ordered Checkpoint in December to produce its electronically stored information by December 21, 2019. As this Court stated at the time,

"discovery has gotten bogged down and it needs to get moving." D.E. 76 at 39:1-3. Checkpoint missed that deadline and produced information with search terms such as bundl*, exclusiv*, and competit* a week later, on December 27th. Since then, All-Tag has spent months seeking information apparently missing from the production and other documents requested specifically. Checkpoint's response to these requests for additional information has consisted of the same tactics it used last year— it objected and stalled until threats of imminent motions prompted partial productions. Still outstanding is distinct and obviously relevant information that Checkpoint will not produce. *See* D.E. 91-1 to 91-3 (sealed 2019 discovery negotiation letters).

Some of the documents that All-Tag seeks stem from a previous case against Checkpoint with similar allegations of anticompetitive conduct. *See Universal Surveillance Corp. d/b/a Universal Surveillance Systems v. Checkpoint Sys.*, No. 5:11-CV-1755, (hereinafter "*USS*"). The *USS* case settled in 2016 after 5 years of extensive litigation.

### III.   MATERIALS SOUGHT FROM CHECKPOINT

All-Tag moves to compel three distinct categories of documents from Checkpoint: (1) specific documents missing from the production; (2) deposition transcripts, videotapes, expert reports, and accompanying exhibits from the *USS* Litigation; and (3) financial data relating to exclusive deals and deceptive advertising. All-Tag addresses each category in turn.

1.   **Specific Information —** All-Tag has requested presentations and documents related to several key aspects of the case:

- Meetings Checkpoint organized in which it induced competing customers to buy Checkpoint labels. *See* 2015 National Source Tagging Symposium Retailers and CPGs Challenged to Move Forward, available at https://losspreventionmedia.com/2015-national-source-tagging-symposium-retailers-and-cpgs-challenged-to-move-forward. Checkpoint has failed to produce

numerous documents related to those meetings. *See* D.E. 91-3, Sealed February 28th Discovery Letter requesting these documents.

- Correspondence between Checkpoint and the third party it uses for testing of RF labels, TUV Rheinland.

2. **Information from the *USS* Litigation** — For months, All-Tag attempted to obtain materials from the *USS* Litigation, including expert reports, summary judgement motions, and documents produced in that case. After extensive negotiations in 2018 (*see, e.g.*, Exhibits A-H to All-Tag's First Motion to Compel, D.E. 64), Checkpoint agreed to produce documents from the earlier production, insisting all along that information from *USS* was irrelevant, and refused to produce the other information, such as deposition transcripts. All-Tag tabled its request for additional information, "without waiving our right to request additional transcripts as discovery proceeds." *See* D.E. 64-8, Exhibit G to All-Tag's First Motion to Compel. The documents Checkpoint produced in late 2018 unmistakably established the relevance of the *USS* information, and All-Tag reiterated its requests for it. Checkpoint refuses to produce:

- **Deposition Transcripts and Exhibits** Checkpoint agreed to "produce the deposition transcripts (if any) for current or former Checkpoint employees identified in Checkpoint's Rule 26 disclosures….". Checkpoint produced transcripts of five depositions, but withheld the rest, including the transcript of the 30(b)(6) deposition for one of the five employees. The basis for Checkpoint's refusal (aside from baseless assertions of irrelevance (*as seen in* Exhibits A-H to All-Tag's First Motion to Compel, D.E. 64)) is that All-Tag agreed to waive its right to request them. All-Tag did not. This Court should compel Checkpoint to

3

produce all transcripts of its employees' depositions, with the accompanying videos and exhibits.

- **Expert Reports and Exhibits**—Similarly, the Expert Reports from the *USS* Litigation contain highly relevant information to this case. Checkpoint objects to the production of these reports on the bases that (a) *any* document from the *USS* Litigation is irrelevant and (2) the reports may contain the confidential information of third parties. The claim of irrelevance was decisively rebutted in *USS*, where the Special Master deemed the expert opinions helpful pertinent to enduring anticompetitive effects of Checkpoint's conduct. *See, e.g., Report of Special Master Regarding Checkpoint's Motion to Preclude Testimony of Dr. Ramsey Shehadeh*, D.E. 501 in the *USS* Litigation, and *Report of Special Master Regarding Plaintiff's Motion to Preclude Testimony of Dr. Barry Harris and Dr. Michael Keeley*, D.E. 505. As for confidentiality, the Protective Order in the *USS* Litigation contemplates this precise situation and requires Checkpoint to inform any third party, and obtain releases if necessary. *See* D.E. 122 in the *USS* Litigation. All-Tag does not know if and to what extent other parties' confidential information is in which report. Checkpoint does. With or without releases, Checkpoint informed All-Tag on its last meet-and-confer that it would not produce the documents. Thus, All-Tag is forced to move to compel these documents.

