UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALL-TAG CORP.,                                                  CASE NO. 17-81261-CIV-DIMITROULEAS

        Plaintiff,

v.

CHECKPOINT SYSTEMS, INC.

        Defendant.
_____/

**CHECKPOINT SYSTEMS, INC.'S RESPONSE
TO ALL-TAG CORP.'S MOTION TO COMPEL
DISCOVERY AND INCORPORATED MEMORANDUM OF LAW**

After sitting on various discovery disputes for almost a year, All-Tag filed its untimely Motion to Compel Discovery ("Motion") providing intentionally misleading and incomplete information related to purported discovery disputes and reversing course on a number of issues on which the parties previously agreed. All-Tag misinforms the Court and frames the discovery dispute as evolving from Checkpoint's alleged failure to comply with a prior Court order while ignoring its own obligations and placing the blame for manufactured discovery issues on Checkpoint.[1]   For the reasons set forth below, the Motion should be denied.

## I. ALL-TAG FAILS TO IDENTIFY WHAT "SPECIFIC INFORMATION" IT SEEKS TO "COMPEL" FROM CHECKPOINT.

All-Tag claims it seeks to compel "specific documents missing from the production" but does not identify the purported "missing" information. All-Tag does not dispute that Checkpoint already produced documents related to the Source Tagging Symposium and correspondence between Checkpoint and a third-party, TUV. Both "Source Tagging Conference" and "TUV" (along with numerous variations of the same) were among the 157 broad search terms All-Tag proposed that Checkpoint ran on ESI to collect and produce documents. Those terms, alone, resulted in over 14,000 document hits. In February 2019, All-Tag requested that Checkpoint follow up on a few specific documents that it identified. Ex. A-E. Checkpoint did so and made a supplemental production. In addition, All-Tag served a subpoena on TUV seeking the same documents. Ex. F. At this point, Checkpoint has done a more than reasonable search and All-Tag has not identified a single document missing from Checkpoint's production. Simply making an unsupported assertion that Checkpoint has "failed to produce numerous documents" without any explanation of what those missing documents purportedly are is plainly insufficient.

## II. ALL-TAG IS BELATEDLY RAISING A DISPUTE REGARDING DOCUMENTS FROM THE USS CASE WHICH THE PARTIES PREVIOUSLY RESOLVED.

Since May 24, 2018, Checkpoint has repeatedly objected to producing any information from the case *Universal Surveillance Corp. d/b/a Universal Surveillance Systems v. Checkpoint Systems, Inc.*, N.D. Ohio, Case No. 5:11-CV-01755-JRA (the "USS Case"), asserting that the production of information from unrelated litigation filed 8years ago involving different parties,

---

[1] All-Tag falsely states that Checkpoint missed the Court imposed deadline from All-Tag's first Motion to Compel. In July of 2018, Checkpoint produced over 2.4 million documents, and in December 2018, Checkpoint produced almost 1 million additional documents. Since December 2018, Checkpoint has produced 400,000 more documents in response to All-Tag's additional requests. To date, Checkpoint has produced over 6.5 million pages.

different claims, different markets, and different time periods is irrelevant. (Responses to Doc Requests.; correspondence). Exs. G-H. Simply because both matters allege "anti-competitive conduct" does not deem materials from that case relevant to this matter. Indeed, the Motion fails to explain how any material from the USS Case is relevant to All-Tag's claims or defenses in *this* case. Despite the irrelevance of the information from the USS case, in an attempt to reach a compromise and after numerous meet and confers in June 2018, the parties agreed that Checkpoint would produce certain limited information from the USS Case. All-Tag now completely ignores the parties' numerous prior discussions and agreements and seeks to re-raise arguments that were resolved nearly a year ago.

      A.    **Deposition Transcripts from the USS Case.**

All-Tag fails to advise the Court that Checkpoint objected to producing all of the deposition transcripts from the USS case nearly a year ago. Because there were over 100 depositions taken in the USS case, many of which involved third parties and testimony marked Highly Confidential under the Protective Order in the USS case, Checkpoint initially objected to producing any of the deposition transcripts. After numerous attempts to compromise without Court involvement, Checkpoint proposed in June 2018 that it produce deposition transcripts from the USS Case of those witnesses All-Tag plans to depose in this case. Ex. I. All-Tag did nothing with this proposal until February 2019 when it resurrected its request. Exs. A-D, J-K. To compromise on the issue yet again and avoid proliferating discovery, the parties stipulated that Checkpoint would produce deposition transcripts for deponents in the USS Case who were deposed in their individual capacity and whom Checkpoint identified in its May 18, 2018 Rule 26(a) disclosures in this case. Ex. L. The stipulation specifically excluded from production any Rule 30(b)(6) depositions taken in the USS Case and any other witnesses not identified in Checkpoint's Rule 26(a) disclosures. *Id*. All-Tag agreed and executed the stipulation but is now seeking to undo its agreement. All-Tag's motion seeking to compel Checkpoint to produce additional deposition transcripts should be denied.

