# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALL-TAG CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17 CV 81261-WPD |
| v. | ) |
| | ) Judge William P. Dimitrouleas |
| CHECKPOINT SYSTEMS, INC., | ) Magistrate Judge William Matthewman |
| | ) |
| Defendant. | ) |

### ALL-TAG'S REPLY TO CHECKPOINT'S
### RESPONSE TO ALL-TAG'S MOTION TO COMPEL DISCOVERY

**I.      INTRODUCTION**

Checkpoint's Response to this Motion is simply the latest demonstration of the tactics that Checkpoint has used throughout this litigation to obstruct discovery. Concealing key witnesses, withholding responsive documents, denying the relevance of critical information, and producing partial responses (the deficiency of which become apparent only after review), Checkpoint has demonstrated it will not heed its basic obligations unless it faces an order of this Court. Checkpoint has persisted in these tactics, despite the Court's expectation that its last order would encourage cooperation.

**II.     CHECKPOINT HAS NOT PRODUCED CRITICAL DOCUMENTS**

Checkpoint's Response reiterates the misrepresentations of its motion to set an expert discovery schedule and exclude All-Tag's expert witnesses (D.E. 95). Then, Checkpoint told the Court that "All-Tag has not identified 'numerous gaps' or 'critical custodians' who had not been disclosed….What All-Tag has done is ask Checkpoint to follow up on individual documents for additional information—typical discovery issues which the parties are working through to reach a resolution." D.E. 95 at 3. By then, All-Tag had already identified at least two categories of missing documents (one relating to a meeting where competitors agreed to use Checkpoint's label, the other to Checkpoint's comparative testing and advertising of RF labels) and two undisclosed custodians who obviously had highly relevant information. *See* Exhibits A-C of Checkpoint's Response, D.E. 113-1 to 113-3. The documents are still missing and form the first part of this Motion to Compel. These include presentations and materials from the meetings of

competitors, and documents related to studies attributed to TUV. *Id.* Checkpoint's claim that "All-Tag has not identified a single document missing from Checkpoint's production" (Response, D.E. 113, at 1) is simply untrue and belied by the sealed exhibits Checkpoint submitted. Checkpoint's argument that because ESI yielded many documents, it need not produce other responsive documents (Response at 1) makes no sense. Documents and custodians routinely surface after initial ESI searches. As it should, the ESI search identified missing documents, and they remain missing after Checkpoint's "supplemental production."

That supplemental production included documents from two individuals—one of whom Checkpoint had failed to identify as a custodian of relevant information. All-Tag discovered these custodians after seeing references to them in numerous documents Checkpoint had produced. When All-Tag requested their documents, Checkpoint purportedly (and repeatedly) "fail[ed] to see" the need to produce the documents. *See* Exhibit K to Checkpoint's Response, D.E. 113-11, February 26th Discovery Letter to All-Tag. Only after weeks of foot dragging did Checkpoint recently produce the information. It then presented the non-disclosed custodian as a 30(b)(6) witness last week.

### III. ALL-TAG'S MOTION IS NOT UNTIMELY

Local Rule 26(g)(1) does not bar All-Tag's Motion, because All-Tag had good cause for believing the parties had an agreement in 2018 to advance discovery in exchange for deciding to revisit discussions over transcripts and expert reports at a later date if those documents became necessary. *See e.g., ADP, LLC v. Ultimate Software Group, Inc.,* 17-CV-61272, 2017 WL 7794274, at *1 (S.D. Fla. July 26, 2017) ("However, the Parties correspondence suggests that ADP could have reasonably believed that the Parties could work out Ultimate's objections without Court intervention. (DE 1-10). Thus, ADP had reasonable cause to delay filing its Motion while the Parties were conferring. Accordingly, I find Local Rule 26.1(g)(1) does not bar ADP's Motion to Compel."). Indeed, as discussed below, the parties *were* able to agree to produce some deposition transcripts.

