UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-81261-CIV-DIMITROULEAS/MATTHEWMAN

ALL-TAG CORP.,

       Plaintiff,

   v.

CHECKPOINT SYSTEMS, INC.

       Defendant.

_____/

## JOINT NOTICE

Pursuant to the Court's April 15, 2019 Order [D.E. 109], Checkpoint Systems, Inc. ("Checkpoint") and Best Security Acquisition, LLC ("Best Security") submit this Joint Notice advising the Court on whether the discovery dispute raised in Checkpoint's Motion to Compel Non-Party Best Security Acquisition, LLC to Produce All Documents Responsive to Subpoena and Incorporated Memorandum of Law [D.E. 97] (the "Motion") has been resolved, the specific issues that remain for determination, and the position of each party on the specific disputes.

**I.      THE PARTIES' ATTEMPTS TO MEET AND CONFER**

Since the filing of Checkpoint's Motion, the parties conferred via telephone conference on April 15, 2019.   At that time, Best Security agreed to revisit its objection to one of Checkpoint's requests. On that issue, Best Security informed Checkpoint via email, dated May 1, 2019, that it would produce the document requested.  The parties have been unable to reach an agreement as to the remaining issues raised by Checkpoint's Motion.

**II.     RESOLVED ISSUES**

Best Security agreed to produce a document establishing that they install and service systems nationwide, to the extent that such document exists, in response to Request No 5.

**III.    UNRESOLVED ISSUES**

    **A.      Documents Responsive to Checkpoint's Subpoena to Best Security**

Checkpoint's Motion seeks to compel Best Security, a competitor, to produce documents responsive to a subpoena, which seeks limited information related to Best Security's sales and servicing of RF Electric Article Surveillance ("EAS") systems and labels, including the entities

to whom Best Security sold EAS labels and systems, the date of the sale, the quantities of EAS systems and labels sold, and the price of the EAS systems and labels, and any related agreements.  As set forth in the Motion, Best Security responded to the subpoena objecting to it in its entirety.

### Checkpoint's Current Position

Checkpoint has repeatedly explained the relevancy of the information sought by the subpoena and advised Best Security of the protections afforded by the Stipulated Protective Order entered in this matter.  [D.E. 55]  As a direct competitor of Checkpoint, Best Security's information relating to its sales and servicing of EAS systems and sales of labels is directly relevant to Checkpoint's defense of claims against it that Checkpoint forecloses competitors from selling various EAS products to the Relevant Market.  To the extent Best Security is concerned regarding the dissemination of any potentially confidential information, the terms of the Stipulated Protective Order permit Best Security to designate its production as "Highly Confidential," which would limit disclosure of the information to Attorneys' Eyes Only and would protect against any information being disclosed directly to Checkpoint or All-Tag.  *See id.* at 1-2.  Best Security has not responded to Checkpoint or otherwise proposed any terms under which it would produce any of the requested information.

Best Security's proposed compromise that it should not have to disclose pricing information or disclose its customers and instead provide general descriptions is inadequate for several reasons.  First, as noted above, it ignores the very purpose of the Stipulated Protective Order, which was entered so that Checkpoint could obtain from third parties—including competitors—evidence it needs to defend this case.  Second, whether a retailer (including customers of Best Security) is in a particular market or markets has been, and will be, a disputed issue in this lawsuit and something that cannot be resolved by Best Security's proposal that it simply identify which of All-Tag's alleged markets a retailer fits in, such as "seller of small items," a "grocery store," a "drug store," or some other type of retailer.  The Court need look no further than its nearest Walmart, which some consider the world's largest grocery store chain, or Target, which is one of the largest drug purveyors in the United States, to understand why the proposal from Best Security is inadequate and unworkable.  And, no doubt, both Walmart and Target sell "small items."  Lastly, Best Security's proposal deprives Checkpoint of evidence it can use to rebut All-Tag's assertion that Checkpoint's alleged conduct has **foreclosed EAS sales**

**to specific customers and resulted in an antitrust injury** (e.g., reduced output and higher prices).

### Best Security's Position

In November 2018, Checkpoint served its subpoena on Best Security seeking essentially all of Best Security's sales records, pricing, and customer lists. On December 21, 2018, counsel for Best Security and Checkpoint held a conference call—the first of many—to discuss possible ways to limit the scope of the subpoena to such information that Checkpoint actually requires. During this call, counsel for Best Security learned that All-Tag was in the process of serving its own subpoena demanding the same documents.

Since that time, Best Security has repeatedly tried to find a compromise that reasonably limited the scope of production and that is agreeable to all parties. In or around February 2019, counsels for All-Tag and Best Security came up with a possible solution: Best Security would provide their annual aggregate sales volume from 2010 to the present for five specified product categories, across four specified markets. The products categories are: (i) RF labels, (ii) hard tags, (iii) CCTV, (iv) EAS servicing, and (v) towers and deactivators. The markets are: (i) retailers with RF EAS systems installed, (ii) drug stores, (iii) grocery stores, and (iv) stores that sell small items such as books, CDs, health and beauty items.

Checkpoint rejected this solution, claiming that the specified categories were ambiguous. While Best Security was more than willing to work with both sides to craft a reasonable definition for any ambiguous terms, Checkpoint refused and insisted that Best Security make a full production of the documents requested. At that point, the parties were at an impasse, as Checkpoint was unwilling to make any compromise on the scope of its demands. Consequently, on March 5, 2019, Best Security served its objections to the subpoena (the parties had agreed to extend the time to respond while discussion were ongoing), and Checkpoint's motion to compel followed.

Best Security's position is that Checkpoint's subpoena is unnecessarily overbroad and seeks extensive confidential business information. Best Security requests that the Court deny Checkpoint's requested relief and implement the solution previously offered by Best Security and All-Tag.

Dated: May 2, 2019

  /s/ Eric Horbey                  
*One of the attorneys for Non-Party Best*
*Security Acquisition, LLC*

Lazer, Aptheker, Rosella & Yedid, P.C.
Eric Horbey
515 N. Flagler Drive
Suite 400
West Palm Beach, Florida 33401
horbey@larypc.com

Respectfully submitted,

*/s/ Robert J. Palmersheim*    
*One of the attorneys for Defendant*
*Checkpoint Systems, Inc.*

BERGER SINGERMAN LLP
Gavin C. Gaukroger
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
954-525-9900
ggaukroger@bergersingerman.com

PALMERSHEIM & MATHEW LLP
Robert J. Palmersheim (*Pro Hac Vice*)
Anand C. Mathew  (*Pro Hac Vice*)
Julie M. Mallen  (*Pro Hac Vice*)
401 N. Franklin Street, Suite 4S
Chicago, Illinois 60654
312-319-1791
rjp@thepmlawfirm.com
acm@thepmlawfirm.com
jmm@thepmlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of May 2019, a true and correct copy of the

foregoing Joint Notice was served via CM/ECF on counsel of record in this case and a copy was

sent via e-mail to Eric Horbey, Lazer, Aptheker, Rosella & Yedid, P.C. at horbey@larypc.com,

counsel for Non-Party Best Security Acquisitions, LLC.

/s/ _Gavin C. Gaukroger_____
                    Gavin C. Gaukroger, Esq.