**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ALL-TAG CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17 CV 81261-WPD |
| v. | ) |
| | ) Judge William P. Dimitrouleas |
| CHECKPOINT SYSTEMS, INC., | ) Magistrate Judge William Matthewman |
| | ) |
| Defendant. | ) |

**ALL-TAG'S RESPONSE TO DEFENDANT'S MOTION TO ENFORCE PROTECTIVE ORDER AND IMPOSE SANCTIONS FOR VIOLATION OF PROTECTIVE ORDER**

**I.      INTRODUCTION**

Checkpoint's Motion to exclude ▉▉▉▉▉▉▉ as an expert (and to impose sanctions) is based upon a singular misstatement regarding the terms of the Protective Order. Nowhere in the Protective Order is there any requirement that confidential information can only be disclosed to individuals who are "independent" of the parties in the case. The essential restriction is that the information may be used only for the purposes of the litigation. The Protective Order focuses on the use of the information, and not the affiliation of the recipient of the information.

Nor would it make sense to try to read any "independence" requirement into the terms of the Protective Order, as Checkpoint seems to be asserting here. Many experts, particularly those associated with the parties, cannot be considered independent—and any such requirement—in any litigation, would certainly give rise to continued debates over the expert witness' affiliations. The "independence" *vel non* of an expert is an appropriate subject for cross examination at trial. It is hardly the basis of a disqualification motion.

Three other points should be noted. First, well before this motion was filed, on March 18, 2019, counsel for Checkpoint was informed that All-Tag expected to ▉▉▉▉▉▉▉ as an expert witness, and suggested that Checkpoint's attorney may wish to postpone scheduling his deposition as a fact witness until he received ▉▉▉▉▉▉ expert report. Counsel for Checkpoint raised absolutely no objection to that disclosure—and failed to raise any issue until just recently. Since the initial disclosure, ▉▉▉▉▉▉ has worked on this case extensively, and it is too late—and extremely unfair—to raise this issue now. And Checkpoint's conduct in

sitting on this information for weeks certainly belies its breathless cry for disqualification and contempt sanctions.

Second, Checkpoint argues that ▇▇▇▇▇ has some sort of continuing arrangement with All-Tag and may be actively competing against Checkpoint. There is no basis for this assertion—and this fact was made clear at the deposition of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Third, this is not the first time Checkpoint has used this type of tactic to impede All-Tag's ability to prosecute its case. Last year, Checkpoint attempted a similar ploy, seeking to disqualify one of All-Tag's counsel and effectively blocking him from accessing protected materials for months. The Checkpoint assertion in that episode was that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ despite his obligations under the Protective Order (not to mention his obligations as an officer of the court), he would almost certainly violate his oath and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. This case was sidelined while Checkpoint demanded to review documents showing whether confidential information had been shared and whether counsel had ever been involved in any "competitive decision-making." When that yielded a dry hole for Checkpoint, it then demanded sworn assurances ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. While this demand was clearly unnecessary, and intended to harass, counsel agreed to the demanded declaration—simply to get the case moving without burdening the Court.

Unfortunately, the same type of issue is now before the Court. There is no basis for it. There has been no violation of the Protective Order, nor will there be.

## II. THE PROTECTIVE ORDER DOES NOT REQUIRE AN EXPERT TO BE "INDEPENDENT"

The Protective Order in this Case allows "[o]utside experts, consultants, or investigators (collectively, referred to hereinafter as 'experts') who are engaged for the purpose of this action by the party receiving such information" to have access to documents marked as either Confidential or Highly Confidential. D.E. 127-1 at 4. Nowhere in the Protective Order does it define who may, or may not, be considered as an expert or a consultant. Nowhere does it require

independence or unemployment in the industry. Nor does it require the parties to disclose experts before the report deadline. The Protective Order allows employees of the parties to view Confidential, but not Highly Confidential, information. *See* D.E. 127-1 at 4.[1] Had Checkpoint wanted to add further limitations to the Protective Order, it could have done so when it agreed to this Order, the same protective order that governed its previous antitrust and false advertising case. (*See USS* Protective Order, D.E. 117-2). Realizing this, Checkpoint is apparently trying to change ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—calling him an "insider." But he is not. He is a former sales agent.

**III.   THE TESTIMONY OF ▮▮▮▮▮▮▮ CONFIRMS THAT ▮▮▮▮▮▮▮ IS NOT AN ALL-TAG EMPLOYEE "**

Between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Contrary to Checkpoint's characterization of ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ does not "play[] an integral role in All-Tag's business" and is not "actively involved in selling RF labels on All-Tag's behalf." D.E. 127 at 4. Rather, ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In the passages Checkpoint omits from its Motion, ▮▮▮▮▮▮ makes this history clear:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮

See Exhibit A at pages 280-281.

Lest there be any doubt, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ several more times:

---

[1] All-Tag produced the majority of its documents as Confidential, which allows Checkpoint employees to view those documents. Checkpoint, however, produced virtually every document (including those over a decade old) as Highly Confidential. Thus, but for a handful of recently de-designated documents relating to Checkpoint's purportedly independent TUV studies, no All-Tag employee has ever viewed documents produced from Checkpoint.

3

██████████████████████████████████████████████████████
████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████

See Exhibit A at pages 339-340; see also *id.* at 341-342.

