**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ALL-TAG CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17 CV 81261-WPD |
| v. | ) |
| | ) Judge William P. Dimitrouleas |
| CHECKPOINT SYSTEMS, INC., | ) |
| | ) Magistrate Judge William Matthewman |
| Defendant. | ) |
| | ) |

**CHECKPOINT'S REPLY TO ITS MOTION TO ENFORCE PROTECTIVE**
**ORDER AND IMPOSE SANCTIONS FOR VIOLATION OF PROTECTIVE ORDER**

All-Tag's response is a poor justification for its willful and continuing violations of the Protective Order.  The Protective Order restricts Highly Confidential information to only **"outside"** experts and consultants and specifically precludes disclosure to the parties' employees and agents. All-Tag induced Checkpoint to produce its highly sensitive business information by agreeing to the terms of the Protective Order and then proceeded to provide Checkpoint's information directly to an All-Tag sales agent who continues to be paid by All-Tag as such.  ▆▆▆▆ is not "outside" as required by the Protective Order.  Indeed, All-Tag's response fails to assert—even once—that ▆▆▆▆ is an "outside" expert, because it has no basis to credibly to do so.  ▆▆▆▆ is a ▆▆ ▆▆ that provides continued business and marketing support to All-Tag's ▆▆.

To get around the fact that ▆▆▆▆ is not an "outside" expert, All-Tag claims that the Protective Order does not focus on the "affiliation" of the recipient of Highly Confidential information but rather the use of the information.  This assertion is flat out wrong.  The plain language of the Protective Order limits disclosure of confidential information so that the information does not fall into a competitors' hands.  Yet, All-Tag continues to brazenly share Checkpoint's proprietary sensitive information with ▆▆▆▆--an All-Tag sales agent who is still on All-Tag's payroll, is and was acting as a sales and marketing consultant for All-Tag, had access to the information while employed at another major competitor, and is now able to use his knowledge of the Highly Confidential information in his endeavors as the ▆▆▆▆ for yet another competitor.  Under All-Tag's twisted interpretation, the Protective Order is not worth the paper it's printed on.  The Court needs to enforce the Protective Order to protect Checkpoint and other third parties from irreparable economic injury resulting from All-Tag's continued and willful violation of the Protective Order.

## I.  CHECKPOINT PROVIDED UNREBUTTED EVIDENCE OF ▆▆▆▆ STATUS AS AN INSIDE AGENT OF ALL-TAG.

Checkpoint presented testimony and documents evidencing ▆▆▆▆ past, present, and indefinite future relationship with All-Tag in which ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆  *See* Exhibit 1 to Decl. of J. Mallen. Outside of a single, self-serving statement that ▆▆▆▆ is not an insider, All-Tag does not rebut any of the evidence



Checkpoint presented to demonstrate ███████ active involvement as an agent of All-Tag, nor did it provide an affidavit from ██████ denying Checkpoint's supported assertions. Specifically, there is no denial by ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

Even though All-Tag acknowledges that ███████ is still receiving payment from All-Tag, it claims that those payments are based on a "gentlemen's agreement" for ████████ past sales prior to joining ██████. This nonsensical explanation does not address—and completely ignores— the documents presented by Checkpoint that demonstrate, for example, ████████████████

████████████████████████████████████████████

███████████████████████████████. *See* Mtn., Ex. I-N. Indeed, the documents ████████████

████████████████████████████████████████████

████████*s*. Because All-Tag has not rebutted ████████ active and continuing role with respect to All-Tag and other competitors, he cannot be permitted continued and unlimited access to Checkpoint's Highly Confidential information.

## II. DISCLOSURE OF HIGHLY CONFIDENTIAL INFORMATION TO ████████ POSES A SIGNIFICANT RISK OF INADVERTENT MISUSE OR DISCLOSURE OF THE INFORMATION.

Even if All-Tag's disclosure of Highly Confidential information to ████████ is not a direct violation of the Protective Order, ████████ should be precluded from access to such information due to the significant risk of inadvertent misuse or disclosure of the information. Relying on the terms of the Protective Order, Checkpoint produced documents of utmost commercial sensitivity including, but not limited to, contracts, pricing information, sales information, strategic information, and research and development, believing this information was protected from disclosure pursuant to the Protective Order. Disclosure of any single category of this information to a competitor puts Checkpoint at a competitive disadvantage, and the irreparable harm Checkpoint faces by disclosure of *all* its information to a competitor is unfathomable.

