UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-81261-CIV-DIMITROULEAS

ALL-TAG CORP.,

      Plaintiff,

v.

CHECKPOINT SYSTEMS, INC.

      Defendant.

_____/

**CHECKPOINT SYSTEMS, INC.'S SECOND AMENDED
COUNTERCLAIM AND AFFIRMATIVE DEFENSES**

Defendant/Counterclaim Plaintiff Checkpoint Systems, Inc. ("Checkpoint"), alleges the following as its Second Amended Counterclaim and Affirmative Defenses to All-Tag Corp.'s ("All-Tag") First Amended Complaint.

**COMMON FACTUAL ALLEGATIONS TO
FIRST AMENDED COUNTERCLAIM AND AFFIRMATIVE DEFENSES**

*All-Tag's Long History of Competition With Checkpoint*

      1.      All-Tag has competed with Checkpoint in the sale of RF labels for decades and has accused Checkpoint of the conduct alleged in its First Amended Complaint as far back as 2002. For example, in 2002, All-Tag complained that Checkpoint sold retailers EAS systems in exchange for the retailer purchasing RF labels exclusively from Checkpoint and that Checkpoint was attempting to monopolize the market for RF labels.

      2.      Indeed, All-Tag admits that it became aware of the purported "2004 Deceptive Marketing," "2009 Deceptive Marketing," "2010 Deceptive Marketing," and "2012 Fraudulent Comparative Study" alleged in its First Amended Complaint more than four years ago. All-Tag

thus has no excuse for its delay in asserting its untimely claims and the delay has prejudiced Checkpoint.

3. Notwithstanding All-Tag's assertions, All-Tag expanded its business operations in the United States over the course of more than a decade. All-Tag has admitted that it, and other competitors, sell EAS and RF EAS labels to customers in the relevant market(s). Since 2002, All-Tag has increased its volume of RF label sales and successfully competed against Checkpoint and other competitors for the sale of RF labels in the United States. All-Tag has admitted that for decades the price of RF labels sold in the United States has dramatically declined due to aggressive competition between it, Checkpoint, and others.

4. Checkpoint's contracts with customers have procompetitive justifications and do not cause anticompetitive harm. Checkpoint's sales of RF EAS equipment create consumer demand for RF EAS labels and increases the size of the market(s) in which All-Tag, Checkpoint, and other competitors compete. As All-Tag has admitted, due to capital expenditures associated with purchasing EAS equipment, many customers would not otherwise have RF EAS equipment. Consequently, these customers would have no demand for RF labels but for the Checkpoint practices about which All-Tag now complains. Checkpoint's contracts with customers enhance efficiencies, promote interbrand competition, raise the level of customer service, increase RF label output and quality, and expand the market for RF labels.

5. All-Tag has successfully competed in its alleged RF label market(s) even though, as it admits, it has concentrated its efforts and resources on selling to non-retailers, such as manufacturers and packagers.

*All-Tag's Settlement With Checkpoint*

6.  In 2014, All-Tag filed two lawsuits against Checkpoint in the U.S. District Court for the Southern District of Florida. The lawsuits were captioned, respectively, *All-Tag Security Americas, Inc. v. Checkpoint Systems, Inc.*, Civil Action No. 9:14-cv-81004-DMM (the "First Litigation") and *All-Tag Security Americas, Inc. v. Checkpoint Systems, Inc.*, Civil Action No. 9:14-cv-81259-JIC (the "Second Litigation"). The First and Second Litigations were subsequently consolidated under Civil Action No. 9:14-cv-81004-DMM.

7.  In December 2014, Checkpoint and All-Tag agreed to settle the First and Second Litigations and entered into a written Settlement Agreement and Releases ("Settlement Agreement"). Through the Settlement Agreement, All-Tag irrevocably renounced and disclaimed any right to assert any claim for damages that could have been brought in the First and Second Litigations, including the claims All-Tag brings in its First Amended Complaint.

8.  Through the Settlement Agreement, [Redacted] [Redacted] [Redacted] [Redacted] Settlement Agreement § 3.1.

9.  The Settlement Agreement [Redacted] [Redacted] [Redacted] [Redacted] [Redacted] [Redacted] [Redacted]

[Redacted] Settlement Agreement § 1.2.

