**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ALL-TAG CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17 CV 81261-WPD |
| v. ) | |
| ) | Judge William P. Dimitrouleas |
| CHECKPOINT SYSTEMS, INC., ) | Magistrate Judge William Matthewman |
| ) | |
| Defendant. ) | |

**ALL-TAG'S MOTION TO COMPEL MORE COMPLETE ANSWERS TO ITS THIRD SET OF INTERROGATORIES AND DOCUMENTS RESPONSIVE TO ITS THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

**I.     INTRODUCTION**

Plaintiff All-Tag Corp. ("All-Tag"), pursuant to Fed. R. Civ. P. 37(a), hereby moves this Court for the entry of an Order compelling Defendant Checkpoint Systems, Inc. ("Checkpoint") to provide more complete answers to All-Tag's Third Set of Interrogatories ("Interrogatories"), and to produce documents responsive to All-Tag's Third Request for the Production of Documents ("RFP").  In doing so, All-Tag moves this Court to overrule Checkpoint's tenuous objections to these reasonable requests for information.

All-Tag brought this case because of Checkpoint's years-long campaign of anticompetitive and deceptive conduct against its competitors in the Electronic Article Surveillance (EAS) industry.  The requested interrogatories stem from All-Tag's allegations and Checkpoint's defenses of this antitrust action.  All-Tag's RFP requests documents relating to Checkpoint's latest anticompetitive tactic—using this Court as a means to freeze All-Tag's assets.

Checkpoint objects to the discovery, arguing that the RFP is irrelevant and that the unanswered interrogatory questions are too burdensome to answer.  The parties have endeavored to resolve the dispute, without success.

**II.     LEGAL STANDARD FOR DISCOVERY**

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26.

Pursuant to that rule, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. "It is well established that the courts must employ a liberal standard in keeping with the purpose of the discovery rules." *Stolfat v. Equifax Info. Servs., LLC*, No. 19-80428-CV, 2019 U.S. Dist. LEXIS 135648, at *6 (S.D. Fla. Aug. 12, 2019) (M.J. Matthewman). Checkpoint bears the burden of "establishing a lack of relevancy or some other basis for resisting production." *Glatter v. MSC Cruises S.A.*, No. 18-62219-CIV, 2019 U.S. Dist. LEXIS 58621, 2019 WL 1300896, at *2 (S.D. Fla. Feb. 7, 2019). "In other words, the respondent 'must show either that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26 or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure.'" *Stolfat,* 2019 U.S. Dist. LEXIS 135648, at *7 (*citing Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 05-60860-CIV, 2007 WL 1526649, at *2 (S.D. Fla. May 22, 2007)) .

### III. CHECKPOINT SHOULD PRODUCE DOCUMENTS RESPONSIVE TO ALL-TAG'S REQUEST FOR DOCUMENTS

All-Tag's Third Request for the Production of Documents (incorporated into Checkpoint's Responses and Objections thereto, which is attached as Exhibit A) seeks the responsive "documents and correspondence between Sensormatic and Checkpoint relating to the judgment in the litigation captioned *Checkpoint Systems v. All-Tag Security*, et al., Case No. 2:01-cv-02223-PBT (E.D. Pa.)." Exhibit A at 4. Checkpoint objects to producing any documents, as irrelevant and disproportional to the needs of the case. *Id*. The litigation at issue in this RFP (previewed in All-Tag's response to Checkpoint's recent discovery motion), is one of the many efforts Checkpoint has waged against All-Tag to enjoin competition since All-Tag entered the US market. *See* D.E. 195 at 2-3. In 2001, Checkpoint filed a patent infringement litigation against All-Tag, Sensormatic, and other EAS competitors, and in 2007 a jury returned a verdict for Defendants and against Checkpoint. In 2009, the District Court found the case to be "exceptional" under the Patent Act, and awarded attorneys' fees to Defendants. On remand from the first appeal, the District Court remarked on the anticompetitive nature of Checkpoint's antics:

- "Before commencing the present suit [in 2001], Checkpoint had already acquired at least three other competitors, two against whom Checkpoint had previously filed suit. Checkpoint obtained the '555 patent from one of these competitor acquisitions, Actron, but neither company ever manufactured a product under the '555 patent." *Checkpoint Sys. v. All-Tag Sec. S.A.*, No. 01-2223, 2015 U.S. Dist.

