# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALL-TAG CORP., | ) |
| | ) |
| Plaintiff, | ) Case No. 17 CV 81261-WPD |
| | ) |
| v. | ) Judge William P. Dimitrouleas |
| | ) |
| CHECKPOINT SYSTEMS, INC., | ) Magistrate Judge William Matthewman |
| | ) |
| Defendant. | ) |
| | ) |

**CHECKPOINT'S RESPONSE TO ALL-TAG'S MOTION TO COMPEL MORE COMPLETE ANSWERS TO ITS THIRD SET OF INTERROGATORIES AND DOCUMENTS RESPONSIVE TO ITS THIRD REQUEST FOR PRODUCTION OF DOCUMENTS [DE 203]**

All-Tag's Motion to Compel should be denied.  All-Tag's document requests seek communications from Checkpoint's lawyers about a completely unrelated collection proceeding against All-Tag.  All-Tag's pleadings do not cite the collection proceeding as a means of Checkpoint's "anticompetitive conduct," nor could they since the *Noerr-Pennington* doctrine clearly immunizes Checkpoint from potential antitrust liability for pursuing a lawfully entered judgment.  If All-Tag thought that Checkpoint had done anything improper or that these documents were relevant to anything, then it should and could have pursued that relief in the collection case.  It did not.  Instead, it *agreed* to resolve the case by having a judgment entered against a garnishee bank and paying Checkpoint additional sums of money.  That fact, alone, speaks volumes about baselessness of All-Tag's motion.

With respect to the interrogatories, All-Tag waited 44 days to bring its Motion and it is thus untimely.  All-Tag does not even attempt to show that it has "good cause for the delay."  Even if the Motion were timely brought, Checkpoint has already complied with its obligations and made diligent efforts to adequately answer the interrogatories.  All-Tag is largely asking Checkpoint to unreasonably provide information that it knows only third-parties could confirm.  Rather than seek that information from the parties that would have the information, All-Tag files this Motion against Checkpoint.  The Motion should be denied in its entirety.

I. **CHECKPOINT'S ENFORCEMENT OF A JUDGMENT FROM A DIFFERENT CASE DURING THE PENDENCY OF THIS LITIGATION IS IRRELEVANT.**

   A. **Checkpoint's Lawful Enforcement of its Judgment Against All-Tag is Not "Evidence" of Anticompetitive Conduct.**

All-Tag's document requests seek communications from Checkpoint's lawyers about a completely unrelated collection proceeding against All-Tag.  While All-Tag asserts that the collection proceeding is "Checkpoint's latest anticompetitive tactic," All-Tag points to absolutely nothing in its Second Amended Complaint making such an allegation.  No such allegation exists because All-Tag would never be able to argue that a collection proceeding initiated to enforce a lawfully entered judgment could be a means of anticompetitive conduct.  This is simply an attempt to harass Checkpoint about irrelevant collateral issues that are nowhere alleged in All-Tag's pleadings.  *O'Boyle v. Sweetapple*, No. 14-81250-CIV, 2016 WL 492655, at *5 (S.D. Fla. Feb. 8, 2016) (information sought in discovery was disproportionate and irrelevant and "would cause the

1

parties to run down a rabbit hole chasing irrelevant information on collateral matters, resulting in the needless and wasteful expenditure of time and money by both parties").

On March 5, 2019, a Pennsylvania District Court entered a $276,164.64 judgment against All-Tag, jointly and severally with others, in *Checkpoint Systems v. All-Tag Security, et al.*, Case No. 2:01-cv-02223-PBT (E.D. Pa.). Checkpoint lawfully registered the judgment in this jurisdiction and initiated collection efforts. *See Checkpoint Systems, Inc. v. All-Tag, Corp.,* 9:19-mc-80714-Altman-Hunt, (S.D. Fla. 2019) (DE 1) (the "Collection Case"). That Checkpoint chose to enforce and collect against All-Tag in the Southern District of Florida, where All-Tag is based and where it has bank accounts, does not make the Collection Case any more relevant to All-Tag's claims against Checkpoint or Checkpoint's claims against All-Tag here.

If All-Tag thought that Checkpoint did anything improper in the Collection Case, then it could have moved for relief there, or sought the documents it now attempts to seek in this proceeding.[1] It did not because it knows Checkpoint carried out the Collection Case completely in accordance with the law. All-Tag knows this because it ***agreed*** to an Agreed Final Judgment of Garnishment and Order of Disbursement. Collection Case (DE 27) (attached as Exhibit A). All-Tag agreed to entry of a $131,715.08 judgment against a garnishee bank and then wired another $144,449.56 to Checkpoint's counsel itself. If All-Tag did not believe Checkpoint had a lawful right to collect the judgment from All-Tag, it would not have stipulated to the agreed order or paid Checkpoint additional amounts itself. All-Tag cites no facts or law supporting its position that documents pertaining to that unrelated lawsuit could possibly be relevant here.

