UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-cv-81261-Dimitrouleas/Matthewman

All-Tag Corp.,

    Plaintiff,

vs.

Checkpoint Systems, Inc.,

    Defendant.
_____/

FILED BY _____ D.C.
OCT 07 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## ORDER DENYING PLAINTIFF'S MOTION TO COMPEL [DE 203] AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE [DE 205-1/223]

THIS CAUSE is before the Court upon Plaintiff All-Tag Corp.'s Motion to Compel More Complete Answers to Its Third Set of Interrogatories and Documents Responsive to Its Third Request for Production of Documents [DE 203] ("Motion to Compel") and Defendant Checkpoint Systems, Inc.'s Motion to Strike All-Tag's New Affirmative Opinion Improperly and Untimely Offered in the Rebuttal Report of Graeme Hunter, Ph.D [DE 205-1/223] ("Motion to Strike"). These matters were referred to the undersigned by United States District Judge William P. Dimitrouleas. [DE 51]. Both motions are fully briefed, and the Court held a hearing on both motions on September 23, 2019. [DE 232]. The motions are ripe for review. For the reasons set forth below, the Court DENIES Plaintiff All-Tag's Motion to Compel [DE 203] and GRANTS IN PART and DENIES IN PART Defendant Checkpoint's Motion to Strike [DE 205-1/223].

### I. Background

The history and current procedural posture of this case is important to the Court's determination of the two pending motions. This case was filed on November 17, 2017, almost two years ago. [DE 1]. On May 4, 2018, the Court entered a scheduling order setting the trial period in

this case for January 6, 2020, with a discovery cutoff date of September 6, 2019. [DE 43]. On April 4, 2019, the Court entered an order [DE 104] setting the following expert disclosure deadlines:

| | |
|---|---|
| Plaintiff's Expert Report and Disclosures | June 21, 2019 |
| Defendant's Expert Report and Disclosures | June 22, 2019 |
| Rebuttal Expert Reports | August 5, 2019 |
| Expert Discovery Cutoff | September 11, 2019 |

On May 18, 2018, the Court amended its prior scheduling order, keeping the same trial date and pre-trial schedule, but including a notation to reflect the correct paired magistrate judge. [DE 51]. On June 5, 2019, the Court extended the discovery cut-off from September 11, 2019, to September 18, 2019. [DE 164]. Thereafter, the parties agreed to, and the Court adopted and ordered [DE 167], the following amended expert disclosure deadlines:

| | |
|---|---|
| Affirmative Expert Reports | July 17, 2019 |
| Completion of Depositions of All Experts | August 9, 2019 |
| Rebuttal Expert Reports | August 23, 2019 |
| Completion of Depositions of Rebuttal Experts | September 18, 2019 |
| Fact and Expert Discovery Cutoff | September 18, 2019 |

Thus, it is important to the Court's determination of the parties' two pending motions addressed in this Order that the expert discovery deadlines have passed, discovery is closed, substantive pre-trial motions are due October 11, 2019, *Daubert* motions are due 60 days before the start of the trial's two-week period, and the trial period begins January 6, 2020. [DE 51].

Further, this case has been extremely and unnecessarily litigious, especially in the discovery phase. The parties (and certain non-parties from whom discovery was sought) have filed countless discovery motions, responses, and replies, many under seal. The Court, in an effort to get the parties to cooperate, has required the parties to file numerous joint notices regarding the numerous discovery disputes. To keep this case on track, the undersigned has held lengthy discovery hearings on November 30, 2018 [DE 73], May 6, 2019 [DE 131], May 15, 2019 [DE 144], June 6, 2019 [DE 165], August 23, 2019 [DE 200], and September 23, 2019 [DE 232].

2

Not counting this Order, the Court has had to enter no less than 11 substantive discovery orders [DEs 75, 104, 122, 132, 134, 143, 147, 164, 166, 167, and 168], and no less than 29 procedural discovery orders [DEs 65, 68, 99, 100, 107, 109, 111, 115, 119, 129, 137, 138, 148, 155, 156, 160, 190, 192, 194, 198, 204, 210, 219, 221, 225, 226, 238, 248, and 249]. Further the parties have filed yet more discovery-related motions—after the discovery cutoff date—that remain pending. [DEs 236/239 and 237/240].

With this background in mind, the Court now turns to the parties' two pending motions that are the subject of this Order.

