# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALL-TAG CORP., | ) |
| | ) |
| Plaintiff, | ) Case No. 17 CV 81261-WPD |
| | ) |
| v. | ) Judge William P. Dimitrouleas |
| | ) |
| CHECKPOINT SYSTEMS, INC., | ) **HEARING REQUESTED** |
| | ) |
| Defendant. | ) |
| | ) |

# CHECKPOINT SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II OF CHECKPOINT'S SECOND AMENDED COUNTERCLAIM AND INCORPORATED MEMORANDUM OF LAW

Defendant Checkpoint Systems, Inc. ("Checkpoint") respectfully moves for summary judgment on Count I and Count II of its Second Amended Counterclaim pursuant to Federal Rule of Civil Procedure 56 and L.R. 56.1. In support of this Motion, Checkpoint submits its Statement of Material Facts and incorporated memorandum of law.

## INTRODUCTION

As demonstrated in Checkpoint's Motion for Judgment on the Pleadings,[1] there can be no dispute that under the 2014 settlement and release ("Settlement Agreement"), All-Tag Corp. ("All-Tag"): (1) irrevocably renounced and disclaimed any claims that it could have brought in the 2014 litigation; and (2) expressly represented and warranted to Checkpoint that it did not have, possess, or own any other claims that were not subject to the settlement and release. Checkpoint is filing this motion in the event the Court converts Checkpoint's Motion for Judgment on the Pleadings to a Rule 56(a) motion. Indeed, if this Court were to decide Checkpoint's Motion under Rule 56(a), and not under Rule 12(c), the result remains the same: All-Tag previously released the claims it has brought in this lawsuit and breached its representations and warranties to Checkpoint. There is no genuine dispute of fact precluding summary judgment because the terms of the Settlement Agreement are clear and unambiguous, All-Tag knew about and could have brought its current claims in the 2014 litigation, and Checkpoint has been damaged. Accordingly, Checkpoint is entitled to summary judgment on its counterclaims—for breach of contract (Counterclaim Count I) and breach of representations and warranties (Counterclaim Count II).

## FACTUAL BACKGROUND

Checkpoint incorporates by references its Statement of Material Facts (hereinafter "SOF ¶ __") filed with this Motion pursuant to Local Rule 56.1(a).

## MEMORANDUM OF LAW

### I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could find for

---

[1] On September 6, 2019, Checkpoint filed its Motion for Judgment on the Pleadings On Count I and Count II of Checkpoint's Second Amended Counterclaim and Incorporated Memorandum of Law. [DE 207/212.] The briefing is complete. [DE 233, DE 257.]

the nonmoving party, and a fact is material only if it could affect the outcome of the case under the controlling law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). Here, there are no disputed issues of fact and Checkpoint is entitled to summary judgment.

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON COUNTERCLAIM COUNT I.

Count I of Checkpoint's Counterclaim brings a breach of contract claim for All-Tag's breach of the Settlement Agreement. An agreement to settle litigation is "governed by [the general] principles of contract law."[2] *Brundage v. Estate of Carambio*, 951 A.2d 947, 961 (N.J. 2008) (quoting *Thompson v. City of Atl. City*, 921 A.2d 427, 439 (N.J. 2007)); *see also Nolan v. Lee Ho,* 577 A.2d 143, 146 (N.J. 1990) ("A settlement agreement between parties to a lawsuit is a contract."). The essential elements for a breach of contract claim are "a valid contract, defective performance by the defendant, and resulting damages." *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985).

### A. All-Tag Released Its Claims Against Checkpoint.

If "the terms of a contract are clear and unambiguous there is no room for interpretation or construction," and the court therefore "must enforce those terms as written." *Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc.*, 592 A.2d 647, 650 (N.J. Super. Ct. App. Div. 1991). A court should examine the contract as a whole and must not torture its language to create ambiguity where none exists. *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002). Where "there is no ambiguity in the agreement as written with respect to [an] issue, there is no need for parol or extrinsic evidence[.]" *Chance v. McCann*, 564, 966 A.2d 29, 41 (N.J. Super. Ct. App. Div. 2009).

Pursuant to the Settlement Agreement, and in clear and unambiguous terms,  (SOF ¶ 3.) (emphasis added.) The Settlement Agreement

---

[2] The Settlement Agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (SOF Ex. 5, § 6.1.)

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████████████████████ (SOF ¶ 3.)

(emphasis added.)

