**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ALL-TAG CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17 CV 81261-WPD |
| v. | ) |
| | ) Judge William P. Dimitrouleas |
| CHECKPOINT SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

**ALL-TAG'S OPPOSITION TO CHECKPOINT'S MOTION FOR SUMMARY
JUDGMENT ON COUNTS I AND II OF CHECKPOINT'S SECOND AMENDED
<u>COUNTERCLAIM AND INCORPORATED MEMORANDUM OF LAW</u>**

Plaintiff All-Tag Corp. ("All-Tag") respectfully submits this opposition memorandum to Defendant Checkpoint Systems, Inc. ("Checkpoint" or "Defendant")'s Motion for Summary Judgment on Count I and Count II of its Second Amended Counterclaim.

## **INTRODUCTION**

Checkpoint moves for summary judgment on counts I and II of its counterclaims which allege that All-Tag violated a December 2014 Settlement Agreement and Release regarding a prior patent infringement litigation by bringing the present antitrust and false advertising lawsuit. Checkpoint is wrong, and its motion should be denied.

The plain language of the 2014 release states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Checkpoint's interpretation would also render parts of the release internally contradictory and superfluous, in violation of the doctrines of contract construction. Because Checkpoint's motion is based on a misreading of the release, its motion should be denied.

Even if there is an ambiguity in the scope of the release, the undisputed extrinsic evidence refutes Checkpoint's interpretation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Finally, even if the 2014 release covered all claims ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ Checkpoint fails to demonstrate how the claims in the present lawsuit could have been brought by All-Tag back in 2014. To the contrary, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇ As for the specific "facts" Checkpoint sets forth which supposedly demonstrate foreknowledge by All-Tag, none are undisputed and none support a finding that ▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Thus, even if the release is broader in scope, Checkpoint is still not entitled to summary judgment.

## FACTUAL BACKGROUND

All-Tag refers to and incorporates by reference its Response to Checkpoint's Statement of Material Facts Regarding Checkpoint's Motion for Summary Judgment on <u>Counts I and II of Checkpoint's Counterclaims</u>. ("Response to SOF¶ __").  All Tag also refers to and incorporates its separate Response to Checkpoint's statements of Material Facts Regarding Checkpoint's Motion for Summary Judgment on <u>All-Tag's Second Amended Complaint and Checkpoint's Second and Fifth Affirmative Defenses</u> on pages 10 and 11 of this opposition.

## MEMORANDUM OF LAW

### I.   STANDARD OF REVIEW

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of identifying those portions of the factual record, including pleadings, depositions, answers to interrogatories, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

3

In ruling on a motion for summary judgment, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *St. Charles Foods Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999), quoting *Warrior Tombigbee Transp. Co. v. MV Nan Fung*, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts"). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.  SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE CHECKPOINT MISINTERPRETS THE SETTLEMENT AGREEMENT AND RELEASE

### A.  The Release Was Limited Solely To ▮▮▮▮▮▮▮ On Its Face

Under New Jersey law, which governs here, a release – like any contract – should be interpreted according to its plain terms. *Ingersoll-Rand Co. v. Barnett*, No. 05-1636 (DRD), 2006 U.S. Dist. LEXIS 78836, at *43 (D.N.J. Oct. 26, 2006) (interpreting the release in a contractual document in accordance with its plain terms since, "in determining whether a particular clause in a plan document is ambiguous, courts must first look to the plain language of the document") (citations omitted); *Brandt v. Hogan*, No. 10-4944(FLW)(DEA), 2013 U.S. Dist. LEXIS 56508, at *20 (D.N.J. Apr. 18, 2013 ("Under New Jersey law, where the terms of a contract, including a settlement agreement, are clear, a court must enforce the unambiguous terms as written, and it has no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument.") (citations omitted). The 2014 Settlement Agreement contains a release which is clear on its face and reads as follows:

4



.

(emphasis added). As is evident from the very first sentence of the release, it ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

To avoid the plain language of the release, Checkpoint argues that Section 3.1 actually contains two different releases – one specific regarding patent claims, and one general regarding all other claims that could have been pursued. This argument finds no support in the language or structure of the release.[1] Section 3.1 is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.e.

