## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

ALL-TAG CORP.,                           )
                                         )
            Plaintiff,                   )    Case No. 17 CV 81261-WPD
                                         )
      v.                                 )    Judge William P. Dimitrouleas
                                         )
CHECKPOINT SYSTEMS, INC.,                )    **HEARING REQUESTED**
                                         )
            Defendant.                   )
_____  )

**CHECKPOINT SYSTEMS, INC.'S REPLY TO ITS MOTION FOR SUMMARY
JUDGMENT ON ALL-TAG CORP.'S SECOND AMENDED COMPLAINT
AND CHECKPOINT'S SECOND AND FIFTH AFFIRMATIVE DEFENSES
AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

Table of Contents .................................................................................................................. i

Table of Authorities .............................................................................................................. ii

I.   The Court Should Grant Summary Judgment On All-Tag's Antitrust Claims ................... 2

    A.   Checkpoint Addressed The Section 1 Claims. ............................................................ 2

    B.   All-Tag Fails To Raise A Genuine Issue Of Fact That AM EAS Should Be
    Excluded From The Relevant Market ......................................................................... 2

    C.   All-Tag Fails To Raise A Genuine Issue Of Fact On Monopoly Power. .................... 5

    D.   All-Tag Fails To Raise A Genuine Issue Of Fact That Checkpoint Engaged In
    Anticompetitive Conduct. .......................................................................................... 7

        1.   All-Tag has no evidence that exclusive contracts foreclose competition. .............. 7

        2.   All-Tag fails to contest that Checkpoint's bundled products are not
        anticompetitive ...................................................................................................... 8

        3.   All-Tag does not dispute the heightened standard for showing false
        advertising is anticompetitive, let alone have evidence to meet it ......................... 9

        4.   All-Tag has no support for its back-door trade secrets claim ................................ 9

        5.   All-Tag's allegation of a conspiracy between Checkpoint, retailers, and source
        taggers has no support in the facts or the law ....................................................... 10

    E.   All-Tag Fails To Address Harm to Competition. ....................................................... 10

II.  The Court Should Grant Summary Judgment On All-Tag's False Advertising Claims. .. 11

    A.   All-Tag Presented No Evidence On False Advertising Claims Before 2012. ............ 12

    B.   No Presumption Of Customer Deception Exists For Misleading Advertising And
    All-Tag Has No Evidence To Show It. ...................................................................... 12

    C.   All-Tag Cannot Meet Its Burden Of Disputing The Comparison Testing ................. 12

    D.   All-Tag Has No Evidence That The Statements At Issue Were Material To A
    Single Customer's Purchasing Decision. ................................................................... 13

    E.   All-Tag Presents No Damages For Its Standalone False Advertising Claims. ........... 15

III. All-Tag Fails To Address Checkpoint's Affirmative Defenses. ..................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AAR Mfg., Inc. v. Matrix Composites, Inc.*,
    98 So. 3d 186 (Fla. 5th Dist. Ct. App. 2012)........................................................10

*Am. Key Corp. v. Cole Nat'l Corp.*,
    762 F.2d 1569 (11th Cir. 1985) ..................................................................................3

*Bellsouth Telecomm., Inc. v. Kerrigan*,
    55 F. Supp. 2d 1314 (N.D. Fla. 1999)......................................................................15

*Bentancourt v. Fla. Dept. of Corrections*,
    No. 13-cv-00287, 2014 WL 10742621 (M.D. Fla. Dec. 1, 2014) ...............................9

*Berkower v. USAA Cas. Ins. Co.*,
    No. 15-23947, 2017 WL 1250419 (S.D. Fla. Apr. 4, 2017)........................................1

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962) ...................................................................................................2

*Business Elecs. Corp. v. Sharp Elecs. Corp.*,
    485 U.S. 717 (1988) ...................................................................................................2

*Cashmere & Camel Hair Mfrs., Inst. v. Saks Fifth Ave.*,
    284 F.3d 302 (1st Cir. 2002)....................................................................................12

*Castrol, Inc. v. Quaker State Corp.*,
    977 F.2d 57 (2d Cir. 1992) .......................................................................................13

*Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*,
    797 F.3d 1248 (11th Cir. 2015) ..................................................................................2