3. **Data relating to exclusive sales and damages** — Lastly, All-Tag has requested the sales data pertaining to the transactions at issue in this case. Many of Checkpoint's exclusive deals were crafted and entered prior to 2012 (the time period for which Checkpoint has produced

sales data in the present litigation). Without information about early payments and credits that apply to later sales, experts are unable to perform analyses of prices, costs and revenues for those sales. Checkpoint claims that pre-2012 data was produced in *USS,* but refuses to identify where it is. All-Tag can not find it. Thus, All-Tag moves to compel Checkpoint to produce the data or tell All-Tag where it is.

### IV. MEET AND CONFER CERTIFICATE PURSUANT TO S.D. L.R. 7.1(A)(3)

I hereby certify that counsel for the Plaintiff/movant has conferred with counsel for Defendant in a good faith effort to resolve the issues raised in the motion, including by telephone conference held on April 15, 2019, but has been unable to do so.

### V. CONCLUSION

In its order of April 4th, this Court anticipated that an expert deadline would encourage cooperation in discovery. *See* D.E. 104 at 5-6. Checkpoint has used the deadline to achieve just the opposite. It is refusing to cooperate and running out the clock.

WHEREFORE, All-Tag respectfully requests that the Court order Checkpoint to produce the information All-Tag has requested, and to order expedited briefing on this motion.

Dated: April 19, 2019　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　By: */s/ Christopher Kammerer*
　　　　　　　　　　　　　　　　　　　　　　Christopher Kammerer

　　　　　　　　　　　　　　　　　　　Christopher William Kammerer
　　　　　　　　　　　　　　　　　　　John F. Mariani
　　　　　　　　　　　　　　　　　　　KAMMERER MARIANI PLLC
　　　　　　　　　　　　　　　　　　　1601 Forum Place, Suite 500
　　　　　　　　　　　　　　　　　　　West Palm Beach, FL 33401
　　　　　　　　　　　　　　　　　　　(561)-990-1592
　　　　　　　　　　　　　　　　　　　ckammerer@kammerermariani.com
　　　　　　　　　　　　　　　　　　　jmariani@kammerermariani.com

　　　　　　　　　　　　　　　　　　　William MacLeod (*pro hac vice)*
　　　　　　　　　　　　　　　　　　　Julian Solotorovsky (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　KELLEY DRYE & WARREN LLP

333 West Wacker Drive
Chicago, IL 60606
(312)-857-7070
jsolotorovsky@kelleydrye.com
wmacleod@kelleydrye.com

Damon Suden (*pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212)-808-7800
dsuden@KelleyDrye.com

John B. Williams *(pro hac vice)*
WILLIAMS LOPATTO PLLC
1707 L Street, NW Suite 550
Washington, DC 20036
(202) 296-1611
jbwilliams@williamslopatto.com
*Attorneys for Plaintiff All-Tag Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of April 2019, a true and correct copy of the foregoing was served upon the following counsel of record for Defendant via PACER:

>Charles Howard Lichtman
>Gavin Gaukroger
>BERGER SINGERMAN
>Las Olas Centre II
>350 E Las Olas Boulevard
>Suite 1000
>Fort Lauderdale, FL 33301
>954-525-9900
>Fax: 523-2872
>clichtman@bergersingerman.com
>ggaukroger@bergersingerman.com

>Robert J. Palmersheim
>Anand C. Mathew
>Julie M. Mallen
>PALMERSHEIM & MATHEW
>401 N. FRANKLIN STREET, SUITE 4S
>CHICAGO, IL 60654
>312-319-1791
>acm@thepmlawfirm.com
>rjp@thepmlawfirm.com
>jmm@thepmlawfirm.com

>By: */s/ Christopher Kammerer*
>    Christopher Kammerer