      B.    **Expert Reports and Exhibits from the USS Case.**

As with the deposition transcripts, Checkpoint asserted its objections to producing expert reports and exhibits almost a year ago. Exs. G-I. Among Checkpoint's asserted objections were relevancy, admissibility, the burden imposed on Checkpoint as a result of the protective order in the USS Case, and the proliferation of discovery in this case. *Id*. All-Tag did nothing with

Checkpoint's objections for almost a year and until it requested the information again on April 11, 2019. Ex. M. All-Tag is trying to manufacture an 11th hour discovery issue that, if it was truly an issue, should have been resolved long ago.

Not only are the expert reports from the USS Case inadmissible in this case, they are irrelevant. *Mathis v. Carter*, 13 C 8024, 2017 WL 56631, at *4 (N.D. Ill. Jan. 5, 2017) (expert report prepared for another matter is inadmissible hearsay); *SSL Servs. LLC v. Citrix Sys. Inc.*, Civil Action No. 2-08-cv-158-TJW, 2010 WL 547478, at *3 (E.D. Tex. Feb. 10, 2010) (denying motion to compel seeking expert reports from a different lawsuit in which defendant also a party). All-Tag does not dispute the inadmissibility of the expert reports, but claims the reports are relevant because the Special Master in the USS Case deemed the expert reports helpful *to the USS Case.* This argument misses the point. That a special master in a different case found expert reports helpful to the case for which the reports were prepared does nothing to establish the relevance to *this* matter. The expert reports from the USS case consist of opinions and conclusions of experts, who will not be testifying in this case, about different facts, different claims, different time periods and different markets. Those reports bear no relevance to either party's claims or defenses in this action and are not proportional to the needs of this case. To the extent the experts in the USS Case relied on Checkpoint's documents to form their opinions, those documents have already been produced to All-Tag and the opinions concerning them are irrelevant and duplicative of the underlying factual information itself.

Furthermore, Checkpoint is barred by the Protective Order in the USS Case from producing the expert reports. Most expert reports were designated as Highly Confidential pursuant to the Protective Order in the USS Case because Confidential and Highly Confidential designated-documents and transcripts were engrained in the opinions and cited throughout the over half a dozen reports. Thus, to produce the reports, Checkpoint would first need relief from the Protective Order in the USS case, which would require consent from numerous third-parties that designated testimony and documents. Because the production of irrelevant, inadmissible expert reports from the USS Case would be duplicative and unduly burdensome, they are not proportional to the needs of this case and Checkpoint should not be required to produce them. *See, e.g.*, *SSL Servs.*, 2010 WL 547478, at *5 (burden on defendant associated with complying with protective order as a predicate to producing expert reports from matters involving different claims, damages and time frames significantly outweighed the minimal benefit to plaintiff).

All-Tag's statement that Checkpoint is required to obtain relief from the USS Protective Order is a blatant misrepresentation to the Court. In June 2018, after numerous meet and confers, Checkpoint agreed to provide an index of documents produced by USS and third parties pursuant to the USS Protective Order that were cited in expert reports or used as exhibits at various depositions so that All-Tag could take steps required under that Protective Order to obtain those documents. Ex. I. All-Tag confirmed, stating "we agree to review the index you plan to produce and we will seek the appropriate releases from USS and any third parties." Ex. N, p. 1. On August 2, 2018, after expending substantial time and effort, Checkpoint provided All-Tag with an index of over 800 exhibits. Ex. O. To Checkpoint's knowledge, All-Tag has not taken any steps to obtain a single exhibit. Indeed, during a teleconference on April 13, 2019, counsel for All-Tag, Mark Scott, stated that he "did not know" what steps, if any, were taken by All-Tag to obtain a single release. All-Tag's attempt to put the burden on Checkpoint after it agreed to undertake obtaining releases should not be condoned.

### III.  ALL-TAG ALREADY HAS THE FINANCIAL DATA IT SEEKS.

In January 2019 the parties agreed that 2012-2017 was the relevant time period for the exchange of financial data. All-Tag now claims that it needs financial information from Checkpoint from prior to 2012. Ex. P. At the same time it asks Checkpoint for this information, All-Tag acknowledges that it already has this information as part of Checkpoint's production of documents from the USS Case. All-Tag simply "cannot find the information" and is seeking an order compelling Checkpoint to "tell All-Tag where it is." Ex. M. All-Tag fails to tell the Court that Checkpoint agreed to produce documents from the USS case based on All-Tag's representation that Checkpoint could "simply reproduce[e] the same documents it already produced in the USS Litigation" and the "burden to review these documents *would be entirely on All-Tag*." Ex. Q (emphasis added). Now All-Tag is retracting its prior statement, upon which Checkpoint relied in producing the information, and seeking to place the burden and associated time and expense of reviewing the USS Case information entirely on Checkpoint. Since All-Tag already has the information it seeks it should not be permitted to retract its prior agreement and impose an additional burden on Checkpoint.