### IV. THE MATERIALS FROM THE USS CASE ARE HIGHLY RELEVANT

#### A. The USS Case

Without any chagrin, Checkpoint continues to assert that the USS Case is irrelevant to this one. *USS*, according to Checkpoint, involved "different parties, different claims, different markets, and different time periods." Response at 1-2. Checkpoint fails to point out that USS

2

alleged exclusive contracts in the same products and services, involving the same customers and competitors, as All-Tag alleges here. *See e.g.*, Exhibit A, Transcript Excerpts from *USS* case, at pp. 35-38.

### A. Expert Reports

Checkpoint's assertion that the expert reports from the USS case are inadmissible and are thus irrelevant to discovery in this case is flatly contradicted by the Federal Rules. Rule 26(b)(1) provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Moreover, "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties. *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.,* Case No. 05-60860-CIV, 2007 WL 1526649, at *1 (S.D. Fla. May 22, 2007). Courts in this Circuit have found that prior expert reports are discoverable. *See e.g., ParkerVision, Inc. v. Qualcomm Inc*., 3:11-CV-719-J-37-TEM, 2013 WL 3771226, at *1 (M.D. Fla. July 17, 2013) ("Under a broad construction of ParkerVision's request for prior expert reports, prior expert deposition transcripts and prior trial testimony transcripts, however, the Court finds these discovery materials fall within the ambit of Rule 26(b)(1) for general fact discovery."). The case Checkpoint cites offers no support for its argument that it may withhold relevant information that only it possesses. In *SSL Services, LLC v. Citrix Sys., Inc*., CIV.A. 2-08-CV-158-T, 2010 WL 547478, at *3 (E.D. Tex. Feb. 10, 2010), the Court noted that "SSL already has the relevant underlying data and the analyses will be of little value because they come from different experts, relate to different patents, different financial data, and different plaintiffs." The information Checkpoint refuses to provide here includes the same transactions, the same contracts, and the same anti-competitive effects. The expert reports would be highly valuable, just as the Special Master found them likely helpful to a jury considering the allegations of monopolization in that case. *See* D.E. 501 of *USS* Case, at 56.

There is nothing in the *USS* protective order prohibiting Checkpoint from producing the expert reports, (*see* Exhibit B, Protective Order from USS Case), nor any requirement that All-Tag seek releases from other parties before obtaining the report. The obligation is Checkpoint's to secure releases, *if any is necessary.* Checkpoint's proposal that All-Tag seek releases for over a hundred transcripts and various reports, without any description of where the materials are

3

cited, is simply an effort to shift and multiply discovery costs. All-Tag undertook the effort for approximately ninety percent of the citations, as the overwhelming majority of citations refer to material from USS. That party has agreed to allow All-Tag to review its materials. *See* Exhibit C, Correspondence with USS's Counsel. All-Tag cannot identify whether or which other releases might be necessary. Only Checkpoint counsel, with report in hand, can ascertain that. Instead, Checkpoint has insisted that All-Tag do so, and even then, Checkpoint would not commit to producing the reports.

### B. Financial Data

Nowhere in its response does Checkpoint dispute that revenues and costs booked before 2012 were not settled until transactions that occurred in or after 2012. It is impossible to account for transactions in 2012 and later without all the financial data that pertains to those transactions. *See* Exhibit A at pp. 35-38 and 250-259. Nonetheless, Checkpoint refuses to produce the data. As an excuse, Checkpoint claims that the data reside at the previous firm of the attorneys representing it in this action. Messrs. Palmersheim and Matthew, and their prior firm, Honigman, were attorneys of record for the first 9 months of this case. After their move to their new firm, counsel claim that they cannot retrieve information that they may not have brought with them. They do not deny existence the data. They simply refuse to locate it. Their final position is that the data has been produced, but counsel refuse to provide All-Tag with Bates numbers that would identify it. *See* Exhibit M to Checkpoint's Response, D.E. 113-13, email correspondence with Checkpoint's Counsel. Without any more guidance from Checkpoint, All-Tag counsel has continued to look for the data. We cannot find it. The needless expense and delay that Checkpoint has imposed is causing serious prejudice to All-Tag.