The only thing "troubling" about ████████████████████████████████ ████████████████████████████████ is how Checkpoint misrepresents them to this Court. Nonetheless, ██████████ worn testimony makes clear that ██████████ is not an "employee" as contemplated in the Protective Order.

**IV.     THE ONE CASE CHECKPOINT RELIES UPON IS INAPPOSITE**

Checkpoint cites one decision for the proposition that ██████████ cannot be an expert in this case, *Biovail Laboratories Intern. SRL v. Abrika, LLLP,* 2007 WL 788849, at *1 (S.D. Fla. Mar. 14, 2007, but Checkpoint does not discuss the distinction that renders it inapplicable. The Protective Order in *Biovail* clearly declares who may not be an expert. "Paragraph 12 of the Protective Order defines an expert or consultant as 'a person who is neither an employee of a party nor anticipated to become an employee in the near future, and who is retained or employed as a bona fide consultant or expert for purposes of this litigation, whether full or part time, by or at the direction of counsel for a party.'" *Id*. No such language exists here.

Nor does Checkpoint explain why it believes ██████████ would not keep the Checkpoint materials in confidence. "The burden is on the party opposing disclosure to show why the risk of disclosure of its confidential information outweighs the risk of harm to the other party's ability to prosecute its case." *P. Marine Propellers, Inc. v. Wartsila Def., Inc*., 17-CV-555 BEN (NLS), 2018 WL 2059512, at *3 (S.D. Cal. May 3, 2018). Checkpoint ignores this and offers nothing but speculation - implausible and contradicted speculation - to support its burden.

**V.     CHECKPOINT DID NOT PREVIOUSLY OBJECT TO ██████████ AS AN EXPERT**

On March 18th, Counsel for All-Tag informed Checkpoint that "██████████ we expect we will be designating him as an expert so you might want to wait [to take his deposition] til you

4

get his report. Your call." Exhibit F to Checkpoint's Motion. Over a month later, All-Tag's counsel brought ▬▬▬ to attend Checkpoint's 30(b)(6) deposition. The topics designated for that deposition included several on which he plans to opine. Checkpoint refused to let ▬▬▬ into the room, wasting ▬▬▬ and counsel's time. Only then did Checkpoint raise this attack.

## VI. CHECKPOINT HAS ALREADY ATTEMPTED THIS DISQUALIFICATION TACTIC

For three months last fall, Checkpoint wasted time and obstructed discovery with a similar effort, attempting to disqualify ▬▬▬ one of the attorneys representing All-Tag. *See* Exhibits B-F. Then, Checkpoint argued that ▬▬▬ from participating in this case, purportedly because "disclosure of company trade secret and proprietary information to a competitor can cause irreparable damage. Protecting such Highly Confidential information from disclosure is critical to a company's viability." *See* Exhibit E, October 19th Letter from Checkpoint. During the pendency of the dispute, Checkpoint insisted that ▬▬▬ not be permitted to view any highly confidential materials, and propounded needless and disproportionate discovery requests on the topic. *See* Exhibit C, September 7th letter. Three months later, after All-Tag produced documents relating to ▬▬▬ again promised not to disclose confidential information to All-Tag, the matter was finally resolved.

## VII. SANCTIONS ARE NOT APPROPRIATE WHEN ALL-TAG DID NOT VIOLATE THE PROTECTIVE ORDER

There was no violation of any Protective Order and no basis for any allegation of contempt.

## VIII. CONCLUSION

As this Court observed recently in connection with another one of Checkpoint's motions, this motion is also "much ado about nothing." D.E. 104 at 4. Unfortunately, every distraction impedes the progress of this case, adds expense to the litigation, and clutters the Court's docket. Checkpoint's demand for sanctions is especially ironic. The only conduct warranting sanctions involves Checkpoint's continued efforts to obstruct the conduct of this case.

Dated: May 10, 2019                                             Respectfully submitted,



Christopher William Kammerer
John F. Mariani
KAMMERER MARIANI PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
(561)-990-1592
ckammerer@kammerermariani.com
jmariani@kammerermariani.com

William MacLeod (*pro hac vice*)
Julian Solotorovsky (*pro hac vice*)
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
(312)-857-7070
jsolotorovsky@kelleydrye.com
wmacleod@kelleydrye.com

Damon Suden (*pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212)-808-7800
dsuden@KelleyDrye.com

John B. Williams *(pro hac vice)*
WILLIAMS LOPATTO PLLC
1707 L Street, NW Suite 550
Washington, DC 20036
(202) 296-1611
jbwilliams@williamslopatto.com
*Attorneys for Plaintiff All-Tag Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of May, 2019, a true and correct copy of the foregoing was served upon the following counsel of record for Defendant via PACER:

> Charles Howard Lichtman
> Gavin Gaukroger
> BERGER SINGERMAN
> Las Olas Centre II
> 350 E Las Olas Boulevard
> Suite 1000
> Fort Lauderdale, FL 33301
> 954-525-9900
> Fax: 523-2872
> clichtman@bergersingerman.com
> ggaukroger@bergersingerman.com
>
> Robert J. Palmersheim
> Anand C. Mathew
> Julie M. Mallen
> PALMERSHEIM & MATHEW
> 401 N. FRANKLIN STREET, SUITE 4S
> CHICAGO, IL 60654
> 312-319-1791
> acm@thepmlawfirm.com
> rjp@thepmlawfirm.com
> jmm@thepmlawfirm.com
>
> By: */s/ Christopher Kammerer*
>     Christopher Kammerer