All-Tag makes a conclusory statement that ███████ is not in a position to use confidential information received from All-Tag, but this assertion is inaccurate.  Disclosure of information to ███████ does not limit disclosure of Highly Confidential information but instead places it at significant risk of inadvertent misuse or disclosure to others.  In addition to ███████ continuing active relationship with All-Tag and his role with █████, Checkpoint recently learned that ███████ is now ██████████████████ for yet another Checkpoint competitor, ███████████████████ ███████.  *See* Exhibits 2-3 to Decl. of J. Mallen.  ███████ relationships with various competitors in the EAS market present the exact scenario the Protective Order was entered to avoid – widespread dissemination of Highly Confidential information intended to be "Attorneys' Eyes Only."  Protective Order, Ex. A to Motion, ¶ 7.

Checkpoint and other competitors face serious economic injury due to the disclosure of their Highly Confidential information to ███████ a sales agent and consultant for All-Tag and now the ██████████████████.  ███████ cannot erase from his mind the highly sensitive and confidential trade secrets and other proprietary information of competitors. Courts have recognized that the risk is high that personnel would be unable to separate any application of the information it learned when acting as an expert from the future real-world application of the information. *See*, *e.g.*, *U.S. Gypsum Co. v. Lafarge North America, Inc.*, No. 03 C 6027, 2004 WL 816770, at *1 (N.D. Ill. Mar. 2, 2004) (danger of disclosure of confidential information to employee or consultant of competitor because person would be unable "to segregate any knowledge gained in this case from future analyses provided in his role as a consultant."); *Digital Equipment Corp. v. Micro Technology, Inc.*, 142 F.R.D. 488, 492 (D. Colo. 1992) (expert could not have access to confidential information until he gave up his on-going consulting relationship with the defendant because, once disclosed, confidential information would "become part of [the expert's] general acquired knowledge, which cannot be 'unlearned' or utilized only on a selective basis."); *BASF Corp. v. U.S.*, 321 F. Supp. 2d 1373, 1381 (U.S.C.I.T. 2004) (denying expert access to confidential information because expert had an on-going business relationship with plaintiff's direct competitor and expert could not be expected to unlearn this information).  Even if ███████ himself is not directly responsible for All-Tag's competitive decision making, the evidence presented by Checkpoint demonstrates that he reports directly to All-Tag's ███████████████, warranting the preclusion of ███████ access to the information.

Because ███████ currently provides services to at least two of Checkpoint's competitors (and was recently employed by a third), the risk of disclosure is significant and O███████ should be denied access to the Highly Confidential information of Checkpoint and other non-party competitors. *See*, *e.g.*, *Sensormatic Elecs. Corp. v. TAG Co. U.S. LLC*, Civil Action No. 4:07-mc-181-TLW-TER, 2008 WL 217113, at *4 (D.S.C. Jan. 24, 2008) (risk of inadvertent disclosure of trade secrets by outside expert, who provided professional services to competitors, was too great to permit disclosure of highly confidential information).

**III. ONCE ALL-TAG CONFIRMED ITS DISCLOSURE OF HIGHLY CONFIDENTIAL INFORMATION TO ███████ CHECKPOINT ACTED EXPEDITIOUSLY TO PROTECT ITS INTERESTS.**

All-Tag tries to shift the blame to Checkpoint by claiming that it unreasonably delayed seeking relief from this Court and that All-Tag has been prejudiced. Neither of these arguments has merit. All-Tag stated in March 2019, that it "might" retain ███████ as an expert but never stated he was retained until April 24, 2019 and did not disclose he had been shown Highly Confidential information until April, 2019. And, to date, All-Tag has never disclosed pursuant to Rule 26(a)(2) for what purpose ███████ is a purported expert, whether he will testify at trial, and the nature of his opinions—thus calling into question whether ███████ even needs access to Checkpoint's Highly Confidential documents in the first place. Checkpoint filed its motion to enforce the Protective Order shortly after learning that All-Tag had violated it. There is simply no basis to conclude that Checkpoint delayed in filing this motion or did so for some sort of strategic advantage. On April 25, 2019, Checkpoint became aware that All-Tag was disclosing Highly Confidential information to ███████, at which time Checkpoint moved quickly to bring the issue to the Court's attention.