10. In the Settlement Agreement, [Redacted] [Redacted] [Redacted] Settlement Agreement § 5.1(v).

***All-Tag's False Advertising And Unfair Competition***

11. All-Tag routinely advertises itself as "an American manufacturer" of EAS products and "the <u>only</u> EAS company that manufactures RF labels in the U.S.A." *See, e.g.,* https://all-tag.com/ (emphasis in original, last visited February 19, 2019).

12. All-Tag touts its U.S. manufacturing facilities to customers and claims that its products are made in its factory in Boca Raton, Florida.

13. For years and persisting until today, All-Tag has engaged in a specific marketing campaign to promote its purported "Made in the U.S.A." branding to U.S. customers.

14. For example, [Redacted] [Redacted] [Redacted]

15. [Redacted] [Redacted] [Redacted] [Redacted] [Redacted]

16. [Redacted] [Redacted]

Redacted

Redacted

Redacted

17.     All-Tag recognized that it could gain a distinct market advantage by advertising that its labels were "Made in the U.S.A."  Redacted

Redacted

Redacted

Redacted

Redacted

18.     All-Tag carried out its marketing campaign by routinely making pitches to customers based on the purported fact that "All-Tag RF labels are made in the U.S.A."

19.     All-Tag pitched that  Redacted

Redacted

20.     When customers specifically asked All-Tag whether its labels are manufactured in the U.S., All-Tag sales representatives responded that  Redacted  Redacted

21.     All-Tag advertised to customers that  Redacted  Redacted

22.     All-Tag's "Made in the U.S.A." marketing campaign and its representations to customers are false and/or misleading.  Redacted

Redacted

Redacted

Redacted

Redacted

5

Redacted

Redacted

Redacted

23.  All-Tag advertises and brands these products as "Made in the U.S.A." Redacted

Redacted

24.  All-Tag makes these false and misleading representations to customers using EAS RF labels such as retailers, consumer goods manufacturers, and packagers.

25.  All-Tag has engaged in numerous efforts to hide and disguise the true origin of the products it sells to customers.

26.  For example, Redacted

Redacted

27.  All-Tag also Redacted

Redacted

Redacted

Redacted

28.  Redacted

Redacted

Redacted

29.  All-Tag also Redacted

Redacted

30.  In response to one particular marketing campaign that All-Tag sought to use Redacted

Redacted

Redacted

Redacted

31. Similarly, Redacted Redacted Redacted Redacted Redacted Redacted

32. Redacted Redacted Redacted

33. All-Tag's false and misleading advertising and conduct has persisted and continues through today.

34. As recently as last year, Redacted Redacted Redacted

35. All-Tag also noted as recently as last year that Redacted Redacted

## SECOND AMENDED COUNTERCLAIM

Checkpoint brings this Second Amended Counterclaim against All-Tag. In support thereof, Checkpoint states:

## NATURE OF ACTION

36. This Counterclaim arises out of All-Tag's breach of a settlement agreement pursuant to which (1) All-Tag irrevocably renounced and disclaimed the claims it now brings in its First Amended Complaint; (2) All-Tag expressly represented and warranted to Checkpoint it did not have, possess, or own the claims it now brings in its First Amended Complaint. This

Counterclaim also seeks damages, injunctive relief, and other relief against All-Tag for its false and misleading advertising in violation of the Lanham Act, the Florida false advertising statute, and unfair competition under Florida common law.

## PARTIES, JURISDICTION AND VENUE

37. Counter-Plaintiff Checkpoint is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in New Jersey. In 2016, Checkpoint was acquired by CCL, a Canadian corporation headquartered in Toronto, Ontario.

38. Upon information and belief, Counter-Defendant All-Tag is a corporation organized and existing under the laws of the State of Florida with its principal place of business located Boca Raton, Florida.

39. The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367.

40. The Court has personal jurisdiction over All-Tag because All-Tag is organized under the laws of the State of Florida, has its principal place of business with the Southern District of Florida, and conducts substantial business within the Southern District of Florida.

41. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Checkpoint's counterclaims occurred within the Southern District of Florida.

## FACTUAL ALLEGATIONS

42. Checkpoint incorporates by reference the Common Factual Allegations alleged in paragraphs 1 through 35 above in full as if set forth and repeated herein.

## COUNT I
## (BREACH OF CONTRACT)

43. Checkpoint incorporates by reference the facts alleged in paragraphs 1 through 42 above in full as if set forth and repeated herein.