- LEXIS 109284, at *9 (E.D. Pa. Aug. 18, 2015) (awarding legal fees to defendants) (fee award reversed on other grounds by *Checkpoint Sys. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 2017 U.S. App. LEXIS 9874 (Fed. Cir. June 5, 2017)).

- "In 1997, in an effort to purchase All-Tag, Checkpoint accused All-Tag of infringing on a number of patents, including the '555 patent. Checkpoint's then Vice President and General Counsel, Neil Austin, threatened that All-Tag would 'bleed with legal fees' unless All-Tag capitulated. Austin also warned, 'I'm going to put you in bankruptcy and you will cry.'" *Id*.

The fee award has been appealed twice, and a final judgment was finally entered March 5, 2019. After a decade of appeals, Checkpoint ultimately avoided the fees assessment and was entitled to reimbursement for the cost of the bond it posted to pursue them. Checkpoint knew that All-Tag had nothing to gain from the fee award—it knew during the appeal when All-Tag asked to be removed from the case, and it knew after Checkpoint's counsel explicitly asked about payment of the bond during All-Tag's CEO's April 3, 2019 deposition. Other defendants had incurred the expenses, had contested the appeal, and had stood to share the reimbursement. *See* D.E. 195-1 at 2 ("When we bought out the corporation in 2013, the U.S. corporation, we had asked to be excluded from that case and that we had no interest in the case. We had nothing to win out of the case, that the former principal owner of All-Tag Belgium, Dominique Blieck, was running that appeal to get his legal fees back. We asked many times to be let out of it and Checkpoint and Sensormatic refused to let us out of that case.")

That knowledge didn't stop Checkpoint from initiating an *ex-parte* garnishment action in this Court against All-Tag alone, and not the other defendants, for the whole cost of the bond. All-Tag only learned about this surprise attack when its bank froze its funds in June, inhibiting All-Tag from conducting its business.

All-Tag moved to dissolve the garnishment and transfer the action to Judge Dimitrouleas. *See Checkpoint Systems, Inc. v. All-Tag Security S.A., et. al*, Case No. 9:19-mc-80714-PMH (S.D. Fla), D.E. 18 at 1, and D.E. 19 at 1-3. Among the grounds for dissolution were misrepresentations that Checkpoint had made in its petition. Checkpoint represented to this Court that All-Tag owed the entire cost of the bond, even though another defendant, Sensormatic, had already tendered half the money. *Id*., D.E. 18 at 1. Rather than accept the tender, Checkpoint collaborated with Sensormatic as both pursued redundant recoveries against All-Tag. The two companies' demands amounted to more than the cost of the bond. Checkpoint did not disclose Sensormatic's tender, or the collaboration of the companies, in the pleadings it

3

filed in this Court to gain the garnishment. Only after third party discovery from Sensormatic did All-Tag discover that the two companies had been collaborating against All-Tag. *See* D.E. 195-2.

Notwithstanding this discovery, Checkpoint refuses to produce any documents of its own, claiming irrelevance. Exhibit A at 4. Documents relating to the judgment, and discussions with a third party competitor about it, are discoverable, non-privileged, and relevant to a case on anticompetitve conduct. Checkpoint should be required to produce these documents.

## IV. CHECKPOINT SHOULD PROVIDE MORE COMPLETE ANSWERS TO ALL-TAG'S INTERROGATORIES

All-Tag's Third Request for Interrogatories (incorporated into Checkpoint's Responses and Objections thereto, which is attached as Exhibit B) seeks answers relating to various All-Tag allegations and Checkpoint defenses. All-Tag is entitled to responses to the unanswered portions of the following Interrogatories:

- Interrogatory No. 6 requests "for each such company [that provided servicing of RF EAS towers and deactivators] identify the number of retail stores it serviced."

- Interrogatory No. 7 requests Checkpoint to "identify all documents and correspondence relating to requests for or inquiries about any such allowance, approval, endorsement, or authority [to service RF EAS equipment manufactured by Checkpoint]."

- Interrogatory No. 8 requests "the quantity of towers and deactivators associated with each Checkpoint proposal [that Checkpoint made to a top 50 Retailer]."

- Interrogatory No. 9 request "for each such company [that has won RF label sales] identify the volume of label sales Checkpoint had discussed with or proposed to each such customer."