### B. Checkpoint Is Immune From Any Antitrust Liability Based On The Collection Action.

Even if the Court found that the Collection Case was relevant to this case (which it is not) and All-Tag had alleged facts in its pleading based on the Collection Case (which it has not), the *Noerr-Pennington* doctrine immunizes Checkpoint from any potential antitrust liability based on actions taken pursuant to the Collection Case. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("Those who petition the government for redress are generally immune from antitrust liability."); *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1233

---

[1] Checkpoint does not know where All-Tag obtained the documents from Sensormatic's counsel that it attaches to its motion. Presumably, All-Tag obtained them in an unrelated proceeding (since they were never served on Checkpoint). Likewise, the discovery All-Tag seeks should be sought, if at all, in that proceeding, not here.

2

(11th Cir. 2005) ("*Noerr-Pennington* immunity thus shields a defendant from antitrust liability for resorting to litigation to obtain from a court an anticompetitive outcome.").[2]

Given that Checkpoint cannot be subject to potential antitrust liability for simply exercising its lawful right to pursue the Collection Case against All-Tag, the discovery All-Tag seeks is pointless and has no value to this case. As such, it is not proportional to the needs of the case taking into consideration "the parties' relative access to relevant information … the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). All-Tag seeks only to waste time and burden Checkpoint, less than two weeks before the close of discovery, about an issue that will do nothing towards resolving the issues in the case. As this Court has noted, "Rule 26(b) allows discovery 'through increased reliance on the commonsense concept of proportionality.'" *Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.,* 16-81795-CV, 2018 WL 741371, at *3 (S.D. Fla. Feb. 6, 2018) (citations omitted). Common sense applied here demands that Checkpoint's objection be sustained.

## II. ALL-TAG'S CHALLENGE TO CHECKPOINT'S ANSWERS TO INTERROGATORIES ARE UNTIMELY UNDER LOCAL RULE 26.1.

Checkpoint served its Amended Responses and Objections to All-Tag's Third Set of Interrogatories on July 17, 2019. Yet, All-Tag waited 44 days to bring this Motion.[3] Discovery in this case closes September 18, 2019. (DE 176). All-Tag's untimely filing of the Motion violates Local Rule 26.1 and All-Tag does not even attempt to show that it has "good cause for the delay."

Notably, All-Tag has already been warned once of its failure to timely file discovery motions. (DE 113 p. 5). That time, the Court found that All-Tag's delay did not cause "prejudice to Defendant…as the discovery cut-off date is…more than four months away." (DE 34). Now, the discovery cut-off is less than two weeks away. All-Tag has needlessly and unfairly subjected Checkpoint to unfair burden and prejudice, and cannot show "good cause for the delay." The Motion should be denied on that basis alone. *Arch Ins. Co. v. Vas Aero Servs., LLC*, Case No. 16-

---

[2] All-Tag does not assert that the "sham litigation" exception to the *Noerr-Pennington* doctrine applies here. *See id*. at 1234-35 (reciting elements for sham litigation exception). Nor could it given that All-Tag entered into an Agreed Order to pay the judgment.

[3] As All-Tag notes in its LR 7.1(A)(3) certificate, All-Tag waited more than a month, until August 21, 2019, to even conduct a meet and confer.

CV-80749-MARRA/MATTHEWMAN, 2018 WL 1770553, at *5 (S.D. Fla. Apr. 12, 2018) (finding party not excused from obligation to file discovery motion within 30 days).

### III. CHECKPOINT HAS ADEQUATELY ANSWERED ALL-TAG'S INTERROGATORIES AFTER A DILIGENT INVESTIGATION.

Even if All-Tag's Motion was timely brought, Checkpoint has already complied with its obligations and made diligent efforts to adequately answer All-Tag's Third Interrogatories.

**Interrogatory No. 8**: As All-Tag notes in a footnote to the Motion, Checkpoint already said it would supplement this interrogatory. Checkpoint did so and thus assumes this is resolved.

**Interrogatories Nos. 6, 9, and 11:** As set forth below, Checkpoint answered these interrogatories based on knowledge that it reasonably possesses after a diligent investigation. All-Tag's Motion now unreasonably asks Checkpoint to provide information that only third-parties could confirm. All-Tag could easily seek that information directly from the third-parties themselves, but refuses or is unwilling to do so.

For Interrogatory No. 6, Checkpoint gave its best estimate of the number of stores with whom it has service agreements and also identified the third-party companies of which it is aware that can service or have provided service for RF EAS equipment. As Checkpoint noted in its interrogatory response, it does not specifically track the number of retail stores that *it* services— let alone could it or does it track the number of retail stores that other third-party companies service. All-Tag could obtain that information directly from the third-parties themselves, but All-Tag refuses or is unwilling to do so.