## II. Analysis

### a. <u>Plaintiff All-Tag's Motion to Compel [DE 203]</u>

Plaintiff All-Tag's Third Request for Production seeks documents and correspondence "between Sensormatic and Checkpoint relating to the judgment" in a garnishment action brought by Defendant Checkpoint against Plaintiff. Sensormatic is one of Defendant's other competitors. In 2001, Defendant filed a patent infringement suit against Plaintiff, Sensormatic, and other competitors. *See Checkpoint Sys., Inc. v. All-Tag Security S.A., et al.*, 315 F.Supp.2d 660 (E.D. Pa. 2004). After a trial, a jury returned a verdict for the defendants and, in 2009, Defendant was ordered to pay attorneys' fees to the defendants. *See Checkpoint Sys., Inc. v. All-Tag Security S.A.*, No. 01-CV-2223, 2011 WL 5237573 (E.D. Pa. Nov. 2, 2011). But Defendant appealed that ruling, eventually avoiding the fees assessment. Further, Defendant was entitled to reimbursement for the cost of a bond it posted to pursue appeals of the attorneys' fees assessment. *See Checkpoint Sys., Inc. v. All-Tag Security S.A., et al.*, 858 F.3d 1371 (Fed. Cir. 2017).

Defendant Checkpoint then initiated a garnishment action in this District for the cost of the bond against Plaintiff All-Tag, but not Sensormatic, Plaintiff's co-defendant in the patent litigation, which purportedly had already tendered half the cost of the bond. *See Checkpoint Sys., Inc. v. All-*

*Tag Security S.A., et al.*, No. 9:19-mc-80714 (S.D. Fla.). Sensormatic and Defendant each pursued separate recoveries against Plaintiff, with Defendant pursuing the full cost of the bond from Plaintiff individually. Plaintiff alleges Defendant and Sensormatic collaborated in pursuing Plaintiff separately as part of Defendant Checkpoint's "latest anti-competitive tactic" intended to "freeze All-Tag's assets." [DE 203, p.1]. This garnishment action is the focus of Plaintiff's motion and the disputed discovery requests.

Defendant objects to Plaintiff's requests for production related to the prior garnishment action as irrelevant. In Defendant's view, the garnishment action is unrelated to any of the allegations in Plaintiff's Second Amended Complaint. This is because, Plaintiff "would never be able to argue that a collection proceeding initiated to enforce a lawfully entered judgment could be a means of anticompetitive conduct." [DE 208, p.1]. To Defendant, Plaintiff's request for production amounts to "an attempt to harass Checkpoint about irrelevant collateral issues that are nowhere alleged in All-Tag's pleadings." *Id.*

Alternatively, Defendant contends that, even if the garnishment action is relevant here *and* Plaintiff raised the issue in its pleadings, it is "immunized" from any potential antitrust liability resulting from the garnishment action because of the *Noerr-Pennington* doctrine, which "shields a defendant from antitrust liability for resorting to litigation to obtain from a court an anticompetitive outcome." *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1233 (11th Cir. 2005). Thus, "the discovery All-Tag seeks is pointless and has no value to this case" as "Checkpoint cannot be subject to potential antitrust liability for simply exercising its lawful right to pursue" the garnishment action against Plaintiff. [DE 208, p.3].

Plaintiff All-Tag argues in reply that (1) coordination between Defendant Checkpoint and Sensormatic in the previous garnishment action is relevant "as it reveals Checkpoint's years-long campaign of anti-competitive conduct against its competitors" and (2) Defendant is not entitled to

immunity regarding the prior action under *Noerr-Pennington* because Defendant misrepresented to the Court in the garnishment action that Plaintiff owed it the entire cost of the bond, even though Sensormatic purportedly had already tendered half of it. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 955 (11th Cir. 1986). Plaintiff alleges Defendant did not disclose Sensormatic's tender to the Court, nor did it disclose its collaboration with Sensormatic. Thus, Plaintiff argues Defendant is not immune to antitrust liability resulting from the garnishment action, and so the requested production is relevant and should be produced.