New Jersey has a "strong public policy in favor of the settlement of litigation." *Gere v. Louis*, 38 A.3d 591, 600 (N.J. 2012). "Therefore, [New Jersey] courts have actively encouraged litigants to settle their disputes[,]" *Puder v. Buechel*, 874 A.2d 534, 539-40 (N.J. 2005), recognizing that the parties are most informed of their own interests, and are best positioned to resolve their disputes in a manner that is acceptable to them. *Gere*, 38 A.3d at 600. A release is binding and will only be set aside where there is fraud, duress, coercion, or mutual mistake concerning the existence of a party's injuries. *Wojcik v. Pollock,* 235 A.2d 58, 61 (N.J. Super. Ct. Law Div. 1967). "A general release, not restricted by its terms to particular claims or demands, ordinarily covers all claims and demands due at the time of its execution and within the contemplation of the parties." *Bilotti v. Accurate Forming Corp.*, 188 A.2d 24, 35 (N.J. 1963); *accord Mulhern v. Rogers,* 636 F. Supp. 323, 325 (S.D. Fla. 1986).

As the court held in *Bilotti*, All-Tag's release of Checkpoint is the kind of general release "not restricted by its terms to particular claims or demands" and covers "all claims and demands due at the time of its execution and within the contemplation of the parties." *See Bilotti*, 188 A.2d. at 35. When a release's language applies broadly, as here, courts generally do not permit exceptions. *Isetts v. Borough of Roseland*, 835 A.2d 330, 335-36 (N.J. Super. Ct. App. Div. 2003) ("[W]e certainly agree that the phrase 'any and all' allows for no exception."). Indeed, under New Jersey law, a general release of "any and all" claims may include claims that the releasing party is not aware of or that are not mentioned in the release. *See, e.g.*, *Giaccone v. Canopius U.S. Ins. Co.*, 133 F. Supp. 3d 668, 674-75 (D.N.J. 2015).

Accordingly, there is no genuine issue of material fact that the Settlement Agreement and the clear and unambiguous releases contained therein constitute valid and enforceable agreements between the parties.

### B. All-Tag's Release Was Not Limited To Patent Claims.

Although the First and Second Litigations related to patent infringement claims brought by All-Tag against Checkpoint, the Settlement Agreement was intended to, and did, release not just the patent claims, but ***all*** claims between the parties. As the recitals to the Settlement Agreement

3

note, ▌

▌ (SOF Ex A, p. 1.) (emphasis added.)

To that end, the Settlement Agreement contains two release provisions.  ***First***, ▌

▌[3] (SOF Ex. 5, § 3.1.)

***Second***, ▌

▌ (SOF Ex. 5, § 3.1.)

These two releases—▌

▌—must mean different things.  Otherwise, ▌

▌ would have been wholly unnecessary and surplus language if the Settlement Agreement sought to release only patent claims.  So too would the Settlement Agreement's ▌

▌ This definition is far broader than the specific patent claims that All-Tag actually asserted in the First and Second Litigations.

The *Giaccone* case demonstrates that there is nothing surprising about parties, as here, including both a specific and a general release in a settlement agreement.  In *Giaccone* the plaintiff filed a claim related to damage from Superstorm Sandy, and eventually entered into a settlement with the defendant in exchange for a release. *Giaccone*, 133 F. Supp. 3d at 671.  The settlement included both a specific release and a general release, as here:

> The Settlement Agreement defines, at the outset, the damage caused on October 29, 2012 as the "Subject Loss," and specifically provides that Plaintiffs forever release Defendant from "any and all claims" associated with this Loss. … Nevertheless, the Agreement goes on to provide that Plaintiffs *also* agreed to release Defendant from "any and all claims and rights which [they] may have against [Defendant]," including those of which Plaintiffs were "not aware and those not mentioned in" the Settlement Agreement. … The Settlement Agreement then reinforces the broad scope of this release by reiterating that Plaintiffs "specifically release[ ] the following

---

[3] Following the first release is an additional clarification with respect to the first release: ▌

▌ (SOF Ex. 5, § 3.1.)  By its terms, this clarification could only apply to the first release and not the second.

4

>claims: Any and all claims that were made or could have been made under or against [the] insurance policy issued by" Defendant. … Indeed, Plaintiffs "specifically agreed" that, as of the date of execution, they had "no remaining claims of any kind" under the Policy.

*Id.* at 674-75 (emphasis in original). Thereafter, the plaintiff filed another claim nearly a year after executing the settlement, this time based on damage sustained during a subsequent storm on January 31, 2013. *Id.* at 672.