---

[1] Even if there were two releases, the rules of construction regarding releases confirm that All-Tag did not release the claims it has now raised: "when a release contains both general and specific language, the general language will be presumed to have been used in subordination to the specific language and will be construed and limited accordingly. In other words, when specific recitals in a release are followed by general language, the specific language restricts the scope of the general release language." 66 Am. Jur. 2d., Release, § 29. Therefore, the specific release with regard to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and informs the Agreement's subsequent reference to "all claims"—language that Checkpoint is attempting to use to broaden the scope of the Agreement and bar All-Tag's claims in this litigation.

to the one and only release contained in Section 3.1. Further, those sentences concern a



Thus, if Checkpoint was correct that the last sentence was a general release of all claims that could have been pursued, then it would have been superfluous and unnecessary for the parties to specify ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬." Courts will not interpret a contract in a way that renders any provisions, especially a material one, unnecessary. *See Nw. Bergen Cty. Utilities Auth. v. Borough of Midland Park*, 254 N.J. Super. 729, 737 (Law. Div. 1992) ("effect should be given to all parts of the contract and an interpretation or construction which gives reasonable meaning to all of its provisions is preferred to one that leaves a portion of the writing useless or inexplicable."). Similarly, Checkpoint's interpretation renders Section 3.1 internally contradictory because the release would both be ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Courts will not interpret provisions of a contract to be contradictory to each other. *See Newark Publishers' Ass'n v. Newark Typographical Union*, No. 103, 22 N.J. 419, 426 (1956) ("A subsidiary provision is not so to be interpreted as to conflict with the obvious 'dominant' or 'principal' purpose of the contract."). As such, Checkpoint's reading of the release language contravenes established principles of contractual interpretation and its motion for summary judgment should be denied.

In its attempt to characterize the single release in the Settlement Agreement as two releases including a "general" release that bars All-Tag from pursuing its current claims,

Checkpoint heavily relies on *Giaccone v. Canopius*, U.S. Ins. Co., 133 F. Supp. 3d 668, 674-75 (D.N.J. 2015). But in that case, the settlement agreement contained two releases set out in different paragraphs. The first released claims arising specifically from Superstorm Sandy. The second released any and all claims "including those of which Giaccone is not aware and those not mentioned in this Agreement." *Id*. at 671; *See Giaccone v. Canopius*, 1:14-cv-06939-JBS-KMW (D.N.J.) at D.E. 3-4.  In contrast, All-Tag did not enter into two separate releases and did not release claims "not mentioned in the Agreement." Thus, if anything, *Giaconne* confirms the limited nature of All-Tag's release.

Because Checkpoint's interpretation of the release is not supported by the plain text and structure of the settlement agreement, Checkpoint's motion for summary judgment should be denied. In fact, because the settlement agreement ████████████████████ ████████████ the Court would be within its power to grant summary judgment to All-Tag on this issue. *Mt. Vernon Fire Ins. Co. v. Ayala,* No. 15-21427-CIV, 2016 WL 7626205, at *4 (S.D. Fla. May 27, 2016) ("When a motion for summary judgment is presented to the Court, it opens the entire record for consideration, and the Court may enter judgment in favor of the nonmoving party on any grounds apparent in the record, even where there is no formal cross-motion."); *Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n,* 263 F. Supp. 3d 1266, 1272 (S.D. Fla. 2016) ("[I]t is widely acknowledged that District Courts possess the power to enter summary judgment sua sponte.").

    **B.**    **Evidence of the Parties' Intent Supports All-Tag's Interpretation of the Release as** ████████████████████

The scope of a release is determined by the intention of the parties as expressed in terms of a particular instrument, considered in light of all facts and circumstances. *Bilotti v. Accurate Forming Corp.,* 39 N.J. 184 (1963). It is well-settled in New Jersey that "the construction of a

written contract is usually a legal question for the court, but where there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury." *Great Atl. & Pac. Tea Co., Inc. v. Checchio,* 335 N.J. Super. 495, 502 (App.Div. 2000) (citing *Michaels v. Brookchester, Inc.,* 26 N.J. 379, 387 (1958). Ambiguity in a contract is fatal to a motion for summary judgment. *See, e.g.*, *Grow Co. v. Chokshi*, 403 N.J. Super. 443, 476 (Super. Ct. App. Div. 2008) ("Ambiguity is determined not by adopting an interpretation preferred by the judge but by determining whether the provision in question is susceptible to at least two reasonable alternative interpretations."); *Celanese Ltd. v. Essex County Imp. Authority*, 962 A.2d 591, 601 (App. Div. 2009) ("[I]n ruling on a summary judgment motion that involves the interpretation of a contract, a court must necessarily determine whether there is any genuine issue of material fact regarding the parties' intentions.").

Here, if the Court finds that the release is ambiguous as to its scope, the undisputed evidence ▮

▮

▮

*See* Response to SOF ¶ 6. The email from Checkpoint's counsel thus confirms ▮

▮[2]

---

[2] This email also estops Checkpoint from seeking summary judgment based on an ▮

Other extrinsic evidence also supports All-Tag's interpretation of the release. ███

███

At worst, the extrinsic evidence creates an issue of fact for the jury to resolve. At best, the Court could conclude that summary judgment should be granted to All-Tag.