*Evers v. Gen. Motors Corp.*,
    770 F.2d 984 (11th Cir. 1985) ....................................................................................3

*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*,
    721 F.3d 1281 (11th Cir. 2013) ..................................................................................3

*In-N-Out Burgers v. Smashburger IP Holder LLC*,
    No. SACV 17-1474, 2019 WL 1431904 (C.D. Cal. Feb. 6, 2019)............................15

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
    299 F.3d 1242 (11th Cir. 2002) ..........................................................................12, 13

*Kodak Co. v. Image Technical Servs., Inc.*,
    504 U.S. 451 (1992)...................................................................................................4

*L.H. Equity Invs., LLC v. Wade*,
    No. 09-80607, 2010 WL 11505176 (S.D. Fla. Mar. 29, 2010) ..................................3

*Levine v. Cent. Fla. Med. Affiliates, Inc.*,
    72 F.3d 1538 (11th Cir. 1996) ..................................................................................10

*Maag v. Silversea Cruises, Ltd.*,
    No. 18-21535, 2019 WL 1724044 (S.D. Fla. Apr. 18, 2019).....................................4

*McWayne, Inc. v. F.T.C.*,
  783 F.3d 814 (11th Cir. 2015) .................................................................... 6, 7, 8

*Metzler v. Bear Auto. Serv. Equip. Co.*,
  19 F. Supp. 2d 1345 (S.D. Fla. 1998) ................................................................ 5

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
  745 F. Supp. 2d 1349 (S.D. Fla. 2010) ...................................................... 11, 13

*N. Am. Med. Corp. v. Axiom Worldwide*,
  522 F.3d 1211 (11th Cir. 2008) ........................................................................ 15

*Natsource LLC v. GFI Grp., Inc.*,
  332 F. Supp. 2d 626 (S.D.N.Y. 2004) ............................................................... 9

*NW Wholesale Stationers v. Pac. Stationary*,
  472 U.S. 284 (1985) ........................................................................................ 10

*Ohio v. American Express Co.*,
  138 S.Ct. 2274 (2018) ..................................................................................... 10

*Osmose, Inc. v. Viance, LLC*,
  612 F.3d 1298 (11th Cir. 2010) ....................................................................... 13

*Picardat v. City of Miami*,
  No. 15-cv-24305, 2017 WL 1251897 (S.D. Fla. Apr. 5, 2017) ......................... 1

*Porous Media Corp. v. Pall Corp.*,
  110 F.3d 1329 (8th Cir. 1997) ......................................................................... 15

*Procaps, S.A. v. Patheon, Inc.*,
  845 F.3d 1072 (11th Cir. 2016) ....................................................................... 11

*Reis v. Universal City Dev. Partners, Ltd.*,
  442 F. Supp. 2d 1238 (M.D. Fla. 2006) ........................................................... 12

*Roberts v. Gordy*,
  359 F. Supp. 3d 1231 (S.D. Fla. 2019) ............................................................ 11

*Sherrod v. Bd. of St. Lucie Cty.*,
  635 Fed. Appx. 667 (11th Cir. 2015) ............................................................... 12

*Swiss Watch, Int'l, Inc. v. Movado Grp.*,
  No. 00-7703, 2001 WL 36270980 (S.D. Fla. June 21, 2001) .......................... 10

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1961) ........................................................................................... 7

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
  7 F.3d 986 (11th Cir. 1993) ............................................................................... 3

*U.S. v. Dentsply Int'l, Inc.*,
  399 F.3d 181 (3d Cir. 2005) ............................................................................... 7

*U.S. v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ............................................................................. 9

*Webb v. R&B Holding Co.,*
  992 F. Supp. 1382 (S.D. Fla. 1998) ........................................................................15

*Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp.,*
  No. 96-1336-JTM, 1997 WL 225966 (D. Kan. Apr. 8, 1997) ....................................9

*Zaben v. Air Prods. & Chemicals, Inc.,*
  129 F.3d 1453 (11th Cir. 1997) ...............................................................................14

**Rules**

Fed. R. Evid. 301 ..........................................................................................................11