As All-Tag is well aware, the USS case ended years ago. The e-discovery database that housed the documents from the USS case was taken down when that case ended. The vast majority of the attorneys, paralegals, and staff that worked on that case are not working on this case (it was

handled by the former firm of two of Checkpoint's current attorneys). It is no simple matter to just ask Checkpoint to identify discrete documents in a document production of 2.4 million documents from a case that ended years ago. Simply put, the burden on Checkpoint to isolate documents for All-Tag is not proportional to the needs of the case, especially since All-Tag already has the very documents it seeks.

## IV. THE TIME FOR ALL-TAG TO MOVE TO COMPEL EXPIRED MONTHS AGO.

As demonstrated through the exhibits attached to this response, All-Tag was aware of Checkpoint's objections to the materials discussed in its Motion as early as May 24, 2018 (for the USS Case-related information) and March 8, 2019 (for the alleged "specific documents"). Under Local Rule 26.1(g)(1), All-Tag was required to resolve any discovery dispute by filing a motion within 30 days of the occurrence giving rise to the dispute. Instead of moving to compel Checkpoint's production of expert reports, deposition transcripts, and exhibits from the USS Case, All-Tag "reserved its right" or "tabled" the discovery disputes. *See*, *e.g.*, Ex. N. However, the Local Rules do not permit such an exception as a reason to delay filing a motion to compel as such would undermine the very purpose of Local Rule 26.1(g)(1). By failing to timely file its discovery motion within 30 days from the time the dispute arose, All-Tag has waived its arguments.

In a thinly veiled attempt to avoid its obligation to timely file its Motion, All-Tag states it could not have filed this Motion prior to Checkpoint's production of information demonstrating the relevancy of the information it seeks to compel. However, All-Tag's own statements acknowledge the existence of the discovery dispute by admitting that Checkpoint "insist[ed] all along that information from USS was irrelevant" and that documents produced in late 2018 established the relevancy of such information. Therefore, All-Tag has no excuse for bringing a belated Motion resurrecting old disputes. *See Arch Ins. Co. v. Vas Aero Srvs., LLC*, Case No. 16-CV-80749-MARRA/MATTHEWMAN, 2018 WL 1770553, at *5 (S.D. Fla. April 12, 2018) (delay in reviewing documents from prior production did not excuse the moving party from their obligation to file a discovery motion within 30 days). Accordingly, All-Tag's Motion should be denied in its entirety.[2]

---

[2] All-Tag also fails to include a memorandum of law in support of its Motion (Local Rule 7.1(a)(1)), fails to recite verbatim requests at issue, the responses, and the grounds for compelling (Local Rule 26.1(g)(2)), and fails to summarize the discovery dispute (D.E. 53). Importantly, All-Tag does not include all—or even *any*—materials relevant to the discovery dispute. *Id*.

5

## V. CONCLUSION.

Checkpoint respectfully requests the Court deny All-Tag's Motion, award Checkpoint its fees and costs under Fed. R. Civ. P. 37(a)(5)(B), and grant such other and further relief as justice may require.

Respectfully submitted,

Dated: April 26, 2019

/s/ *Gavin C. Gaukroger*
One of the attorneys for Checkpoint Systems, Inc.

| | |
|---|---|
| Gavin C. Gaukroger<br>Fla. Bar. No. 76489<br>Charles H. Lichtman<br>Fla. Bar No. 501050<br>BERGER SINGERMAN LLP<br>350 East Las Olas Boulevard, Suite 1000<br>Fort Lauderdale, Florida 33301<br>Tel: (954) 525-9900<br>Fax: (954) 523-2872<br>ggaukroger@bergersingerman.com<br>clichtman@bergersingerman.com<br>DRT@bergersingerman.com | Robert J. Palmersheim (*pro hac vice*)<br>Anand C. Mathew (*pro hac vice*)<br>Julie M. Mallen (*pro hac vice*)<br>PALMERSHEIM & MATHEW LLP<br>401 N. Franklin Street, Suite 4S<br>Chicago, Illinois 60654<br>Tel: (312) 319-1791<br>Fax: (312) 878-2890<br>rjp@thepmlawfirm.com<br>acm@thepmlawfirm.com<br>jmm@thepmlawfirm.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 26, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF which will generate and serve a Notice of Electronic Filing to the following:

Damon Suden
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
212-808-7800
Email: ahorvath@KelleyDrye.com
Email: dsuden@KelleyDrye.com

Julian Solotorovsky
Matthew C. Luzadder
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606
312-857-7070
Email: jsolotorovsky@KelleyDrye.com
Email: mluzadder@kelleydrye.com

William A. MacLeod
Kelley Drye & Warren LLP
3050 K Street NW, Suite 400
Washington, DC 20007
202-342-8811
Email: wmacleod@kelleydrye.com

Christopher W. Kammerer
John F. Mariani
Kammerer Mariani PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
561-990-1592
Email: ckammerer@kammerermariani.com
Email: jmariani@kammerermariani.com

John B. Williams
Williams Lopatto PLLC
1707 L Street NW, Suite 550
Washington, DC 20036
202-296-1611
Email: jbwilliams@williamslopatto.com

*/s/ Gavin C. Gaukroger*
Gavin C. Gaukroger, Esq.