### C. Deposition Transcripts and Exhibits

Although Checkpoint had no grounds to do so, it resisted producing any deposition transcripts of witnesses in the USS case. It grudgingly relented to produce a handful of individual depositions, but continued to refuse to produce any depositions by corporate representatives. Concurrently, Checkpoint refused to identify to All-Tag who would testify as a 30(b)(6) witness in this case. All-Tag discovered who the witness would be when the deposition began last week, and it was the same witness who had testified as a corporate repreentative in USS. Checkpoint had produced the witness's transcript from his deposition as an individual but withheld the transcript of his 30(b)(6) deposition. All-Tag counsel had to examine Checkpoint's

4

corporatate representative without the information that would allow All-Tag to compare Checkpoint's answers in this case to the answers the corporation had given before. There is no question that issues germane to this case came up in the last 30(b)(6) deposition; the transcript (filed under seal) makes that clear. See Exhibit A at pp. 8-9, 37-38, 41.

Checkpoint continues to refuse to produce the 30(b)(6) transcript, and refuses to identify or produce other depositions that have information responsive to All-Tag's information requests. This hide-the-ball is typical of CP's entire discovery process. For example, since the middle of last year, All-Tag has requested information about contracts with retailers – the terms of which are the gravamen of the case. Checkpoint stated that it only had six contracts. All-Tag has found over a dozen more since then. With the clock running down, All-Tag continues to search for more documents and agreements, more data, and other information that resides in files that Checkpoint could quickly and easily produce. It simply refuses.

## V.     CONCLUSION

Since Checkpoint came to this Court seeking to exclude All-Tag's experts, it has stonewalled All-Tag's efforts to obtain the information its experts need to prepare their testimony, and it has deprived All-Tag of discovery of key facts at issue in this case. All-Tag respectfully requests the entry of the proposed order.

Dated:  April 30, 2019                                  Respectfully submitted,

By:  */s/ Christopher Kammerer*
         Christopher Kammerer

Christopher William Kammerer
John F. Mariani
KAMMERER MARIANI PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
(561)-990-1592
ckammerer@kammerermariani.com
jmariani@kammerermariani.com

William MacLeod (*pro hac vice*)
Julian Solotorovsky (*pro hac vice*)
KELLEY DRYE & WARREN LLP
333 West Wacker Drive

5

Chicago, IL 60606
(312)-857-7070
jsolotorovsky@kelleydrye.com
wmacleod@kelleydrye.com

Damon Suden (*pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212)-808-7800
dsuden@KelleyDrye.com

John B. Williams *(pro hac vice)*
WILLIAMS LOPATTO PLLC
1707 L Street, NW Suite 550
Washington, DC 20036
(202) 296-1611
jbwilliams@williamslopatto.com
*Attorneys for Plaintiff All-Tag Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of April 2019, a true and correct copy of the foregoing was served upon the following counsel of record for Defendant via PACER:

>Charles Howard Lichtman
>Gavin Gaukroger
>BERGER SINGERMAN
>Las Olas Centre II
>350 E Las Olas Boulevard
>Suite 1000
>Fort Lauderdale, FL 33301
>954-525-9900
>Fax: 523-2872
>clichtman@bergersingerman.com
>ggaukroger@bergersingerman.com

>Robert J. Palmersheim
>Anand C. Mathew
>Julie M. Mallen
>PALMERSHEIM & MATHEW
>401 N. FRANKLIN STREET, SUITE 4S
>CHICAGO, IL 60654
>312-319-1791
>acm@thepmlawfirm.com
>rjp@thepmlawfirm.com
>jmm@thepmlawfirm.com

>By: */s/ Christopher Kammerer*
>     Christopher Kammerer