Even though All-Tag asserts that Checkpoint was aware of its retention of ███████ prior to seeking relief from the Court, this point—besides being inaccurate—is immaterial as All-Tag has not demonstrated how Checkpoint's purported delay in bringing this Motion has prejudiced All-Tag. If All-Tag suffered any prejudice, it was of its own making in failing to confirm that ███████ was, in fact, retained as an expert. Had All-Tag properly advised Checkpoint of ███████ involvement in February (when O███████ acknowledged the Protective Order) or March (when All-Tag casually mentioned ███████ potential role), Checkpoint would have immediately taken any necessary steps at that time to ensure its Highly Confidential information was not disclosed to ███████. Nor does All-Tag offer any explanation as to how the timing of the Motion

somehow excuses All-Tag's willful and continuing violations of the Protective Order. Accordingly, Checkpoint did not "sit[ ] on" any information and moved to enforce the Protective Order and preclude the continued dissemination of Highly Confidential information to ██████ as soon as it became aware of All-Tag's willful violation of the Protective Order.

## IV.   ALL-TAG'S ARGUMENT REGARDING DISCLOSURE TO ALL-TAG'S COUNSEL IS IRRELEVANT.

All-Tag's reference to a prior dispute between the parties regarding ████████, one of All-Tag's attorneys in this case, has no bearing on the current dispute.  ████████ is an All-Tag ████████ so Checkpoint had concerns about his access to Highly Confidential information. Given ████████ ethical obligations as an attorney and potential ramifications for violations of the Protective Order, Checkpoint relied on his sworn statement and acknowledgement of the Protective Order in agreeing to permit him access to Highly Confidential information.  *See, e.g.*, *Meridian Enterprises Corp. v. Bank of Am. Corp.*, No. 4:06 CV 01117 RWS, 2008 WL 474326, at*2-3 (E.D. Mo. Feb. 15, 2018) (acknowledging attorney's ethical obligations to abide by terms of protective order).  ████████████████████████, ████████ has no such obligations. Moreover, unlike ████████ ████████ is actively involved in the sales and marketing of competitive EAS products on behalf of All-Tag as well as at least one other competitor, which is one of the reasons Checkpoint identified ██████ as a fact witness long before All-Tag raised the possibility of retaining him as an expert witness.

## CONCLUSION

WHEREFORE, Defendant Checkpoint Systems, Inc. respectfully requests that the Court grant its Motion to Enforce the Protective Order, enter an order with the relief as set forth by Checkpoint in its Motion, and for such further relief as this Court deems just and proper.  In the alternative, should this Court deny Checkpoint's Motion, Checkpoint respectfully requests that the Court modify the terms of the Protective Order to specifically preclude disclosure of Highly Confidential information to any non-independent employee or agent of any party or competitor so as to avoid continuing irreparable harm to Checkpoint and other third parties.

Dated: May 15, 2019

Gavin C. Gaukroger
Charles H. Lichtman
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Tel: (954) 525-9900
Fax: (954) 523-2872

*/s/ Gavin C. Gaukroger*
*One of the attorneys for Checkpoint Systems, Inc.*

Robert J. Palmersheim (*pro hac vice*)
Anand C. Mathew (*pro hac vice*)
Julie M. Mallen (*pro hac vice*)
PALMERSHEIM & MATHEW LLP
401 N. Franklin Street, Suite 4S
Chicago, Illinois 60654
Tel: (312) 319-1791
Fax: (312) 878-2890
rjp@thepmlawfirm.com
acm@thepmlawfirm.com
jmm@thepmlawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF which will generate and serve a Notice of Electronic Filing to the following:

Damon Suden
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
212-808-7800
Email: ahorvath@KelleyDrye.com
Email: dsuden@KelleyDrye.com

Julian Solotorovsky
Matthew C. Luzadder
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606
312-857-7070
Email: jsolotorovsky@KelleyDrye.com
Email: mluzadder@kelleydrye.com

William A. MacLeod
Kelley Drye & Warren LLP
3050 K Street NW, Suite 400
Washington, DC 20007
202-342-8811
Email: wmacleod@kelleydrye.com

Christopher W. Kammerer
John F. Mariani
Kammerer Mariani PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
561-990-1592
Email: ckammerer@kammerermariani.com
Email: jmariani@kammerermariani.com

John B. Williams
Williams Lopatto PLLC
1707 L Street NW, Suite 550
Washington, DC 20036
202-296-1611
Email: jbwilliams@williamslopatto.com

*/s/ Gavin C. Gaukroger*

8