44. The Settlement Agreement constitutes a valid and enforceable contract between Checkpoint and All-Tag.

45. All of the claims asserted in All-Tag's First Amended Complaint against Checkpoint constitute Claims under the Settlement Agreement that All-Tag irrevocably renounced and disclaimed.

46. All-Tag materially breached the Settlement Agreement between Checkpoint and All-Tag by now bringing the claims in its First Amended Complaint.

47. Checkpoint has suffered, and will continue to suffer, damages as a result of All-Tag's breach of contract, including, but not limited to, fees, costs, and expenses that Checkpoint has incurred, and will incur, to defend against the claims in All-Tag's First Amended Complaint.

## COUNT II
## (BREACH OF REPRESENTATIONS AND WARRANTIES)

48. Checkpoint incorporates by reference the facts alleged in paragraphs 1 through 42 above in full as if set forth and repeated herein.

49. The Settlement Agreement constitutes a valid and enforceable contract between Checkpoint and All-Tag.

50. All of the claims asserted in All-Tag's First Amended Complaint against Checkpoint constitute Claims under the Settlement Agreement that All-Tag had, possessed, or owned.

51. All-Tag expressly represented and warranted to Checkpoint it did not have, possess, or own the claims it now brings in its First Amended Complaint.

52. All-Tag materially breached the representations and warranties it made in the Settlement Agreement by now asserting the claims in its First Amended Complaint notwithstanding its representations and warranties to the contrary.

53. Checkpoint has suffered, and will continue to suffer, damages as a result of All-Tag's breach of its representations and warranties, including, but not limited to, fees, costs, and expenses that Checkpoint has incurred, and will incur, to defend against the claims in All-Tag's First Amended Complaint.

## COUNT III
## FALSE ADVERTISING UNDER SECTION 43 OF THE LANHAM ACT

54. Checkpoint incorporates by reference the facts alleged in paragraphs 1 through 42 above in full as if set forth and repeated herein.

55. All-Tag markets and designates its products as "Made in the U.S.A." without any qualification even though many of its products are not all or virtually all made in the United States.

56. All-Tag's marketing and designation of its products as "Made in the U.S.A." is false and intentionally misleading.

57. All-Tag's false and misleading marketing and designations are material and likely to influence consumers' purchasing decisions.

58. Even if All-Tag's marketing and designations were literally true or even ambiguous, significant components of its products are manufactured outside the United States so its marketing and designations are intentionally deceptive and mislead consumers to believe that All-Tag's products are actually manufactured in the United States.

59. All-Tag, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, and geographic origin of its products.

60. These misrepresentations constitute false or misleading descriptions of fact, or false or misleading representations of fact made in commerce in connection with the sale of goods and services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61. Checkpoint has been and continues to be damaged by All-Tag's conduct in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), including through losing sales to customers misled by All-Tag's false or misleading marketing and designations.

## COUNT IV
## FLORIDA STATUTORY FALSE ADVERTISING – FLA. STAT. § 817.41

62. Checkpoint incorporates by reference the facts alleged in paragraphs 1 through 42 and paragraphs 55 through 59 above in full as if set forth and repeated herein.

63. Florida Statutes § 817.41(1) provides:

> It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

64. Florida Statutes § 817.41(6), pertaining to misleading advertising, provides a civil cause of action arising out of misleading advertisement by a defendant. The statute provides that "[a]ny person prevailing in a civil action for violation of this section shall be awarded costs, including reasonable attorney's fees, and may be awarded punitive damages in addition to actual damages proven. This provision is in addition to any other remedies prescribed by law."

65. Florida Statutes § 817.40(5) states as follows regarding the definition of "misleading advertising":

> The phrase "misleading advertising" includes any statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been

11

>ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.

66. All-Tag directly competes with Checkpoint for business in Florida, and thus the misleading advertising in All-Tag's marketing and designation of its products was disseminated in the course of such competition.

67. The "Made in the U.S.A." statements in All-Tag's marketing and designation of its products are in printed form and were disseminated by All-Tag via its distributors and retailers.

68. All-Tag had the right and ability to control the advertising in its marketing and designation of its products and the discretion to approve or reject the advertisements prior to distribution.

69. All-Tag's marketing and designation of its products set forth untrue or misleading statements and information relating to the origin of its products.

70. All-Tag knew or through the exercise of reasonable care or investigation could or might have ascertained that the statements and information in its marketing and designation of its products were untrue or misleading.