- Interrogatory No. 11 request that Checkpoint identify any retailer that has switched from RF to AM since 2012. Checkpoint responded stating that "Checkpoint states that Sensormatic or other third parties, not Checkpoint, would have information about customers that have adopted AM EAS…"

Interrogatory Nos. 6, 7, 8 relate to the installation and servicing of RF EAS towers and deactivators. Checkpoint objects to these questions as overly burdensome, or that All-Tag can find the information itself in the millions of documents it produced.[1] These answers are needed

---

[1] On the meet-and-confer relating to these discovery requests, Checkpoint stated that it aims to supplement Interrogatory No. 8 by August 29th. Checkpoint has not yet provided a supplement.

4

because All-Tag alleges that Checkpoint has enjoyed a monopoly in the sale of RF labels by leveraging its dominant position in the servicing of towers and deactivators. Checkpoint denies these allegations. *See Checkpoint's Answer to All-Tag's Second Amended Complaint*, D.E. 184, at ¶3. All-Tag seeks the knowledge Checkpoint has on its own, and its competitor's capabilities. Checkpoint certainly has this knowledge, but it refuses to conduct a diligent investigation to provide answers.

Interrogatory No. 9 requests the quantities of RF labels that Checkpoint proposed to customers who eventually decided to use another competitor. On the meet-and-confer, Checkpoint claimed it was too burdensome, and was "not clear how to answer" the Interrogatory. It is not complicated—Checkpoint can obtain the information from its sales team, if it doesn't already have it elsewhere.

Finally, Interrogatory No. 11 requests that Checkpoint identify any retailer that has switched from RF technology to AM since 2012. Taking refuge in ignorance – Checkpoint stated on the meet-and-confer that it does not know what "switching from RF to AM means." – Checkpoint refuses to provide an answer because it would undermine its contention that RF and AM occupy the same relevant market. If Checkpoint is unaware of any retailer who has switched from RF to AM, it should be required to say so.

## V.    MEET AND CONFER CERTIFICATE PURSUANT TO S.D. L.R. 7.1(A)(3)

I hereby certify that counsel for the Plaintiff/movant has conferred with counsel for Defendant in a good faith effort to resolve the issues raised in the motion, including by telephone conference held on August 21, 2019, but has been unable to do so.

## VI.   CONCLUSION

All-Tag's reasonable discovery requests seek documents and information necessary for it to prosecute and defend its case. Checkpoint's latest evasion of basic discovery obligations is merely another tactic to force All-Tag to incur unnecessary costs.

WHEREFORE, All-Tag respectfully requests that the Court order Checkpoint to produce the information All-Tag has requested, and to order expedited briefing on this motion.

Dated:  August 30, 2019

Respectfully submitted,

By: /s/ *Christopher Kammerer*
      Christopher Kammerer

Christopher William Kammerer
John F. Mariani
KAMMERER MARIANI PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
(561)-990-1592
ckammerer@kammerermariani.com
jmariani@kammerermariani.com

William MacLeod (*pro hac vice*)
Julian Solotorovsky (*pro hac vice*)
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
(312)-857-7070
jsolotorovsky@kelleydrye.com
wmacleod@kelleydrye.com

Damon Suden (*pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212)-808-7800
dsuden@KelleyDrye.com

John B. Williams *(pro hac vice)*
WILLIAMS LOPATTO PLLC
1707 L Street, NW Suite 550
Washington, DC 20036
(202) 296-1611
jbwilliams@williamslopatto.com
*Attorneys for Plaintiff All-Tag Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of August 2019, a true and correct copy of the foregoing was served upon the following counsel of record for Defendant via PACER:

>Charles Howard Lichtman
>Gavin Gaukroger
>BERGER SINGERMAN
>Las Olas Centre II
>350 E Las Olas Boulevard
>Suite 1000
>Fort Lauderdale, FL 33301
>954-525-9900
>Fax: 523-2872
>clichtman@bergersingerman.com
>ggaukroger@bergersingerman.com
>
>Robert J. Palmersheim
>Anand C. Mathew
>Julie M. Mallen
>PALMERSHEIM & MATHEW
>401 N. FRANKLIN STREET, SUITE 4S
>CHICAGO, IL 60654
>312-319-1791
>acm@thepmlawfirm.com
>rjp@thepmlawfirm.com
>jmm@thepmlawfirm.com
>
>By: /s/ *Christopher Kammerer*
>     Christopher Kammerer