For Interrogatory No. 9, while All-Tag argues that it is "not complicated," the interrogatory itself is nonsensical on its face. Checkpoint has already identified for All-Tag the competitors of which it is aware that have made RF label sales to retailers. All-Tag's own interrogatory responses and the deposition testimony of its CEO also identified competitors. To the extent All-Tag now seeks "the quantities of RF labels that Checkpoint proposed to customers who eventually decided to use another competitor" (which is not what the interrogatory purports to actually request in the first place), All-Tag fails to explain how Checkpoint's "sales team" would know (1) which customers eventually decided to use another competitor; or (2) which competitor the potential customer decided to use instead of Checkpoint. All-Tag could easily obtain that information from either the competitor or potential customer directly, but All-Tag refuses or is unwilling to do so.

4

For Interrogatory No. 11, as All-Tag already knows, Checkpoint cannot confirm which retailers "switched from RF to AM as the form of EAS in its stores" because retailers have no obligation to disclose such information to Checkpoint. After a retailer adopts RF EAS—which it can do for only some stores or chain-wide across all of its stores—the retailer may decide to, among other things, stop installing RF EAS in new stores going forward, take out RF EAS from some or all of its existing stores, install a different type of EAS (such as AM EAS) in new stores going forward, or install a different type of EAS (such as AM EAS) in some or all of its existing stores. Even if All-Tag explained (as Checkpoint repeatedly requested) what it meant by "switched from RF to AM," the retailers are the parties that could confirm the information sought. All-Tag could easily seek this information from the retailers directly, but All-Tag refuses or is unwilling to do so.

**Interrogatory No. 7:** All-Tag requested that Checkpoint (1) "[i]dentify all companies that Checkpoint has allowed, approved, endorsed, or authorized to service RF EAS equipment manufactured by Checkpoint"; (2) "state whether any such company is related to Checkpoint"; and (3) "identify all documents and correspondence relating to requests for or inquiries about any such allowance, approval, endorsement, or authority." In response to the first two subparts, Checkpoint identified nearly 70 companies and their affiliation, if any, to Checkpoint. All-Tag's third subpart asks Checkpoint to search literally millions of documents and correspondence to "identify all documents" that relate to "requests for or inquiries about such allowance, approval, endorsement, or authority." All-Tag fails to explain why this request is proportional to the needs of the case and nothing in the Federal Rules requires Checkpoint to undertake the unreasonable time and expense of conducting the exact same search that All-Tag can perform on the documents. *See Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, 2008 WL 5272186, at *2 (N.D. Ca. Dec. 15, 2008) (holding that responding party did not have to specifically identify by bates number each responsive document because the burden of ascertaining the information responsive to interrogatory from produced documents is the same for either party).

WHEREFORE, Defendant Checkpoint Systems, Inc. respectfully requests that the Court deny All-Tag's Motion and provide such further relief as this Court deems just and proper.

Dated: September 9, 2019

Gavin C. Gaukroger
Fla. Bar. No. 76489
Kenneth W. Waterway
Fla. Bar No. 994235
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Tel: (954) 525-9900
Fax: (954) 523-2872
ggaukroger@bergersingerman.com
kwaterway@bergersingerman.com
drt@bergersingerman.com

Respectfully submitted,

*/s/ Gavin C. Gaukroger*
*One of the attorneys for Checkpoint Systems, Inc.*

Robert J. Palmersheim (*pro hac vice*)
Anand C. Mathew (*pro hac vice*)
Julie M. Mallen (*pro hac vice*)
PALMERSHEIM & MATHEW LLP
401 N. Franklin Street, Suite 4S
Chicago, Illinois 60654
Tel: (312) 319-1791
Fax: (312) 878-2890
rjp@thepmlawfirm.com
acm@thepmlawfirm.com
jmm@thepmlawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 9, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF and will be served upon counsel for the parties listed below via email:

Damon Suden
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
212-808-7800
Email: ahorvath@KelleyDrye.com
Email: dsuden@KelleyDrye.com

Julian Solotorovsky
Matthew C. Luzadder
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606
312-857-7070
Email: jsolotorovsky@KelleyDrye.com
Email: mluzadder@kelleydrye.com

William A. MacLeod
Kelley Drye & Warren LLP
3050 K Street NW, Suite 400
Washington, DC 20007
202-342-8811
Email: wmacleod@kelleydrye.com

Christopher W. Kammerer
John F. Mariani
Kammerer Mariani PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
561-990-1592
Email: ckammerer@kammerermariani.com
Email: jmariani@kammerermariani.com

John B. Williams
Williams Lopatto PLLC
1707 L Street NW, Suite 550
Washington, DC 20036
202-296-1611
Email: jbwilliams@williamslopatto.com

*/s/ Gavin C. Gaukroger*
Gavin C. Gaukroger

9308806-1