The Court finds that the *Noerr-Pennington* doctrine applies. In *Pennington*, 381 U.S. at 513, the United States Court of Appeals for the Eleventh Circuit summarized the types of cases in which courts should exempt antitrust defendants from liability for obtaining from a court an anticompetitive outcome:

> Opponents before agencies or courts often think poorly of the other's tactics, motions, or defenses and may readily call them baseless. One claim, which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused. That may be a difficult line to discern and draw. But once it is drawn, the case is established that abuse of those processes produced an illegal result, effectively barring respondents from access to the agencies and courts. Insofar as the administrative or judicial processes are involved, actions of that kind cannot acquire immunity by seeking refuge under the umbrella of "political expression."

*Pennington*, 381 U.S. at 513; *see, e.g., St. Joseph's Hosp., Inc.*, 795 F.2d at 955. Here, the Court finds that Defendant Checkpoint's conduct in the garnishment litigation between it and All-Tag to be far from "a pattern of baseless, repetitive claims . . . which leads the factfinder to conclude that the administrative and judicial processes have been abused." *Pennington*, 381 U.S. at 513. Indeed, as Defendant argues, if Plaintiff All-Tag wished to challenge the garnishment action, the proper time and place to do so was in that action, not here. Instead, not only did Plaintiff not challenge the garnishment action as a misrepresentation, it *agreed* to a final judgment of garnishment against

5

itself for the full amount owed to Defendant. *See Checkpoint Sys., Inc. v. All-Tag Security S.A., et al.*, No. 9:19-mc-80714 (S.D. Fla.) at [DE 27].

Plaintiff cannot now accuse Defendant of engaging in fraud in the garnishment action and seek to attack that judgment in this action after it agreed to that judgment and failed to challenge it as fraudulent. Although Plaintiff may "think poorly" of Defendant's tactics and even "think [them] baseless," it has failed to establish that Defendant's actions "effectively [barred] [Plaintiff] from access to the agencies and courts" or that the garnishment action "produced an illegal result[.]" *Pennington*, 381 U.S. at 513. Thus, Defendant is immunized from antitrust liability for resorting to litigation to collect on its judgment against Plaintiff and Plaintiff's requested discovery is irrelevant to this antitrust action.

The Court also finds that the discovery Plaintiff All-Tag seeks by way of its motion is irrelevant and disproportionate under Fed. R. Civ. P. 26(b)(1), *see Hankinson v. R.T.G. Furniture Corp.*, No. 15-cv-81139, 2016 WL 1182768, at *1 (S.D. Fla. Mar. 28, 2016) (discussing relevance); *Tiger v. Dynamic Sports Nutrition, LLC*, No. 15-cv-1701, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016) (discussing proportionality), and "would cause the parties to run down a rabbit hole chasing irrelevant information on collateral matters, resulting in the needless and wasteful expenditure of time and money by the parties." *O'Boyle v. Sweetapple*, No. 14-cv-81250, 2016 WL 492655, at *5 (S.D. Fla. Feb. 8, 2016). Further, requiring Defendant to produce the discovery sought would be unduly burdensome, expensive, and likely cause a delay in this case.

For all the above reasons, Plaintiff All-Tag's motion to compel discovery [DE 203] is DENIED.

### b. Defendant Checkpoint's Motion to Strike [DE 205-1/223]

Turning to Defendant Checkpoint's Motion to Strike Plaintiff's New Affirmative Opinion Improperly and Untimely Offered in the Rebuttal Report of Graeme Hunter, Ph.D [DE 205-1/223],

Defendant argues the Court should strike Section IV of the rebuttal report of Plaintiff All-Tag's expert witness, Dr. Graeme Hunter, as his report is untimely and raises an entirely new theory of damages. Plaintiff contends its report was timely and that its Second Amended Complaint properly pled alternative theories of damages.

The Court finds that Dr. Hunter's rebuttal expert report is untimely. Although Plaintiff argues Dr. Hunter's report is properly considered a "rebuttal" report, Dr. Hunter himself made clear that Sections I, II, and III of his opinion are intended to rebut the report of one of Defendant's experts, Ms. Irwin, while Section IV of his report is "an affirmative report [] based on Ms. Irwin's approach." [DE 205-3, p.9]. Thus, Section IV of Dr. Hunter's report is clearly a new affirmative opinion.