The claim was litigated, and the plaintiff argued that the settlement agreement only contained a specific release pertaining to damage arising out of the "Subject Loss" of October 29, 2012—*i.e.*, as a result of Superstorm Sandy. *Id.* at 675. The district court rejected that argument, stating that the agreement "could not be clearer in its broad expression of the scope of the released claims, and Plaintiffs' narrow interpretation would impermissibly render multiple provisions of the Agreement meaningless." *Id.* at 675. Applying New Jersey law, the court held that a claim that did not involve damage arising out of the Subject Loss of October 29, 2012 was nonetheless released by virtue of the settlement agreement's general release. *Id.* at 675. *See also In re Tri-City Health Centre, Inc.*, No. 02-10866, 2003 WL 21418108, at *4 (5th Cir. June 10, 2003) (non-precedential) ("There is nothing inherently ambiguous about a settlement agreement that contains both a general release of claims between parties and specific releases regarding some claims that would fall within the terms of the general release.")

The same result applies here. All-Tag and Checkpoint agreed to a specific release (to release the patent infringement claims at issue in the lawsuit) and a general release (to release any other claims that All-Tag could have brought whether or not they were asserted or even known).

### C. All-Tag Breached The Settlement Agreement.

Despite having released its claims against Checkpoint, All-Tag brought this lawsuit a short time later and thus breached the Settlement Agreement.

Indeed, All-Tag's Second Amended Complaint ("SAC"), itself, shows that instead of filing serial lawsuits against Checkpoint, All-Tag could have brought its current claims during the First and Second Litigations. The SAC alleges that "[f]or over forty years, Checkpoint has enjoyed a monopoly in the sale of RF labels to retailers such as drug stores, mass merchandisers and discount or 'dollar' stores." [DE 180 at ¶ 3.] The SAC also alleges that Checkpoint "has exploited its market dominance and monopoly power to lock in customers and foreclose the RF label markets from All-Tag and other competitors" since All-Tag entered the market in 2000. (*Id.* at ¶¶ 4-5.)

5

All-Tag alleged specific examples of purported exclusive dealing and predatory bundling that it contends occurred in 2010 and 2014. (*Id.* at ¶¶ 43-44.) With regard to its allegations of deceptive marketing, All-Tag's allegations include examples of purported deceptive practices that occurred in 2004, 2009, 2010, and 2012. (*Id.* at ¶¶ 56-62.)

Each Count of the SAC incorporates the above cited paragraphs and expressly refers to conduct that occurred, at least in part, in 2014 or earlier. (*See Id.* at ¶¶ 89, 93, 108, 114, 118 (exclusive dealing, predatory bundling, misrepresentations), ¶ 99 (exclusive dealing, predatory bundling), ¶¶ 102, 124, 125 (misrepresentations).) Consequently, every count in All-Tag's SAC is a claim that it could have brought in the First and Second Litigations. Through the Settlement Agreement, All-Tag released those claims. As such, when it brought those claims in this case, it breached the Settlement Agreement and subjected Checkpoint to double liability for claims that Checkpoint has already paid to resolve.

Moreover, the undisputed facts demonstrate that All-Tag could have brought the claims it asserts here in the First and Second Litigation. All-Tag has argued to the Court that its litigation here is similar to litigation that a different competitor, USS, brought against Checkpoint eight years ago. (SOF ¶ 7.) ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (SOF ¶ 7.) ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (SOF ¶ 8.) In his deposition in this case, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (SOF ¶ 8.)

As for its deceptive conduct claims, the undisputed facts demonstrate that All-Tag knew about the claims it asserts here at least by December 2014. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (SOF ¶ 6.) All-Tag claimed it was damaged by the conduct. (SOF ¶ 6.) ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (SOF

6



¶¶ 9, 10.) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (SOF ¶ 9.)

The undisputed facts also demonstrate that ▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇ (SOF ¶ 11.) Here, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (SOF ¶ 11.) All-Tag, in other words, is using this lawsuit to double collect on damages that it was already paid and claims it unequivocally renounced.

Even if the Settlement Agreement were limited to known claims (which it is not), there is no genuine issue of material fact that All-Tag knew of the claims it asserts here at least by December 2014, if not earlier, and therefore could have (and should have) brought them in the First and Second Litigations. All-Tag has released those claims. *See Bilotti,* 188 A.2d at 35; *accord Mulhern,* 636 F. Supp. at 325.

## III. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON COUNTERCLAIM COUNT II.

Count II of Checkpoint's Counterclaim brings a breach of representations and warranties claim based on All-Tag's breach of the representations and warranties in the Settlement Agreement. In the Settlement Agreement, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (SOF Ex. 5, § 5.1.) For the reasons stated above, All-Tag breached those representations and warranties by filing this lawsuit less than three years after the Settlement Agreement was signed.