C. **Even Under Checkpoint's Interpretation, Summary Judgment Should Still Be Denied Because There Is No Undisputed Evidence That** ███

Even assuming that the Release was general in nature, Checkpoint has not come forward with any undisputed evidence ███ New Jersey courts have declined to interpret releases in agreements to cover future claims not in contemplation of the parties at the time of the agreement. *See Smith v. Smith*, 72 N.J. 350, 359 (1977) ("[i]n general, claims arising after the date of delivery of the instrument are not covered by it unless specifically mentioned, since they would not appear to have been within the contemplation of the parties."); *Bond v. Ingersoll-Rand Co.*, No. 08-3481(DRD), 2010 U.S. Dist. LEXIS 114658, at *45 (D.N.J. Oct. 25, 2010) ("A release ordinarily covers only claims and demands due at the time of its execution, unless the

---

███ It would be fundamentally unfair to award summary judgment in these circumstances and Checkpoint should be estopped from changing its interpretation of the agreement to suit its litigation needs.

claim or demand is specifically named."). Therefore, to obtain summary judgment, Checkpoint would need to show that All-Tag is pursuing claims in the present litigation that it could have pursued back in 2014. Checkpoint has failed to do so.

Much of the wrongdoing at issue in the present litigation ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

Moreover, evidence adduced in discovery shows that in ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████

Checkpoint also engaged in illegal anticompetitive conduct ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████.

Checkpoint ignores all of the conduct above, and more, which form the basis of the present lawsuit – none of which could possibly be subject to the release entered in 2014. Checkpoint notes that All-Tag's complaint references older examples of Checkpoint's illegal conduct, but much of that provides a historical backdrop ████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████ All-Tag did not violate a 2014 release by bringing this lawsuit.

In an effort to show that the claims in this case could have been brought by All-Tag in the patent litigation prior to December 2014, Checkpoint cites a handful of supposed undisputed facts. But none withstand scrutiny and none support Checkpoint's motion:

- ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████

████████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████



As outlined above, and in further detail in All-Tag's response to Checkpoint's Statement of Facts, none of the evidence cited by Checkpoint supports its argument that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. Thus, All-Tag did not breach the release even if it was interpreted broadly as Checkpoint urges and summary judgment should be denied.

### III. THE COURT SHOULD ALSO DENY SUMMARY JUDGMENT ON COUNTERCLAIM COUNT II

Count II of Checkpoint's Counterclaim alleges that All-Tag breached its representations and warranties in the settlement agreement because it had claims against Checkpoint when it said

it did not have such claims. As with Count I, Checkpoint's motion misinterprets the settlement agreement and the motion should be denied. The Representation and Warranties section of the Settlement Agreement (§ 5.1)   For that, and all the reasons set forth above with respect to Count I, summary judgment on Count II should also be denied.

## V. CONCLUSION

For the reasons set forth above, All-Tag respectfully requests that Checkpoint's Motion for Summary Judgment on Counts I and II of its Second Amended Counterclaim be denied and that summary judgment be granted to All-Tag as the Court deems appropriate.

Dated: October 25, 2019                     Respectfully submitted,

By: /s/ *Christopher Kammerer*
      Christopher Kammerer

Christopher William Kammerer
John F. Mariani
KAMMERER MARIANI PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
(561)-990-1592
ckammerer@kammerermariani.com
jmariani@kammerermariani.com

William MacLeod (*pro hac vice*)
Julian Solotorovsky (*pro hac vice*)
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
(312)-857-7070

13

jsolotorovsky@kelleydrye.com
wmacleod@kelleydrye.com

Damon Suden (*pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212)-808-7800
dsuden@KelleyDrye.com

John B. Williams *(pro hac vice)*
WILLIAMS LOPATTO PLLC
1707 L Street, NW Suite 550
Washington, DC 20036
(202) 296-1611
jbwilliams@williamslopatto.com
*Attorneys for Plaintiff All-Tag Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of October 2019, a true and correct copy of the foregoing was served upon the following counsel of record for Defendant via CM/ECF:

>Charles Howard Lichtman
>Gavin Gaukroger
>BERGER SINGERMAN
>Las Olas Centre II
>350 E Las Olas Boulevard
>Suite 1000
>Fort Lauderdale, FL 33301
>954-525-9900
>Fax: 523-2872
>clichtman@bergersingerman.com
>ggaukroger@bergersingerman.com
>
>Robert J. Palmersheim
>Anand C. Mathew
>Julie M. Mallen
>PALMERSHEIM & MATHEW
>401 N. FRANKLIN STREET, SUITE 4S
>CHICAGO, IL 60654
>312-319-1791
>acm@thepmlawfirm.com
>rjp@thepmlawfirm.com
>jmm@thepmlawfirm.com

By: */s/ Christopher Kammerer*
      Christopher Kammerer