**Treatises**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th ed. 2019)...........15

Despite multiple bites at the apple (*see* DE 319), All-Tag's Response to Checkpoint's Statement of Material Facts and its Statement of Additional Material Facts are not in compliance with Local Rule 56.1(a). Many of the "facts" All-Tag asserts are completely unrelated to the actual citations All-Tag provides. *See, e.g.,* SOF ¶¶ 23, 35, 44, 69, 92, 94-95, 104, 108, 113-118, 127-128, 134, 136-137, 139, 140(c), 140(i), 140(j). Others are accompanied by no citation to the record whatsoever. *See, e.g.,* SOF ¶¶ 56, 93-94, 96, 100, 102-103, 108-109, 111, 127, 139-140. Others are accompanied by a purported citation, but provide no specific reference to a page providing support for All-Tag's assertions. *See, e.g.,* SOF ¶¶ 70-71, 89, 91-92, 103(a), 110-111, 120, 122, 125, 127-131, 135, 136, 138, 140(a), 140(b), 140(e), 140(f), 140(g), 140(j). All of these "facts" should be stricken. *Berkower v. USAA Cas. Ins. Co.*, No. 15-23947, 2017 WL 1250419, at *3 n.3 (S.D. Fla. Apr. 4, 2017) ("To the extent any party fails to direct the Court to the record evidence in support of its asserted facts…contained in *each* sentence, the Court will not consider those assertions in deciding the Motion.") (emphasis in original, quotation omitted); *Picardat v. City of Miami*, No. 15-cv-24305, 2017 WL 1251897, at *2 (S.D. Fla. Apr. 5, 2017) (litigants ignore the local rules "at their peril" and facts not properly controverted are deemed admitted).

Notwithstanding All-Tag's failure to support its "facts" with evidence from the record, the undisputed facts compel the entry of summary judgment. ███████████████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████

Because All-Tag cannot create a genuine issue of material fact on any of its claims, summary judgment must enter.

1

## I.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON ALL-TAG'S ANTITRUST CLAIMS

### A.   Checkpoint Addressed The Section 1 Claims.

All-Tag's assertion that Checkpoint does not mention Section 1 claims is wrong. First, as Checkpoint noted, if conduct is not exclusionary for purposes of Section 2, then it also cannot be an unreasonable restraint of trade under Section 1. Mot. at 12. Second, harm to competition is a necessary element for both Section 1 and Section 2 claims. *Id.* at 20. Third, under Supreme Court law, in order to have market-wide anticompetitive effect, Checkpoint must have agreements that foreclose competition in a substantial share of the relevant market. *Id.* All of these elements were addressed in Checkpoint's Motion. Contrary to All-Tag's unsupported arguments, Checkpoint is not subject to *per se* liability for any of All-Tag's Section 1 claims. Vertical non-price fixing agreements are analyzed under a "rule of reason" standard. *See Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 724 (1988); *see also* DE 33 at 8 ("Section One claims that do not allege *per se* antitrust violations, like the instant case, are analyzed under the 'rule of reason'").

### B.   All-Tag Fails To Raise A Genuine Issue Of Fact That AM EAS Should Be Excluded From The Relevant Market.

All-Tag concedes that AM and RF EAS serve the same purpose for retailers—anti-shoplifting—but asserts that they are not in the same market because ███████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████ Even if all of this were true (of which All-Tag cites no evidence), AM and RF EAS would be in the same market if AM EAS nevertheless competed against RF EAS and thus provided a price constraint on RF EAS.[1] *Brown Shoe* teaches that courts must draw product markets "with sufficient breadth to include the competing products…and to recognize competition where, in fact, competition exists." *Brown Shoe Co. v. United States*, 370 U.S. 294, 326 (1962); *see also Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1263 (11th Cir. 2015) (competitors which have the ability—actual or potential—to take significant business away from each other are in the same product market).

---

[1] All-Tag's analogy to cars and bicycles is inapt. Consumers generally do not compete bicycles against cars at car dealerships (or bike shops). They might, however, compete electric cars against luxury gas sedans, even though one type is more expensive, uses a different technology, and requires a different supporting system. Competition, not feature differences, define a market.