71. The marketing and designation of its products were disseminated to the public, subject to the right of control of All-Tag, with the intent or purpose, either directly or indirectly, induce the public to purchase its products, instead of Checkpoint's products.

72. Upon information and belief, consumers who purchased All-Tag's products relied on these misleading statements, and reliance on these advertisements was reasonable and justified under the circumstances.

73. Checkpoint has suffered, and continues to suffer irreparable harm as a result of All-Tag's false advertising. Such harm will continue unless All-Tag's improper actions are enjoined by this Court.

74. Checkpoint has no adequate remedy at law.

75. Moreover, as a direct and proximate result of All-Tag's unlawful acts, Checkpoint has been, and is being, damaged.

## COUNT V
## FLORIDA COMMON LAW UNFAIR COMPETITION

76. Checkpoint incorporates by reference the facts alleged in paragraphs 1 through 42 and paragraphs 55 through 59 above in full as if set forth and repeated herein.

77. All-Tag's conduct, including, but not limited to, its false and/or misleading advertising is likely to deceive customers.

78. All-Tag's conduct is willful and intentional.

79. As a result of All-Tag's conduct described herein, Checkpoint has sustained and will sustain irreparable injury for which no adequate remedy at law exists.

80. Further, as a direct and proximate result of All-Tag's unlawful acts, Checkpoint has been, and is being, damaged.

## PRAYER FOR RELIEF

WHEREFORE, Checkpoint prays for relief as follows:

(1) All damages caused by All-Tag's breach of contract, including, but not limited to, fees, costs, and expenses that Checkpoint has incurred, and will incur, to defend against the claims in All-Tag's First Amended Complaint;

(2)     All damages caused by All-Tag's breach of its representations and warranties, including, but not limited to, fees, costs, and expenses that Checkpoint has incurred, and will incur, to defend against the claims in All-Tag's First Amended Complaint;

(3)     Injunctive relief, All-Tag's profits gained through All-Tag's false advertising, Checkpoint's actual damages, enhanced damages up to three times the amount of Checkpoint's actual damages, corrective advertising, and any other relief available under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a);

(4)     Actual damages, punitive damages, and/or any other relief available under Florida Statutes § 817.41;

(5)     Injunctive relief, actual damages, punitive damages, and/or any other relief available under Florida law for All-Tag's unfair competition;

(6)     Costs and attorneys' fees as permitted by law; and;

(7)     Such other and further relief as the Court shall deem just and proper.

## SECOND AMENDED AFFIRMATIVE DEFENSES

81.     Checkpoint asserts the Affirmative Defenses set forth below.  Checkpoint reserves the right to amend and assert additional defenses as additional information becomes available.

## FACTUAL ALLEGATIONS

82.     Checkpoint incorporates by reference the Common Factual Allegations alleged in paragraphs 1 through 35 above in full as if set forth and repeated in each of the affirmative defenses below.

## FIRST AFFIRMATIVE DEFENSE
### (FAILURE TO STATE A CLAIM)

All-Tag's claims in Counts I through VI are barred, in part or in full, because they fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (ESTOPPEL, LACHES AND/OR WAIVER)

All-Tag's claims in Counts I through VI are barred, in part or in full, by the doctrines of estoppel, laches and/or waiver.

## THIRD AFFIRMATIVE DEFENSE
### (STATUTE OF LIMITATIONS)

All-Tag's claims in Counts I through VI are barred, in part or in full, by the applicable statute of limitations, statute of repose, or common law time bar.

## FOURTH AFFIRMATIVE DEFENSE
### (FAILURE TO MITIGATE)

All-Tag's claims in Counts I through VI are barred, in part or in full, because All-Tag failed to mitigate its damages, if any.

## FIFTH AFFIRMATIVE DEFENSE
### (RELEASE)

All-Tag's claims in Counts I through VI are barred, in part or in full, because All-Tag released its claims, damages and/or other relief.

## SIXTH AFFIRMATIVE DEFENSE
### (*RES JUDICATA*)

All-Tag's claims in Counts I through VI are barred, in part or in full, by the doctrine of *res judicata*.

## SEVENTH AFFIRMATIVE DEFENSE
### (RULE OF REASON)

All-Tag's claims in Counts I through VI are barred, in part or in full, because Checkpoint's conduct is reasonable and justified under the rule of reason.