A prior Court order required the parties to serve each other with their affirmative expert reports by July 17, 2019, and their rebuttal expert reports by August 23, 2019. [DE 167]. On July 17, 2019, Plaintiff served Defendant with Dr. Hunter's affirmative expert report. Then, on August 23, 2019, Plaintiff served Defendant with Dr. Hunter's purported rebuttal report. As discussed above, Section IV of Dr. Hunter's report is properly considered a new affirmative expert opinion, rather than a rebuttal report. Thus, Plaintiff was required to serve Defendant with it by July 17, 2019, the affirmative expert report deadline, not August 23, 2019, the rebuttal report deadline.[1]

Having decided Plaintiff's expert report was untimely, the Court must consider what remedy to impose. "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise . . . compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (internal citations omitted). Fed. R. Civ. P. 37(c)(1) instructs that where "a party

---

[1] If Plaintiff needed an extension of time to comply fully with the July 17, 2019, affirmative expert report disclosure deadline, it should have moved for such an extension prior to the July 17, 2019, deadline, rather than attempt to slip an affirmative expert opinion into a rebuttal report on August 23, 2019.

7

fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . unless the failure was substantially justified or harmless." *See, e.g., Potish v. R.J. Reynolds Tobacco Co.*, 9:15-cv-81171, 2017 WL 5952892, at *2-4 (S.D. Fla. Nov. 30, 2017); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 09-cv-60351, 2010 WL 1837724, at *3 (S.D. Fla. May 3, 2010). The burden of showing that a failure to disclose or comply was substantially justified or harmless is on the non-disclosing party. *Mitchell v. Ford Motor Co.*, 318 Fed.Appx. 821, 824 (11th Cir. 2009). Exclusion is also an appropriate remedy under Fed. R. Civ. P. 16(b), which authorizes the court to control and expedite pretrial discovery through a scheduling order and gives the court broad discretion to preserve the integrity and purpose of a pretrial order, including the exclusion of evidence. *Companhia Energetic Potiguar v. Caterpillar Inc.*, No. 14-cv-24277, 2016 WL 3102225, at *5 (S.D. Fla. June 2, 2016).

Plaintiff All-Tag argues its failure to timely disclose Section IV of Dr. Hunter's report is harmless as "there was nothing in Dr. Hunter's rebuttal report that causes any prejudice or harm to Checkpoint's preparation for the remedy phase of this case." [DE 214, p.4]. But this is clearly wrong. As discussed above, Section IV of Dr. Hunter's report is a new affirmative expert opinion that Plaintiff was required to serve on Defendant before the July 17, 2019, affirmative expert report deadline. Instead, it served his report one month later on August 23, 2019. Per the parties' joint agreement and the Court's prior Order [DE 167], the report (or at least Section IV of the report) was due July 17, 2019, and discovery in this case closed on September 18, 2019. [DE 167]. Thus, Defendant Checkpoint no longer has any time left to rebut Dr. Hunter's affirmative opinion.

Allowing Plaintiff to now use Section IV of Dr. Hunter's report would be harmful and severely prejudicial to Defendant. Per the affidavit of Kristen Sofia, Defendant's US Controller, if Defendant is required to respond to Section IV of Dr. Hunter's report, it would take its staff three months to gather the necessary data and require it to employ two full-time staff accountants to do

so. [DE 223-3, p.3]. If the Court were to instead give Defendant a fair opportunity to rebut Section IV of Dr. Hunter's report, it would significantly delay this case, require a modification of certain pre-trial deadlines and, most importantly, the trial date, and unfairly absolve Plaintiff of violating the Court's June 7, 2019 Order [DE 167]. This case has been pending for almost two years. Plaintiff All-Tag has had plenty of time to gather experts and provide their reports in a timely manner. Plaintiff's delay in complying with its expert disclosure obligations will not be permitted. It is time for the discovery and expert disclosure stage of this case to be closed so the Court can focus on substantive motions and trial.

### III. Conclusion

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff All-Tag's Motion to Compel More Complete Answers to Its Third Set of Interrogatories and Documents Responsive to Its Third Request for Production of Documents [DE 203] is **DENIED**.

2. Defendant Checkpoint's Motion to Strike All-Tag's New Affirmative Opinion Improperly and Untimely Offered in the Rebuttal Report of Graeme Hunter, Ph.D. [DE 205-1/223] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

    Section IV of the Rebuttal Report of Graeme Hunter, Ph.D is stricken. Plaintiff may not rely upon or otherwise use, either directly or indirectly, Section IV of the Rebuttal Report of Graeme Hunter, Ph.D, at any point in this case, including in dispositive motions, responses, or at trial.

**DONE and ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 7th day of October, 2019.

WILLIAM MATTHEWMAN
United States Magistrate Judge