## IV. THE COURT SHOULD RESERVE RULING ON THE AMOUNT OF DAMAGES AND OTHER RELIEF.

As with any breach of contract, the breach of a settlement agreement typically allows for all judicial remedies, including a suit for damages. *Hannigan v. Township of Old Bridge*, 672 A.2d 257, 260-61 (N.J. Super. Ct. App. Div. 1996) (holding that a settlement agreement between parties is a contract that a court enforces as it does other contracts, so plaintiff has a right to sue for damages for breach of contract). There are three general categories of judicial remedies for breach

of contract: "restitution, compensatory damages, and performance." *Donovan v. Bachstadt,* 453 A.2d 160, 165 (N.J. 1982).

Here, Checkpoint has been damaged by All-Tag's breach of the Settlement Agreement, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in exchange for the releases contained therein and in reliance on All-Tag's representations and warranties. Checkpoint has also been damaged by incurring, and continuing to incur, fees, costs, and expenses to defend against the claims in All-Tag's Second Amended Complaint. *Cf. Sun Life Assurance Co. of Can. v. Imperial Premium*, 904 F.3d 1197, 1225 (11th Cir. 2018) (Jordan, J., concurring) (citing *Borbely v. Nationwide Mut. Ins. Co.*, 547 F. Supp. 959, 977 (D.N.J. 1981), for the proposition that New Jersey is a jurisdiction in which the measure of damages for the breach of an agreement not to sue is "attorney's fees and costs incurred in defending against the claim that was precluded.").

Accordingly, Checkpoint requests summary judgment on liability for Counts I and II of its Counterclaim and requests that damages and other remedies be reserved for later ruling and/or trial. *See CardUSA, Inc. v. Magnetic Ticket and Label Corp.*, Case No. 06-60747-CIV-HURLEY/HOPKINS, 2007 WL 9700816, at *5 (S.D. Fla. May 7, 2007) (granting partial summary judgment on breach of contract and reserving ruling on the amount of damages and other remedies); *DIRECTV, Inc. v. Milisic*, No. 3:11-cv-66-TCB, 2012 WL 12873773, * 4 (N.D. Ga. Dec. 3, 2012) (granting motion for partial summary judgment on breach of contract "with the amount of damages to be determined at trial.")

## V. CONCLUSION

For the reasons set forth above, Checkpoint respectfully requests that judgment be entered in Checkpoint's favor and against All-Tag on the question of liability for breach of contract for Count I of Checkpoint's counterclaims, and on the question of liability for breach of representations and warranties for Count II of Checkpoint's counterclaims. Checkpoint also seeks such other and further relief as justice may require, including but not limited to a trial or hearing for proof of the amount of Checkpoint's damages.

### REQUEST FOR HEARING

In accordance with Local Rule 7.1(b)(2), Checkpoint, through its attorneys, respectfully requests oral argument on its Motion for Judgment on the Pleadings.

Dated: October 11, 2019                                      Respectfully submitted,

/s/ Gavin C. Gaukroger

| | |
|---|---|
| Gavin C. Gaukroger (Fla. Bar. No. 768489) | Robert J. Palmersheim (*pro hac vice*) |
| Kenneth W. Waterway (Fla. Bar. No. 994235) | Anand C. Mathew (*pro hac vice*) |
| BERGER SINGERMAN LLP | Julie M. Mallen (*pro hac vice*) |
| 350 East Las Olas Boulevard, Suite 1000 | PALMERSHEIM & MATHEW LLP |
| Fort Lauderdale, Florida 33301 | 401 N. Franklin Street, Suite 4S |
| Tel: (954) 525-9900 | Chicago, Illinois 60654 |
| Fax: (954) 523-2872 | Tel: (312) 319-1791 |
| ggaukroger@bergersingerman.com | Fax: (312) 878-2890 |
| kwaterway@bergersingerman.com | rjp@thepmlawfirm.com |
| | acm@thepmlawfirm.com |
| | jmm@thepmlawfirm.com |

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on October 11, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF which will generate and serve a Notice of Electronic Filing to the following:

Damon Suden
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
212-808-7800
Email: dsuden@KelleyDrye.com

Julian Solotorovsky
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
312-857-7070
Email: jsolotorovsky@KelleyDrye.com

William A. MacLeod
KELLEY DRYE & WARREN LLP
3050 K Street NW, Suite 400
Washington, DC 20007
202-342-8811
Email: wmacleod@kelleydrye.com

Christopher W. Kammerer
John F. Mariani
KAMMERER MARIANI PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
561-990-1592
Email: ckammerer@kammerermariani.com
Email: jmariani@kammerermariani.com

John B. Williams
WILLIAMS LOPATTO PLLC
1707 L Street NW, Suite 550
Washington, DC 20036
202-296-1611
Email: jbwilliams@williamslopatto.com

                                                  */s/ Gavin C. Gaukroger*