With one inconsequential exception, All-Tag does not dispute a ***single fact*** cited in Section II(A) of Checkpoint's Motion.[2] While market definition *can* be a fact question, where, as here,



SOF ¶¶ 12-14 (undisputed); *L.H. Equity Invs., LLC v. Wade*, No. 09-80607, 2010 WL 11505176, at *3 (S.D. Fla. Mar. 29, 2010) ("[P]roposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor…is legally insufficient.") (quotation omitted); *Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1578-79 (11th Cir. 1985) (affirming summary judgment based on inadequate factual basis for conclusory opinion of expert on relevant market); *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 721 F.3d 1281, 1285-86 (11th Cir. 2013) (affirming summary judgment based on failure to include alternative products in the relevant market).[3]

.[4] *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[A] party may not avoid summary judgment solely on the basis of an expert's

---

2 

3 All-Tag relies on *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986 (11th Cir. 1993), but that was not a summary judgment case. Nothing in that case precludes courts from granting summary judgment where the undisputed evidence shows the alleged relevant market is deficient.

4

opinion that fails to provide specific facts from the record to support its conclusory allegations");
*Am. Key Corp.*, 762 F.3d at 1580 ("An expert's opinion that lacks any credible support does not create an issue of fact."); *Maag v. Silversea Cruises, Ltd.*, No. 18-21535, 2019 WL 1724044, at *5 (S.D. Fla. Apr. 18, 2019) ("Theoretical speculations, unsupported assumptions, and conclusory allegations advanced by expert…are [not] entitled to any weight when raised in opposition to a motion for summary judgment.") (internal citation omitted).



Not a single retailer—not one—has testified that it cannot use AM for its anti-shoplifting needs.

All-Tag's argument that competition for EAS systems is irrelevant because a separate market exists for aftermarket products under *Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992) is, frankly, incredible given that in response to Checkpoint's motion to dismiss nearly two years ago, All-Tag told this Court: "Inherent in Checkpoint's argument is that All-Tag is attempting to plead the type of market that was defined in *Kodak*, but All-Tag is not…The intricacies of *Kodak*—like primary markets and aftermarkets—simply do not apply." DE 25 at 3. As Checkpoint directed the Court two years ago, post-*Kodak* courts in this Circuit and elsewhere have rejected attempts to define a narrow market based solely on an aftermarket product a customer

---

5

must use due to initial choice of equipment and switching costs. DE 22 at 6-10; *Metzler v. Bear Auto. Serv. Equip. Co.*, 19 F. Supp. 2d 1345, 1353 (S.D. Fla. 1998) (following the "holdings of the First, Third, Sixth, and Seventh Circuits, as well as numerous federal courts and commentators"). The very first requirement of post-*Kodak* courts is that the defendant have market power in the primary market—the equipment that makes use of aftermarket products or services necessary.[6] *Id.* at 1358 (rejecting argument that relevant market was limited to aftermarket parts and service and granting summary judgment on Section 1 and 2 claims based on lack of market power in the primary equipment market). ██████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

**C.   All-Tag Fails To Raise A Genuine Issue Of Fact On Monopoly Power.**

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

---

[6] Again, All-Tag's analogy is misplaced. While customers may not buy new printers when their ink runs low, if manufacturers raised prices for the ink used by that printer, customers would simply buy another printer that used different ink. So too here. If RF labels become too expensive, customers would simply buy AM systems and use AM labels. ███████████████████
███████████████████████████████████████████████████████
██████████████████████████████████

[7] █████████████████████████████████████████████████████

[8] █████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

As reflected in the cases Checkpoint cited (none of which All-Tag disputes), monopoly power is the power to ***control prices*** because other competitors cannot expand their output to challenge the high price (because they are not operating at scale) or cannot enter the market (because barriers to entry exist). ██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[9] As *McWayne, Inc. v. F.T.C.*, 783 F.3d 814, 832 (11th Cir. 2015), notes, exclusive contracts can constitute a barrier when they allow "a monopolist to maintain monopoly power by raising its rivals costs' sufficiently to prevent them from growing into effective competitors."

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████. Even a cursory review of the "evidence" All-Tag cites

reveals that it is insufficient to create a genuine issue of material fact.

    **D.**    **All-Tag Fails To Raise A Genuine Issue Of Fact That Checkpoint Engaged In Anticompetitive Conduct.**

        **1.**    **All-Tag has no evidence that exclusive contracts foreclose competition.**

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

Exclusive contracts are not illegal unless they "foreclose competition in a substantial share

of the line of commerce affected." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327

(1961). "[T]he opportunities for other traders to enter into or remain in that market must be

significantly limited." *Id.* at 328. ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

Even if All-Tag had support for its arguments, the two cases it relies on, *McWayne, Inc. v.