## EIGHTH AFFIRMATIVE DEFENSE
### (ANTITRUST INJURY AND STANDING)

All-Tag's claims in Counts I through VI are barred, in part or in full, because All-Tag has not suffered any injury or damage to its business or property by reason of any act or omission by Checkpoint, and does not have any right or standing to maintain claims for damages or other relief.

## NINTH AFFIRMATIVE DEFENSE
### (PRIVILEGE / JUSTIFICATION)

All-Tag's claims in Counts I through VI are barred, in part or in full, because Checkpoint's actions and communications were protected by the competition privilege and/or were justified as legitimate acts of competition.

## TENTH AFFIRMATIVE DEFENSE
### (UNCLEAN HANDS / *IN PARI DELICTO*)

All-Tag's claims in Counts I through VI are barred, in part or in full, by the doctrine of unclean hands and *in pari delicto*, including, but not limited to, All-Tag's false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), All-Tag's misleading advertising pursuant to Florida Statutes § 817.41, and All-Tag's unfair competition.

## ELEVENTH AFFIRMATIVE DEFENSE
### (DAMAGES SPECULATIVE AND REMOTE)

The damages sought in Count IV are speculative and remote.

## TWELFTH AFFIRMATIVE DEFENSE
### (RELIABLE TESTS, DATA AND RESULTS)

Count IV is barred because the advertising statements regarding Checkpoint's RF labels and tags are based upon reliable tests, data, and results.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (NO MATERIAL EFFECT ON PURCHASING DECISIONS)

Count IV is barred because any alleged deception caused by Checkpoint's subject advertising, which Checkpoint strictly denies, had no material effect on consumers' purchasing decisions.

### FOURTEENTH AFFIRMATIVE DEFENSE
### (GOOD FAITH)

Count IV is barred because Checkpoint acted in good faith in preparing and disseminating the advertising and it did not willfully or intentionally disseminate any false or misleading claims or statements.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (NO IRREPARABLE HARM)

All-Tag's claim for injunctive relief in Count IV is barred because All-Tag has not and will not suffer irreparable harm absent injunctive relief.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (ADEQUATE REMEDY AT LAW)

All-Tag's claim for injunctive relief in Count IV is barred because All-Tag has an adequate remedy at law.

### SEVENTEENTH AFFIRMATIVE DEFENSE
### (SET-OFF)

Checkpoint is entitled to a set-off for any damages found to be sustained as a result of All-Tag's actions in the Counterclaim.

| | |
|---|---|
| Dated: June 14, 2019 | s/ Gavin C. Gaukroger<br>One of the Attorneys for Checkpoint Systems, Inc. |
| Gavin C. Gaukroger<br>Fla. Bar. No. 76489<br>Jeffrey S. Wertman<br>Fla. Bar No. 3093<br>BERGER SINGERMAN LLP<br>350 East Las Olas Boulevard, Suite 1000<br>Fort Lauderdale, Florida 33301<br>Tel: (954) 525-9900<br>Fax: (954) 523-2872<br>ggaukroger@bergersingerman.com<br>jwertman@bergersingerman.com<br>drt@bergersingerman.com | Robert J. Palmersheim (*pro hac vice*)<br>Anand C. Mathew (*pro hac vice*)<br>Julie M. Mallen (*pro hac vice*)<br>PALMERSHEIM & MATHEW LLP<br>401 N. Franklin Street, Suite 4S<br>Chicago, Illinois 60654<br>Tel: (312) 319-1791<br>Fax: (312) 878-2890<br>rjp@thepmlawfirm.com<br>acm@thepmlawfirm.com<br>jmm@thepmlawfirm.com |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 14, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF which will generate and serve a Notice of Electronic Filing to the following:

Damon Suden
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
212-808-7800
Email: dsuden@KelleyDrye.com

Julian Solotorovsky
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606
312-857-7070
Email: jsolotorovsky@KelleyDrye.com

William A. MacLeod
Kelley Drye & Warren LLP
3050 K Street NW, Suite 400
Washington, DC 20007
202-342-8811
Email: wmacleod@kelleydrye.com

Christopher W. Kammerer
John F. Mariani
Kammerer Mariani PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
561-990-1592
Email: ckammerer@kammerermariani.com
Email: jmariani@kammerermariani.com

John B. Williams
Williams Lopatto PLLC
1707 L Street NW, Suite 550
Washington, DC 20036
202-296-1611
Email: jbwilliams@williamslopatto.com

                                        */s/ Gavin C. Gaukroger*
                                         Gavin C. Gaukroger

9138461-4