F.T.C.*, 783 F.3d 814 (11th Cir. 2015), and *U.S. v. Dentsply Int'l, Inc.*, 399 F.3d 181 (3d Cir. 2005),

are readily distinguishable. Both cases involved exclusive contracts with distributors, not, as here,

direct sales to customers. *See McWayne, Inc.*, 783 F.3d at 834 (noting that *Dentsply* distinguished

opposing cases by noting that those situations primarily involved markets in which firms could viably sell directly to consumers and that likewise in the case at hand distributors were essential because direct sales to end users were not viable). ███████████████████████████████████

████████████████████████████████████████████████████████████ To show substantial foreclosure, All-Tag would have to show not just that Checkpoint locked up the three or four distributors that sell to end users (as was the case in *McWayne* and *Dentsply*), but rather that Checkpoint locked up a substantial share of the entire EAS market such that it became uneconomical for others to enter or remain in the market.

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████ [10] Moreover, as noted in *McWayne*, "courts often take a permissive view of [exclusive] contracts on the grounds that firms compete for exclusivity by offering procompetitive inducements (e.g., lower prices, better service)." 783 F.3d at 834. Unlike *McWayne*, where the contracts were "unilaterally imposed," here █████████████████████████████████████ SOF ¶¶ 26, 29, 31, 39, 51, 52, 58 (undisputed). █████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

    **2.   All-Tag fails to contest that Checkpoint's bundled products are not anticompetitive.**

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ DE 180 ¶ 5; *see also id.* ¶¶ 3, 42-47, 49, 51-52, 54, 89, 94, 99, 108, 114. █████████████████████████████

████████████████████████████████████████████████████████████

--------

[10] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████

All-Tag now completely ignores Checkpoint's arguments that there is no evidence of such coercion. The evidence does not exist and All-Tag knows it. At minimum, the Court must grant summary judgment on All-Tag's bundling claims. *See Bentancourt v. Fla. Dept. of Corrections*, No. 13-cv-00287, 2014 WL 10742621, at *9 (M.D. Fla. Dec. 1, 2014) (finding plaintiff abandoned claims he failed to address in response to defendants' motion for summary judgment).

### 3. All-Tag does not dispute the heightened standard for showing false advertising is anticompetitive, let alone have evidence to meet it.

All-Tag does not dispute the greatly heightened standard for finding that false advertising had more than a *de minimis* effect on competition, nor does All-Tag attempt to distinguish the many cases Checkpoint cited finding comparative advertising of the type alleged here not cognizable methods of market-wide foreclosure under the antitrust laws. All-Tag's sole citation to *U.S. v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), is unhelpful. There, Microsoft tried to deceive Java developers by adding programming instructions that altered the behavior of the code so that developers unwittingly wrote Java applications that could only run on Windows devices. *Id.* at 76. The case does not even mention "advertising," did not find advertising to be a means of market foreclosure, and certainly did not consider the type of comparative advertising at issue here.

### 4. All-Tag has no support for its back-door trade secrets claim.

Again, rather than attempt to dispute that the antitrust laws are not a panacea for ordinary business torts, or attempt to distinguish Checkpoint's cited cases, All-Tag simply cites two district court cases which undermine, not support, its point. In *Natsource LLC v. GFI Grp., Inc.*, 332 F. Supp. 2d 626, 633 (S.D.N.Y. 2004), the Court granted summary judgment because the plaintiff had "not advanced any plausible antitrust theory to explain how GFI possibly could exclude competition as a result of the hires at issue." In *Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp.*, No. 96-1336-JTM, 1997 WL 225966 (D. Kan. Apr. 8, 1997), following the quote All-Tag cites, the court went on to note that "courts have examined more closely claims of anticompetitive hiring than other forms of anticompetitive conduct." *Id*. at *9. The court noted that the Tenth Circuit has observed that the hiring of a rival's employees is not ordinarily exclusionary, and that this approach has found significant support in recent decisions. *Id*.

Even if All-Tag could find support in the law, it cannot find it in the facts. ██████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████ But even if it did, All-Tag has not even shown the minimal requirements for establishing a trade secret. *AAR Mfg., Inc. v. Matrix Composites, Inc.*, 98 So. 3d 186, 188 (Fla. 5th Dist. Ct. App. 2012) ("[P]laintiff is required to identify with reasonable particularity the trade secrets at issue."); *Swiss Watch, Int'l, Inc. v. Movado Grp.*, No. 00-7703, 2001 WL 36270980, at *4 (S.D. Fla. June 21, 2001) (information readily ascertainable by defendant cannot constitute trade secret).

5. **All-Tag's allegation of a conspiracy between Checkpoint, retailers, and source taggers has no support in the facts or the law.**

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████

*First*, All-Tag's characterization of vertical restraints does not overcome the presumption that the rule of reason applies in cases brought under Section 1. *Ohio v. American Express Co.*, 138 S.Ct. 2274, 2282 (2018) (typically only horizontal restraints that are agreements imposed by competitors qualify as *per se* illegal). *Second*, unlike All-Tag's citation to *NW Wholesale Stationers v. Pac. Stationary*, 472 U.S. 284 (1985), a decision on "group boycotts," "this case does not involve the kind of group boycott that warrants application of the per se rule, *i.e.,* it is not a 'naked restraint of trade with no purpose except stifling competition.'" *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1549 (11th Cir. 1996) (internal quotation omitted). No retailer or source-tagger has testified that they boycotted or refused to do business with All-Tag in order to stifle competition in the RF label market. *Third*, as noted in All-Tag's citation to *NW Wholesale Stationers*, the *per se* approach in boycott cases is applied when firms with market power boycott suppliers to discourage them from doing business with their competitor. 472 U.S. at 296. ███████
███████████████████████████████████████████
████████████████████████████████████

E. **All-Tag Fails To Address Harm to Competition.**

All-Tag's response does not explicitly address harm to competition (there is only a single passing mention in connection with false advertising, Resp. at 11). But the Eleventh Circuit has

"repeatedly required a plaintiff to point to specific facts demonstrating harm to competition" rather than rest on conclusory assertions. *Procaps, S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1084 (11th Cir. 2016).



Just as in *Procaps*, because All-Tag cannot show harm to competition, summary judgment must enter. *Id.*

## II.  THE COURT SHOULD GRANT SUMMARY JUDGMENT ON ALL-TAG'S FALSE ADVERTISING CLAIMS.

All-Tag repeatedly misstates Checkpoint's position in arguing that Checkpoint "does not contest" and "does not dispute" the "core" of All-Tag's Lanham Act claim. (Resp. at 12-13). For purposes of summary judgment, Checkpoint need not advance its extensive factual counter to these misstatements.  But it is noteworthy that All-Tag persists in its effort to blend or jump between "false" and "misleading" as fits the moment.  All-Tag cannot raise a genuine issue of fact on literal falsity, and as to misleading advertising—the "second kind of falsehood" for a Lanham Act false advertising claim—a plaintiff "must 'present evidence of deception' in the form of consumer surveys, market research, expert testimony, or other evidence." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1349, 1377 (S.D. Fla. 2010) (quoting *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004)). All-Tag cannot do so.  Nor can All-Tag cannot create a genuine issue of material fact with respect to the other "core" elements of its false advertising claims: materiality and damages. Under All-Tag's view, regardless of whether an advertisement is false or misleading, it need not prove actual deception, materiality, causation, or damages. All-Tag grossly misstates the law.

As described below, All-Tag is not entitled to the presumptions it claims. The 11th Circuit requires All-Tag to *prove* that an advertisement deceived the public with extrinsic evidence of customer deception, to *prove* that the advertisement was material and caused the customers to purchase the product, and to *prove* the amount of damages—these elements are not presumed. Even if the claimed presumptions existed, they vanish and have no effect upon the proffer of contrary evidence, of which Checkpoint has ample, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Fed. R. Evid. 301; *see Roberts v. Gordy*, 359 F. Supp. 3d 1231, 1239 (S.D. Fla. 2019) (presumption

does not necessarily imply that plaintiff defeats summary judgment); *Sherrod v. Bd. of St. Lucie Cty.*, 635 Fed. Appx. 667, 671 (11th Cir. 2015) (affirming summary judgment where defendants rebutted presumption and plaintiff failed to present affirmative evidence); *Reis v. Universal City Dev. Partners, Ltd.*, 442 F. Supp. 2d 1238, 1255 (M.D. Fla. 2006) (if defendant presents evidence to rebut presumption, burden shifts to plaintiff to present evidence to defeat summary judgment).

### A. All-Tag Presented No Evidence On False Advertising Claims Before 2012.

All-Tag has not cited ***any*** evidence to support its claims based on false advertisements before 2012. All-Tag has the burden of proving these claims and it has not presented any evidence to do so. Even without a presumption of laches on these claims, summary judgment must enter.

### B. No Presumption Of Customer Deception Exists For Misleading Advertising And All-Tag Has No Evidence To Show It.

It is black letter law that proof of customer deception is required to support a claim that advertising is misleading. ████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

All-Tag cites no case law holding that a presumption of customer deception exists for misleading claims in the 11th Circuit. The 11th Circuit's decision in *Johnson & Johnson* noted at least three times that evidence of customer deception ***is*** required for a claim that advertising is misleading. 299 F.3d 1242, 1249 (11th Cir. 2002); *see also id.* at 1247, 1251. Indeed, the *Johnson & Johnson* court cited to the case All-Tag relies on, *Cashmere & Camel Hair Mfrs., Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 316 (1st Cir. 2002), but chose not to adopt the presumption All-Tag seeks. *Id.* at 1250 (noting that plaintiff must establish materiality even when the court finds the advertisement is literally false). ████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████.

### C. All-Tag Cannot Meet Its Burden Of Disputing The Comparison Testing.

All-Tag lacks evidence to show that the tests advertised by Checkpoint could not have achieved the cited results. ████████████████████████████████████████████████

---

11 ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████



███. *Johnson & Johnson Vision Care, Inc.*, 299 F.3 at 1249 ("The fact that a study's design is imperfect, however, does not render [the] advertisements false."). To create ***that*** issue of fact, All-Tag would have to present admissible evidence on a sufficiently reliable protocol.[12] It presented no such evidence. *See id.* (without evidence that "the quoted proposition is not supported by the [test]" plaintiff "cannot meet this burden of proof"). ███████████████████████████ ████████████████████████████████████████████████████ *See Miller's Ale House*, 745 F. Supp. 2d at 1377 ("When evaluating the falsity of an advertisement, a court must analyze the message conveyed in full context;" specific information included on coupons provided context for broader statements alleged to be false advertising, leading the court to hold that the coupon was not literally false and grant summary judgment for the defendant) (internal quotation omitted.)

### D.  All-Tag Has No Evidence That The Statements At Issue Were Material To A Single Customer's Purchasing Decision.

Again, All-Tag attempts to rely on a presumption to obviate its need to establish another core element of its claims—that the advertisements in question were the material cause of the customer's purchasing decisions. The Eleventh Circuit did not create a "presumption" of materiality in *Osmose, Inc.* Rather, *Osmose* held that the materiality of the statements at issue in that case was "self-evident" on the plaintiff's motion for a preliminary injunction. 612 F.3d at 1319. All-Tag's standard is not "likelihood of success" (as it would be on a motion for preliminary injunction). It must come forward with actual proof of materiality.

Even if the materiality of statements ██████████████████████████████ was "self-evident" and even if All-Tag had a presumption of materiality regarding such statements,

---

[12] As All-Tag's citation to *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir. 1992), notes, the "sufficiently reliable" standard "of course assumes that the tests in question, if reliable, would prove the proposition for which they are cited." Likewise, in *Osmose, Inc.*, the court cited expert testimony regarding the industry standard tests that should have been used. 612 F.3d 1298, 1314 n.8 (11th Cir. 2010). All-Tag points to no such evidence here.

that presumption is meaningless because there is actual evidence in the record from customers to rebut it. All-Tag's response to actual customer evidence is to dispute that they say what they say. Contrary to All-Tag's assertions that the declarations "do not mention the issue":



The Court can review the customer declarations in DE 294-3 through 294-9 and see what they say without resorting to All-Tag's mischaracterization.[13]

Rather than dispute the direct customer evidence with some other evidence from customers to create a genuine issue of material fact, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g., Zaben v. Air Prods. & Chemicals, Inc.*, 129 F.3d 1453, 1455-57 (11th Cir. 1997) (affirming exclusion of statements that

_____

[13] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

repeated what other declarants had told them); *Bellsouth Telecomm., Inc. v. Kerrigan*, 55 F. Supp. 2d 1314, 1317 (N.D. Fla. 1999) (assertions based on unsubstantiated hearsay are insufficient to create a genuine issue of material fact); *Webb v. R&B Holding Co.,* 992 F. Supp. 1382, 1388 (S.D. Fla. 1998) (allegations based solely on hearsay amount to nothing more than speculation).

**E.  All-Tag Presents No Damages For Its Standalone False Advertising Claims.**

 All-

Tag simply points to no evidence establishing its purported damages for false advertising.

All-Tag cannot, again, rely on the "many presumptions" it claims it has to absolve it of establishing damages. *N. Am. Med. Corp. v. Axiom Worldwide,* 522 F.3d 1211, 1227 (11th Cir. 2008), did not establish such a presumption—rather it held that proof of literally falsity can sustain a finding of irreparable injury on a motion for preliminary injunction.[14] As a leading commentator stated, "An injunction, as opposed to money damages, is no windfall to the commercial plaintiff. An injunction protects both consumers and the commercial plaintiff from continuing acts of false advertising. Money damages, on the other hand, primarily aid only the competitor, and he is required to satisfy a much higher standard of proof as to injury in order to recover damages." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:26 (5th ed. 2019).

**III.  ALL-TAG FAILS TO ADDRESS CHECKPOINT'S AFFIRMATIVE DEFENSES.**

All-Tag's Response does not address Checkpoint's request for summary judgment on Checkpoint's Second and Fifth Affirmative defenses. Summary judgment should enter.

---

[14] The other cases on which All-Tag relies similarly to do not support All-Tag's position. *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997) ("Porous still bore the burden of proving an evidentiary basis to justify any monetary recovery."); *In-N-Out Burgers v. Smashburger IP Holder LLC*, No. SACV 17-1474, 2019 WL 1431904, at *9 (C.D. Cal. Feb. 6, 2019) (party moved for summary judgment as to injury, not damages).

## <u>CONCLUSION</u>

For the reasons stated above, the Court should grant Checkpoint summary judgment on all of All-Tag's claims.


Dated: November 6, 2019                                    Respectfully submitted,


                                                           /s/ Gavin C. Gaukroger


Gavin C. Gaukroger (Fla. Bar. No. 768489)         Robert J. Palmersheim (*pro hac vice*)
Kenneth W. Waterway (Fla. Bar. No. 994235)        Anand C. Mathew (*pro hac vice*)
BERGER SINGERMAN LLP                              Julie M. Mallen (*pro hac vice*)
350 East Las Olas Boulevard, Suite 1000           PALMERSHEIM & MATHEW LLP
Fort Lauderdale, Florida 33301                    401 N. Franklin Street, Suite 4S
Tel: (954) 525-9900                               Chicago, Illinois 60654
Fax: (954) 523-2872                               Tel: (312) 319-1791
ggaukroger@bergersingerman.com                    Fax: (312) 878-2890
kwaterway@bergersingerman.com                     rjp@thepmlawfirm.com
                                                  acm@thepmlawfirm.com
                                                  jmm@thepmlawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6, 2019, a true and correct copy of the foregoing

was filed with the Clerk of the Court using CM/ECF which will generate and serve a Notice of

Electronic Filing to the following:

Damon Suden
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
212-808-7800
Email: dsuden@KelleyDrye.com

Julian Solotorovsky
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606
312-857-7070
Email: jsolotorovsky@KelleyDrye.com

William A. MacLeod
Kelley Drye & Warren LLP
3050 K Street NW, Suite 400
Washington, DC 20007
202-342-8811
Email: wmacleod@kelleydrye.com

Christopher W. Kammerer
John F. Mariani
Kammerer Mariani PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
561-990-1592
Email: ckammerer@kammerermariani.com
Email: jmariani@kammerermariani.com

John B. Williams
Williams Lopatto PLLC
1707 L Street NW, Suite 550
Washington, DC 20036
202-296-1611
Email: jbwilliams@williamslopatto.com

/s/ Gavin C. Gaukroger